IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| AKRUM WADLEY; JONATHAN PARKER; MARCEL JOLY; AARON MENDS; MAURICE FLEMING; REGGIE SPEARMAN; KEVONTE MARTIN-MANLEY; DARIAN COOPER; LARON TAYLOR; BRANDON SIMON; JAVON FOY; ANDRE HARRIS and TERRENCE HARRIS,<br><br>        Plaintiffs,<br><br>vs.<br><br>UNIVERSITY OF IOWA, BOARD OF REGENTS FOR THE STATE OF IOWA; GARY BARTA; KIRK FERENTZ; BRIAN FERENTZ; CHRISTOPHER DOYLE and RAIMOND BRAITHWAITE,<br><br>        Defendants. | Case No. 4:20-cv-366<br><br><br><br><br><br>**BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT** |

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................... 3

ARGUMENT .................................................................................................................................. 4

    I.   The claims of all but three Plaintiffs in Counts I Through VII must be dismissed because they are barred by the statute of limitations since the other ten Plaintiffs left the University of Iowa football program more than two years before the filing of this suit............................................................................................................................... 4

        A.    The applicable statute of limitations for Counts I through VII is two years. ................................................................................................................................. 4

        B.    All Plaintiffs except for Mends, Foy, and Simon left the University of Iowa football program prior to November 12, 2018, and so could not have been subject to any action by Defendants within two years of filing this suit on November 12, 2020. ................................................................................ 5

    II.  All claims must be dismissed because Plaintiffs fail to plead sufficient facts to state a claim for relief that is plausible on its face. ................................................................. 6

A.     Count I fails to plead sufficient facts to support a plausible claim that Plaintiffs Mends, Simon, and Foy were subject to a racially hostile educational environment in violation of Title VI. ............................................... 8

B.     Count II fails to plead sufficient facts to support a plausible claim that Plaintiff Mends was subject to retaliation in violation of Title VI. ................... 11

C.     Count III fails to plead sufficient facts to support a plausible claim that Plaintiffs Mends, Simon, and Foy were subject to a systemic pattern and practice of racial discrimination in violation of Title VI. ................................ 13

D.     Count IV fails to plead sufficient facts plausibly alleging a deprivation of a right to make and enforce contracts in violation of § 1981. ........................... 14

E.     Counts V & VI both fail to plead sufficient facts plausibly alleging a viable conspiracy claim. ................................................................................... 15

F.     Count VII fails to plead sufficient facts to support a plausible claim for failure to train and supervise in violation of section 1983. .............................. 19

G.     Count VIII alleging a breach of contract fails to plead any facts plausibly alleging a contract between any of the Plaintiffs and any of the Defendants, the terms of that contract, or any breaches of such an illusory contract. ......................................................................................................... 20

CONCLUSION .................................................................................................................... 22

## INTRODUCTION

Thirteen African American former football players at the University of Iowa brought this action. They allege that they were discriminated against because of their race while participating in the University's football program. And they bring eight claims alleging violations of Title VI of the Civil Rights Act of 1964; violations of sections 1983, 1981, and 1985; and breach of contract against the Board of Regents, the University of Iowa, and employees of the University of Iowa involved in the football program.

Although the 77-page, 357-paragraph First Amended Complaint—like the original complaint—may at first appear to contain a wealth of factual detail, a closer look reveals that many allegations do not involve these Plaintiffs. Most of the allegations that *do* involve these Plaintiffs relate to conduct outside the two-year statute of limitations applicable to the first seven of eight claims because ten of the thirteen former players left the football program more than two years before filing this action. And the time-barred claims brought by these ten Plaintiffs must thus be dismissed. The remaining allegations—involving only three Plaintiffs for the claims under Title VI and sections 1983, 1981, and 1985, and all the Plaintiffs only for the breach-of-contract claim— fail to plead sufficient facts to state a claim for relief plausible on its face. This remains so even after Plaintiffs amended their Complaint—with Defendants consent—instead of resisting Defendants' original motion to dismiss that had pointed out these same defects.[1] For these reasons, the entire Complaint must be dismissed for failing to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

---

[1] In fact, most of the allegations added by Plaintiffs appear to be largely general and conclusory—including academic literature on athletics (Doc. 15 ¶ 12), congressional legislation about hairstyle discrimination (*id.* ¶ 46), and press reports about other schools (*id.* ¶ 76)—or involve Plaintiffs whose claims in Counts I through VI are barred by the statute of limitations. (*Id.* ¶¶ 52, 206, 247-50). Precisely identifying all changes in Plaintiffs' First Amendment Complaint is challenging since Plaintiffs did not "describe in the motion the changes sought" in their Amended Complaint or choose to file "a red-lined version of the amended pleading to highlight significant proposed changes for the ease of the court and opposing counsel." LR 15.

**ARGUMENT**

**I.  The claims of all but three Plaintiffs in Counts I Through VII must be dismissed because they are barred by the statute of limitations since the other ten Plaintiffs left the University of Iowa football program more than two years before the filing of this suit.**

This Court "may dismiss a claim under Rule 12(b)(6) as barred by the statute of limitations if the complaint itself establishes that the claim is time-barred." *Humphrey v. Eureka Gardens Pub. Facility Bd.*, 891 F.3d 1079, 1081 (8th Cir. 2018). The applicable statute of limitations for each of the claims in Counts I through VII is two years. And the Complaint alleges that ten of the thirteen Plaintiffs left the University of Iowa football program more than two years before filing this lawsuit. Their claims in Counts I through VII must thus be dismissed.[2]

**A.  The applicable statute of limitations for Counts I through VII is two years.**

Iowa's two-year personal injury statute of limitations governs all Plaintiffs' claims brought in Counts I through VII. Counts I through III allege claims under Title VI of the Civil Rights Act. (First Amended Compl., Doc. 15 ¶¶ 254-80). Title VI claims—like claims under § 1983—are considered personal injury actions and are thus governed by the forum state's personal injury statute of limitations. *See Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 618 (8th Cir. 1995). In Iowa, the statute of limitations for personal injury claims is two years. *See* Iowa Code § 614.1(2); *DeVries v. Driesen*, 766. F.3d 922, 924 (8th Cir. 2014). This two-year statute of limitations governs the Title VI claims alleged in Counts I through III.

---

[2] Plaintiffs' final claim in Count VIII alleges a breach of contract. The statute of limitations for such a claim is five or ten years, depending on whether the alleged contract is oral or written. *See* Iowa Code § 614.1(4), (5). Because of the limited factual allegations pled in support of this claim, it is unclear from the Complaint what type of contract Plaintiffs allege was breached or whether any alleged breach occurred outside the statute of limitations. For those reasons, the Defendants do not yet seek dismissal of Count VIII on statute-of-limitations grounds and instead seek dismissal of Count VIII for failing to plead sufficient facts to state a claim for relief that is plausible on its face, as discussed below in Part II.G.

Counts IV through VII all allege claims under § 1983. (Doc. 15 ¶¶ 281-346). Count IV alleges a violation of rights under § 1981, but Plaintiffs still properly seek to enforce those rights under § 1983. *See Artis v. Francis Howell N. Band Booster Ass'n*, 161 F.3d 1178, 1181 (8th Cir. 1998) ("A federal action to enforce rights under § 1981 against a state actor may only be brought pursuant to § 1983"); *see also Nitch v. Ester,* No. 16-CV-06033, 2017 WL 4650878, at *7 (N.D. Ill. Oct. 17, 2017) (holding that a § 1981 claim against a state actor is governed by the same statute of limitations as all § 1983 claims). *But see Baker v. Birmingham Bd. Of Educ.*, 531 F.3d 1336, 1337-38 (11th Cir. 2008); *Williams v. Hawkeye Cmty. Coll*., 494 F. Supp. 2d 1032, 1041 (N.D. Iowa 2007). Counts V and VI allege conspiracy claims in violations of § 1985, but still appear to purport to bring the claims under § 1983. And even if the Court construes Counts V and VI as claims brought directly under § 1985, such claims are also considered personal injury actions for purposes of the applicable statute of limitations. *See Jones v. Frost*, 770 F.3d 1183, 1185 (8th Cir. 2014) (holding the same personal-injury statute of limitations applies to claims under sections 1983 and 1985). Because all these claims in Counts IV through VII are considered personal injury actions, Iowa's two-year statute of limitations for personal injury claims also applies to them. *See DeVries*, 766 F.3d at 924.

> **B. All Plaintiffs except for Mends, Foy, and Simon left the University of Iowa football program prior to November 12, 2018, and so could not have been subject to any action by Defendants within two years of filing this suit on November 12, 2020.**

Plaintiffs filed this Complaint on November 12, 2020. Because a two-year statute of limitations applies to Counts I through VII, each Plaintiff must allege that some action in furtherance of their violation of federal law occurred within two years of that date. But ten of the thirteen Plaintiffs left the University of Iowa football program prior to November 12, 2018.

The Complaint itself establishes that ten Plaintiffs left the football program in or before 2017—a year or more before the two-year statute-of-limitations period. Akrum Wadley left in 2017. (Doc. 15 ¶ 15). Jonathan Parker in 2016. (*Id.* ¶ 16). Marcel Joly in 2017. (*Id.* ¶ 17). Maurice Fleming in 2015. (*Id.* ¶ 19). Reggie Spearman in 2013. (*Id.* ¶ 20). Kevonte Martin-Manley in 2015. (*Id.* ¶ 21). Darian Cooper in 2016. (*Id.* ¶ 22). LaRon Taylor in 2014. (*Id.* ¶ 23). Andre Harris in 2013 (or 2016, depending on which allegation is correct). (*Id.* ¶¶ 26, 241). And Terrence Harris in 2016. (*Id.* ¶ 27).

All of these ten Plaintiffs' allegations were about conduct that purportedly occurred during their participation in the football program. (*See id.* ¶¶ 118-51, 166-214, 230-53).[3] These ten Plaintiffs do not—and could not—allege that their rights under Title VI or sections 1983, 1981, or 1985 were violated by any Defendant after they left the program. And because they all left the program more than two years before filing their claims, their claims in Counts I through VII are barred by the statute of limitations and must be dismissed.[4]

## II.   All claims must be dismissed because Plaintiffs fail to plead sufficient facts to state a claim for relief that is plausible on its face.

A complaint that fails to state a claim upon which relief can be granted must be dismissed. Fed. R. Civ. P. 12(b)(6). While a complaint need not contain "detailed factual allegations" to state

---

[3] For example, LaRon Taylor committed to play football at the University nearly a decade ago. (Doc. 15 ¶ 208). He arrived on campus as a member of the football team in 2012. (*Id.* ¶ 23). He transferred to another university more than six years ago in the summer of 2014. (*Id.* ¶ 23). And all his allegations regarding any Defendant occurred during his two years at the University six to eight years ago. (*Id.* ¶¶ 208-14).

[4] It is unclear from Plaintiffs' pleading whether all thirteen Plaintiffs are asserting all seven claims in Counts I through VII. They mention one or more specific Plaintiffs in some claims. (*See, e.g.*, Doc. 15 ¶ 260 (making certain allegations about "Plaintiffs Mends, Simon, and Foy" in Count I)). But they also generically reference "plaintiffs" throughout each claim. (*See id.* ¶ 263 (alleging deliberate indifference to "discrimination against Plaintiffs" in the same count)). They also "reallege, and incorporate by reference" all previous paragraphs in each claim, thus including allegations about each Plaintiff in each count. And they did not take the opportunity to clarify the applicable plaintiffs for each claim in their First Amended Complaint after this issue was raised in Defendants' original motion to dismiss. For clarity, the Defendants thus urge the Court to dismiss the claims of all ten Plaintiffs whose claims are barred by the statute of limitations in Counts I through VII regardless whether the operative Plaintiff is separately named in the paragraphs making up that count.

a claim, a plaintiff must provide more than "unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also* Fed. R. Civ. P. 8(a)(1)-(3). Complaints which offer nothing more than "labels or conclusions" or "formulaic recitation of the elements of a cause of action" are not sufficient. *Iqbal*, 556 U.S. at 678. "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. (quoting *Twombly*, 550 U.S. at 557). To survive a motion to dismiss, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. at 678 (quoting *Twombly*, 550 U.S. at 570). Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. This "plausibility" standard is not the equivalent of a "probability requirement," but requires "more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 557).

In evaluating the sufficiency of a complaint under a 12(b)(6) motion, a court must accept the factual allegations as true. *Id*. There is no such requirement that the Court accept the legal conclusions set forth in a complaint as true. *Id*. Courts evaluate plausibility under *Iqbal* and *Twombly* by "'draw[ing] on [their own] judicial experience and common sense'" and will consider "only the materials that are 'necessarily embraced by the pleadings and exhibits attached to the complaint.'" *Whitney v. Franklin Gen. Hosp*., 995 F. Supp. 2d 917, 925 (N.D. Iowa 2014) (citing *Whitney v. Guys*, 700 F.3d 1118, 1127 (8th Cir. 2012); *Mattes v. ABC Plastics, Inc*., 323 F.3d 695, 697 n.4 (8th Cir. 2003)). When deciding a motion to dismiss, "a court may consider the complaint and documents whose contents are alleged in a complaint and whose authenticity no party

questions, but which are not physically attached to the pleading." *Kushner v. Beverly Enters., Inc.*, 317 F.3d 820, 831 (8th Cir. 2003).

All Plaintiffs' claims should be dismissed for failure to assert sufficient factual allegations to support plausible claims. While these defects apply across the board for all Plaintiffs, for Counts I through VII, Defendants will focus on the factual allegations and claims by Plaintiffs Mends, Simon, and Foy—whose claims are not barred by the statute of limitations. Focusing in this way is all the more necessary because Plaintiffs have filed a classic "shotgun pleading" containing "several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions." *Sagez v. Glob. Agr. Invs.*, No. 11-CV-3059-DEO, 2015 WL 1647921, at *4 (N.D. Iowa Apr. 14, 2015); *see also Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d 1290, 1332 (11th Cir. 1998) (urging district courts to intervene and prohibit shotgun pleadings and explaining a 173-paragraph complaint's "general allegations operated as camouflage, obscuring the material allegations of [plaintiff's] claims and necessarily implying that all the allegations were material to each claim").

## A. Count I fails to plead sufficient facts to support a plausible claim that Plaintiffs Mends, Simon, and Foy were subject to a racially hostile educational environment in violation of Title VI.

Count I should be dismissed because Plaintiffs Mends, Simon, and Foy fail to state plausible claims that the University or Board of Regents subjected them to a racially hostile educational environment in violation of Title VI. That statute provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. Title VI claims are typically interpreted in the same manner as Title IX claims. *See, e.g.*, *Cannon v. Univ. of Chicago*, 441 U.S. 677, 694-

95 (1979) ("Title IX was patterned after Title VI of the Civil Rights Act of 1964 . . . . The drafters of Title IX explicitly assumed that it would be interpreted and applied as Title VI had been during the preceding eight years.").

To state a prima facie claim for a racially hostile environment under Title VI, a plaintiff must show that the defendant was "(1) deliberately indifferent (2) to known acts of discrimination (3) which occurred under its control." *Pruitt v. Anderson*, No. 11-2143, 2012 WL 104540, at *2 (D. Minn. Jan. 12, 2012) (quoting *Shrum ex rel. Kelly v. Kluck*, 249 F.3d 773, 782 (8th Cir. 2001) (addressing hostile environment claims under Title IX)). A university is deliberately indifferent if it subjects its students to harassment—*i.e.*, "the deliberate indifference must, at a minimum, *cause* students to undergo harassment or make them liable or vulnerable to it." *K.T. v. Culver-Stockton Coll.*, 865 F.3d 1054, 1058 (8th Cir. 2017) (quoting *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 644-45 (1999)) (internal quotation marks omitted); *see also Shrum*, 249 F.3d at 782 ("[D]eliberate indifference must either directly cause the abuse to occur or make students vulnerable to such abuse.").

For conduct to qualify as discrimination under Title VI, the conduct must be motivated by the plaintiff's race and be "so severe, pervasive, and objectively offensive, and that so undermines and detracts from the victims' educational experience, that the victim-students are effectively denied equal access to an institution's resources and opportunities." *Davis*, 526 U.S. at 651; *see also Wolfe v. Fayetteville, Ark. Sch. Dist.*, 648 F.3d 860, 864, 867 (8th Cir. 2011) ("[A]cts of name-calling do not amount to sex-based harassment [under Title IX] . . . , unless the underlying motivation for the harassment is hostility toward the person's gender."). In essence, a hostile environment claim requires a showing that the University learned of complaints of allegedly

discriminatory conduct, perpetrated by individuals within the University's control, and that the University failed to address or respond to the complaints in a meaningful manner.

Here, Plaintiffs fail to plead sufficient facts to plausibly support the elements of a hostile environment claim. Starting with Plaintiff Mends, the Complaint only discusses a single specific instance where Plaintiff Mends was allegedly treated differently than his White teammates—that "some" White football players were permitted to post a photograph to their social media profiles, depicting them holding various firearms, without reprimand from the University or coaching staff, while Plaintiff Mends was denied access to a similar photograph of himself, and denied permission to post such a photograph to his social media. (Doc. 15 ¶¶ 156-59). Notably, Plaintiff Mends makes no direct allegation that the coaching staff was aware of the photograph posted by the White football players. (*See id.* ¶ 159 (simply stating that the players were "not reprimanded or instructed to take the photo down")). Beyond this, Count I offers no further instances of discrimination suffered by Plaintiff Mends in any degree of specificity.

Turning to Plaintiff Simon's allegations, Plaintiff Simon's specific allegations are solely limited to alleged actions by Defendant Doyle. (*See id.* ¶¶ 219-21). Further, within these allegations, some of the allegations do not contain a plausible or explained nexus between the conduct and Plaintiff Simon's race. (*See id.* ¶ 221 (alleging Defendant Doyle, at unspecified times or frequency, made remarks regarding Plaintiff Simon's height and intelligence and making an unspecified claim that Defendant Doyle "constantly bullied [Plaintiff Simon] merely because [Plaintiff Simon] is African-American")). Finally, Plaintiff Simon alleges he raised his complaints about his alleged mistreatment to unspecified "Iowa athletic academic advising staff," with no discussion about whether that staff had any ability to address his complaints. (*Id.* ¶ 222).

Similarly, Plaintiff Foy's allegations fail to demonstrate either specificity or a direct nexus between the alleged harassment and his race beyond a "threadbare assertion." *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Plaintiff Foy's specific allegations focus on three areas. First, he claims Defendant Doyle "bullied" Plaintiff Foy for his hairstyle and "merely because he is an African-American," without alleging any sort of dates, specificity in the "bullying," or degree of frequency to this allegation. (*Id.* ¶ 227). Second, Plaintiff Foy discusses an alleged disparity in how the Program's coaching staff responded to misconduct by student-athletes. Specifically, Plaintiff Foy claims that, following a "routine traffic stop" by local police, he was "suspended indefinitely," while a "few weeks later," some of Plaintiff Foy's White teammates were "caught drinking alcohol in" a dormitory and were only punished by being required to do additional physical conditioning after practice. (*Id.* ¶ 228). Finally, Plaintiff Foy alleges that Defendant K. Ferentz conspired against him to push Plaintiff Foy out of the football team by falsely claiming that Plaintiff Foy had suffered a "career-ending injury" as Plaintiff Foy was set to return from his suspension. (*Id.* ¶ 229). Plaintiff Foy fails to allege any facts support a direct causal connection from this alleged act to his race; instead, he simply asserts that it constituted "racially-motivated disparate treatment." (*Id.*). Additionally, Plaintiff Foy fails to allege he raised complaints of his alleged disparate treatment to any University officials. (*Id.* ¶¶ 223-29). Taken in its totality, Plaintiff Foy's allegations fail to sufficiently support a claim for hostile environment. For these reasons, Count I should be dismissed.

### B. Count II fails to plead sufficient facts to support a plausible claim that Plaintiff Mends was subject to retaliation in violation of Title VI.

Count II should be dismissed because Plaintiff Mends fails to state a plausible claim that the University or Board of Regents retaliated against him in violation of Title VI. To state a prima

facie claim for Title VI retaliation, a plaintiff must show: (1) that he engaged in protected activity, such as raising complaints of discriminatory conduct to University officials, and (2) that he suffered an adverse action by the defendant as a result of that activity. *See Brine v. Univ. of Iowa*, 90 F.3d 271, 273 (8th Cir. 1996) (addressing retaliation claims under Title IX); *Bollman v. Ciesla*, No. 2:14-CV-02001, 2014 WL 1765003, at *5 (W.D. Ark. May 2, 2014) (finding that Title VI contains an implied cause of action for retaliation, like Title IX).

Count II fails to allege facts supporting the second element of a Title VI retaliation claim. In the section outlining Plaintiff Mends' specific factual allegations, there is no mention of any retaliatory actions taken against Plaintiff Mends by the University or Board of Regents. (*See* Doc. 15 ¶¶ 152-65). Instead, Count II relies on a vague allegation of retaliatory conduct in Paragraph 270:

> In response to Plaintiff's protests and complaints, Defendants committed materially adverse acts designed to dissuade Plaintiff from making or supporting good-faith, reasonable complaints of discrimination. Said acts include, but are not limited to, playing restrictions, excessive conditioning drills, public humiliation, slander to NFL scouts, and loss of their scholarship.

(Doc. 15 ¶ 270). This allegation provides an insufficient level of specificity to satisfy the standard of review for a Rule 12(b)(6) motion. Nowhere within Paragraph 270 does Plaintiff Mends state who he raised complaints to, who specifically instituted each of the alleged adverse actions, or any other specific description of the playing restrictions, conditioning drills, public humiliation, or slander that were allegedly taken against Plaintiff Mends.

The rest of Count II also fails to allege anything beyond conclusory statements of law. (*See* Doc. 15 ¶¶ 271-74 (providing conclusory statements that Defendants' alleged, unspecific actions "would have dissuaded a reasonable person from making or supporting complaints of discrimination," were "committed with the intent to perpetuate a hostile educational environment," and were the direct and proximate cause of Plaintiff Mends' alleged injuries). These sort of

"threadbare recitals of the elements of a cause of action" cannot survive a Rule 12(b)(6) motion. *Iqbal*, 556 U.S. at 678.

### C. Count III fails to plead sufficient facts to support a plausible claim that Plaintiffs Mends, Simon, and Foy were subject to a systemic pattern and practice of racial discrimination in violation of Title VI.

Count III should be dismissed because Plaintiffs Mends, Simon, and Foy fail to state a plausible claim that the University or Board of Regents subjected them to a systemic pattern and practice of racial discrimination in violation of Title VI. Generally speaking, a private individual cannot bring a disparate impact claim under Title VI. *See Alexander v. Sandoval*, 532 U.S. 275, 280-86 (2001) (holding that the private right of action under Title VI does not extend to disparate impact claims); *see also Ash v. City of Duluth*, 331 F. Supp. 3d 935, 939 (D. Minn. 2018). Rather, the private right of action under Title VI is limited to claims of intentional discrimination. *Sandoval*, 532 U.S. at 280-86. But in a limited sense, allegations of a "pattern of disparate impact" can be used as evidence, albeit not sufficient evidence on its own, of discriminatory intent. *See, e.g.*, *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 562 (3d Cir. 2002).

Count III fails in two respects. First, at the outset, it is unclear from the Complaint what type of Title VI claim Plaintiffs are asserting in Count III. Plaintiffs label Count III as "Violation of Title VI – Systemic Pattern and Practice of Discrimination." (*See* Doc. 15, Count III, at 59. Count III goes on to repeatedly mix language between an intentional discrimination claim and a disparate impact claim. For example, Paragraph 277 reads, "Defendants' pattern and practice of intentional race discrimination is so pervasive as to constitute the Program's regular policy of intentional race discrimination." (*Id.* ¶ 277). But Paragraph 278 then discusses alleged "statistical disparities" between African American football student-athletes and the general population of football student-athletes at the University. (*Id.* ¶ 278). The mere fact that it is unclear whether

13

Count III is asserting a disparate impact claim is demonstration that Count III fails to plead its cause of action with sufficient specificity as to survive a Rule 12(b)(6) motion.

Second, Plaintiffs fail to provide sufficient details to their claims to support a finding of a "pattern and practice" of racial discrimination against Plaintiffs Mends, Simon, and Foy. As discussed regarding their hostile environment claim in Count I, these Plaintiffs' allegations either fail to allege plausible or specific harassing conduct, fail to allege sufficient notice of this conduct on the part of the University, or fail to establish a causal nexus between the conduct and a discriminatory motive. *See supra*, at Part II.A. Overall, Plaintiffs fail to plead a plausible pattern of conduct to support their claim in Count III, and it should be dismissed.

### D. Count IV fails to plead sufficient facts plausibly alleging a deprivation of a right to make and enforce contracts in violation of § 1981.

Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). To state a claim under § 1981, a plaintiff must allege "(1) membership in a protected class, (2) discriminatory intent on the part of the defendant, (3) engagement in a protected activity, and (4) interference with that activity by the defendant." *Gregory v. Dillard's, Inc.*, 565 F.3d 464, 469 (8th Cir. 2009) (en banc). The protected activity must involve an impairment of a current or prospective "contractual relationship," as the statute "does not provide a general cause of action for race discrimination." *Id.* at 468.

In asserting a violation of § 1981 in Count IV, Plaintiffs fail to plead sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct" *Iqbal*, 556 U.S. at 678. Plaintiffs only generally assert that six of the Plaintiffs—Wadley, Parker, Jolly, Cooper, Mends, and Simon—who received athletic scholarships "entered contractual relationships with the Defendants" when they "accepted their scholarship offers by

signing the NCCA National Letter of Intent." (Doc. 15 ¶ 285). And they appear to insinuate that a contract may have been agreed to between one more Plaintiff, Foy, when he was offered a preferred walk-on opportunity. (*See id.* ¶ 286). But they fail to allege any additional details to make it plausible whether a contract was agreed to with each of these Plaintiffs. They do not allege that it was a written contract or based on specific oral promises. It is unclear whether they allege a single contract with the University or multiple contracts with individual Defendants. And the scope and terms of the contract is likewise omitted.

More importantly, Plaintiffs do not allege facts showing that Defendants impaired any purported contractional relationship. Plaintiffs merely allege "Defendants' continuous intentional discrimination against the Plaintiffs and African-American student-athletes on the basis of their race impaired the Plaintiffs' ability to make and enforce contracts, including the enjoyment of all the benefits, privileges, terms, and conditions of the contractual relationship." This sort of "naked assertions devoid of further factual enhancement" does not suffice. *Iqbal*, 556 U.S. at 678 (cleaned up). And for that reason, Count IV should also be dismissed.

### E.   Counts V & VI both fail to plead sufficient facts plausibly alleging a viable conspiracy claim.[5]

Plaintiffs' formulaic and conclusory allegations comprising Counts V and VI of their Complaint fall far short of setting forth a valid claim brought under 42 U.S.C. § 1985(3). Section 1985(3) provides for a cause of action to recover damages against two or more people who conspire "for the purpose of depriving . . . any person or class of persons of the equal protections of the laws. . . ." To state a claim under § 1985(3), a plaintiff must allege: (1) a conspiracy; (2) for the purpose of depriving another of the equal protection of the laws; (3) an act in furtherance of the

---

[5] As discussed above in Part I, all Plaintiffs except Mends, Simon, and Foy fall outside the applicable statute of limitations for bringing a cause of action under 42 U.S.C. § 1985(3).

conspiracy; (4) an injury to a person or property or the deprivation of a legal right. *Federer v. Gephardt*, 363 F.3d 754, 757-58 (8th Cir. 2004).

Significant to this matter, Plaintiffs must "allege with particularity and specifically demonstrate with material facts that the defendants reached an agreement." *Johnson v. Purdue*, 862 F.3d 712, 717-18 (8th Cir. 2017). In Count V of their Complaint, Plaintiffs set forth nothing more in support of any sort of an agreement being reached than, "Defendants Barta, K. Ferentz, B. Ferentz, Doyle and Braithwaite reached an agreement amongst themselves to deprive all named Plaintiffs of their rights and privileges to equal protection of the laws." (Doc. 15 ¶ 303). Count VI suffers from the same dearth of facts by merely stating, "Defendants K. Ferentz, B. Ferentz and Doyle reached an agreement amongst themselves to deprive African-American football players at Iowa, including Plaintiffs Mends, Simon and Foy, of their rights and privileges to equal protection of the laws." (*Id.* ¶ 322).

Failing to point to at least some specific facts that would suggest Defendants reached an understanding to violate the rights of Plaintiffs warrants summary dismissal of the claim. *Jensen v. Henderson,* 315 F.3d 854, 862 (8th Cir. 2002) (citing *Palesch v. Mo. Comm'n on Human Rts.*, 233 F.3d 560, 570 (8th Cir. 2002)). As is the case here, "mere allusion to such a conspiracy is insufficient; the conspiracy or meeting of the minds, must be pleaded with specificity and factual support." *Magee v. Trustees of the Hamline Univ., Minn.*, 957 F. Supp. 2d 1047, 1058 (D. Minn. 2013) (citing *Holberg v. Armstrong-Wright*, 949 F.2d 1019, 1020 (8th Cir. 1991)); *Deck v. Leftridge*, 771 F.2d 1168, 1170 (8th Cir. 1985). To avoid summary dismissal, Plaintiffs must allege with particularity specific facts showing a meeting of the minds. This requires at the very least, specific facts showing a mutual understanding among alleged conspirators to take actions to an unconstitutional end. *Davis v. Jefferson Hosp. Ass'n*, 685 F.3d 675, 685 (8th Cir. 2012). The

allegations in Plaintiffs' Complaint fail to establish the first requisite element for a claim brought under § 1985(3).

Plaintiffs also make the peculiar allegation in Count V that Defendant Braithwaite, an African American, was in some unexplained way a part of the conspiracy by denying Plaintiffs' claims of discrimination. (Doc. 15 ¶¶ 313-15). And as with the rest of Count V, no specific facts are alleged in support of such a dubious conclusion. This is particularly so where the only specific allegations of *any* conduct by Defendant Braithwaite *anywhere* in the complaint were that he made a statement at a press conference that he never heard Defendant Doyle make a racial comment, (*Id.* ¶¶ 99-101), and that he had once been in proximity when Doyle allegedly told Plaintiff Simon to "stop walking with so much swagger before we send you back to the streets" yet said nothing. (*Id.* ¶ 219). This is no basis to maintain a plausible claim of conspiracy against Defendant Braithwaite as alleged in this Count—the only Count in which he is named.

Also fatal to Plaintiffs' conspiracy claim is their failure to allege any facts showing any act or actions in furtherance of any alleged conspiracy. In fact, Plaintiffs don't even bother to assert this essential element of a conspiracy claim within their Complaint. First, even if Plaintiffs had made some conclusory allegation of an act in furtherance of a conspiracy, their claim would still fail at this stage because Plaintiffs' failure to allege facts sufficient to show the existence of *any* conspiracy, it would thus be illusory for Plaintiffs to then allege that Defendants acted in furtherance of any agreement. More specifically, "'A complaint must allege . . . that one or more of the conspirators . . . did or caused to be done any act in furtherance of the object of the conspiracy . . . .'" *Andrews v. Fowler*, 98 F.3d 1069, 1079 (8th Cir. 1996) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971)); *see also Rodgers v. Univ. of Missouri Bd. of Curators*, 56 F. Supp. 3d 1037, 1055 (E.D. Mo. 2014) (dismissing conspiracy claim for reasons including that "Plaintiff

fails to allege what the actual role was agreed to by each individual in support of this discriminatory and retaliatory plan"). Plaintiffs' conspiracy claims also fail because of their omission of any facts showing any Defendant took any actions in furtherance of any alleged conspiracy.

Finally, Plaintiffs fail to demonstrate, as a matter of law, a conspiracy could even exist under the facts alleged because all Defendants are employees and agents of the same employer. The Eighth Circuit has summarized the inability to establish a conspiracy under such circumstances: "A conspiracy claim requires evidence of specific facts that show a 'meeting of the minds' among conspirators. A meeting of the minds requires at least two persons. Because a corporation and its agents are a single person in the eyes of the law, a corporation cannot conspire with itself. A government entity cannot conspire with itself either." *Barstad v. Murray Cnty.*, 420 F.3d 880, 887 (8th Cir. 2005); *see also Johnson v. Vilsack*, 833 F.3d 948, 958 (8th Cir. 2016) (stating intracorporate conspiracy doctrine shields employees of a single government department acting within the scope of their employment from constituting a conspiracy under § 1985).

As alleged in the Complaint, all the individually named Defendants are employed within the University of Iowa and acting in their respective employment capacities at all times relevant to this matter. (Doc. 15 ¶¶ 31-35, 304, 323). Plaintiffs' allegations of improprieties in the performance of Defendants' duties does not take them outside the intracorporate conspiracy doctrine. *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1078-79 (9th Cir. 2016) (citing *L. L. Nelson Enters., Inc. v. City of St. Louis, Mo.*, 673 F.3d 799, 812 (8th Cir. 2012)). Plaintiffs' conspiracy claims set forth in Counts V and VI of their Complaint must also be dismissed under the intracorporate conspiracy doctrine for failure to state a conspiracy under § 1985(3).

**F.  Count VII fails to plead sufficient facts to support a plausible claim for failure to train and supervise in violation of section 1983.**

Count VII fails because Plaintiffs fail to plead sufficient facts to support a § 1983 claim for failure to train and supervise.[6] Regardless of titles, government officials are generally only liable for their own individual misconduct. *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010). A supervisor can only be held liable for an inferior officer's constitutional violation "if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation." *Id.* (cleaned up). To plead a proper failure to train or supervise claim under § 1983, a plaintiff must show: (1) that the defendant was a supervisor; (2) that the defendant received notice of a pattern of unconstitutional acts committed by a subordinate; (3) that the defendant demonstrated deliberate indifference to or tacit authorization of the offensive acts; (4) that the defendant failed to take sufficient remedial actions; and (5) that such failure proximately caused plaintiff's injuries. *See Otey v. Marshall*, 121 F.3d 1150, 1155 (8th Cir. 1997); *see also Andrews v. Fowler*, 98 F.3d 1069, 1076 (8th Cir. 1996) ("It is necessary to show that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need."); *Thelma D. By & Through Delores A. v. Bd. of Educ. Of City of St. Louis*, 934 F.2d 929, 934 (8th Cir. 1991) (stating that defendant must have "had notice that its procedures were inadequate and likely to result in a violation of constitutional rights").

Plaintiffs fail to plead sufficient factual allegations to support a § 1983 claim for failure to train and supervise. Within Count VII itself, Plaintiffs fail to reference or allege with any

---

[6] Even though claims of failure to train and failure to supervise may be distinct claims the analysis of those claims is identical. *Liebe v. Norton*, 157 F.3d 574, 579 (8th Cir. 1998).

specificity any constitutional violations committed by any subordinates. In terms of an alleged failure to train, Plaintiffs provide nothing but "threadbare" assertions that Defendants failed to properly train staff members within the University football program. (*See* Doc. 15 ¶ 341 ("Defendants K. Ferentz and Barta failed to train and/or supervise properly staff . . . ."); *id.* ¶ 344 ("Defendants' systemic failure to train and/or supervise properly . . . .")). Nowhere in the rest of the Complaint do Plaintiffs make any specific allegations about what kind of training—or lack thereof—the coaching staff received. In addition to failing to set forth any facts relating to training or lack of training Plaintiffs also fail to set forth any facts in support of the necessary causation element. The same infirmities plague Plaintiffs' attempt to assert a claim of failing to supervise. Other than the generic allegation in Paragraph 341 of the Complaint that "K. Ferentz and Barta failed to train and/or supervise properly staff including, but not necessarily limited to Doyle and B. Ferentz..." there are no facts set forth to in any way identify what the factual basis for their claims are. Count VII must also be dismissed.

**G. Count VIII alleging a breach of contract fails to plead any facts plausibly alleging a contract between any of the Plaintiffs and any of the Defendants, the terms of that contract, or any breaches of such an illusory contract.**

To plead a claim for breach of contract under Iowa law, Plaintiffs must allege facts supporting: "(1) the existence of a contract; (2) the terms and conditions of the contract; (3) that it has performed all the terms and conditions required under the contract; (4) the defendant's breach of the contract in some particular way; and (5) that plaintiff has suffered damages as a result of the breach." *Horras v. Am. Cap. Strategies, Ltd.*, 729 F.3d 798, 803 (8th Cir. 2013) (quoting *Molo Oil Co. v. River City Ford Truck Sales, Inc.*, 578 N.W.2d 222, 224 (Iowa 1998)).

All thirteen named Plaintiffs appear to bring this claim. (*See* Doc. 15 ¶ 348). And it is the only claim Defendants do not seek to dismiss as barred by a statute of limitations. But it must still be dismissed because Plaintiffs do not plead "anything more than labels and conclusions" and thus

fail to allege sufficient facts "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

As with Count IV, Plaintiffs here again fail to allege facts plausibly supporting the existence of a contract and its terms. The only allegations of a contract included in the 11 paragraphs asserting this claim are that Plaintiffs "formed contractual relationships with the Defendants that touched on every aspect of their life at Iowa, including their participation in Iowa Athletics in exchange for a high-quality educational experience at a top Tier I public research institution and college degree free from discrimination and bullying, " (Doc. 15 ¶ 351), and that they and "the University of Iowa were under obligations to each other arising from the contract." (*Id.* ¶ 352). But Plaintiffs fail to allege whether this all-encompassing contract was oral or written. Or when it was entered into. Or whether it was a single contract with the University or multiple contracts with each Defendant. And they do not allege any particular "obligation" in the contract or contracts.

These are fatal defects. *See Gillis v. Principia Corp.*, 832 F.3d 865, 871-47 (8th Cir. 2016) (affirming dismissal of breach-of-contract claim full for failing to allege sufficient factual matter to state a plausible claim where the complaint was full of "scattershot allegations" that failed to identify any specific purported contractual obligations between University and its student); *see also Bissessur v. Ind. Univ. Bd. Of Trustees*, 581 F.3d 599, 602-04 (7th Cir. 2009) (dismissing breach-of-contract claim where complaint failed to identify University's promises to student, how they were communicated, what the student promised in return, and how it created a contract).

Neither do Plaintiffs provide any facts plausibly supporting a breach of a contract. They merely allege that "Defendants breached these contracts by, *inter alia*, failing to expel the systemic plague of racial discrimination and disparate treatment occurring within the Program during K. Ferentz's tenure." (Doc. 15 ¶ 355).

Even if one hunts for potentially relevant allegations in other claims—which the Court need not do—Plaintiffs provide little additional facts to support a plausible claim for breach of contract. They allege that six of the Plaintiffs—Wadley, Parker, Jolly, Cooper, Mends, and Simon—who received athletic scholarship "entered contractual relationships" when they "accepted their scholarship offers by signing the NCCA National Letter of Intent." (*Id.* ¶ 285). And they appear to insinuate that a contract may have been agreed to between one additional Plaintiff, Foy, when he was offered a preferred walk-on opportunity. (*See id.* ¶ 286). But here still Plaintiffs do not allege whether any of these purported contracts were written, what precise terms were included, and which of those terms were breached. Because Plaintiffs have failed to allege sufficient facts to state a plausible breach-of-contract claim, Count VIII must also be dismissed.

## CONCLUSION

For these reasons, Plaintiffs' entire First Amended Complaint must be dismissed for failing to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Respectfully submitted,

**THOMAS J. MILLER**
Attorney General of Iowa

*/s/ Jeffrey S. Thompson*
JEFFREY S. THOMPSON
Solicitor General

*/s/ Jeffrey C. Peterzalek*
JEFFREY C. PETERZALEK
*/s/ Christopher J. Deist*
CHRISTOPHER J. DEIST
*/s/ Samuel P. Langholz*
SAMUEL P. LANGHOLZ
*/s/ William A. Hill*
WILLIAM A. HILL
Assistant Attorneys General
Department of Justice-Special Litigation
Hoover State Office Building
Des Moines, Iowa 50319
(515) 281-4419/4213
jeffrey.thompson@ag.iowa.gov
jeffrey.peterzalek@ag.iowa.gov
christopher.deist@ag.iowa.gov
sam.langholz@ag.iowa.gov
william.hill@ag.iowa.gov
ATTORNEYS FOR DEFENDANTS

**PROOF OF SERVICE**
The undersigned certifies that the foregoing instrument was served upon each of the persons identified as receiving a copy by delivery in the following manner on January 25, 2021:

☐ U.S. Mail            ☐ FAX
☐ Hand Delivery        ☐ Overnight Courier
☐ Federal Express      ☐ Other
☒ CM/ECF

Signature: */s/ Audra Drish*