IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| AKRUM WADLEY, JONATHAN PARKER, MARCEL JOLY, AARON MENDS, MAURICE FLEMING, REGGIE SPEARMAN, KEVONTE MARTIN-MANLEY, DARIAN COOPER, LARON TAYLOR, BRANDON SIMON, JAVON FOY, ANDRE HARRIS, and TERRENCE HARRIS, | ) ) ) ) ) ) ) ) ) | Case No. 4:20-cv-00366-SMR-HCA |
| Plaintiffs, | ) ) ) | ORDER ON DEFENDANTS' MOTION TO DISMISS |
| v. | ) ) | |
| UNIVERSITY OF IOWA, BOARD OF REGENTS OF THE STATE OF IOWA, GARY BARTA, KIRK FERENTZ, BRIAN FERENTZ, CHRISTOPHER DOYLE, and RAIMOND BRAITHWAITE, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

A group of African-American football players allege that during the time they participated in the University of Iowa football program they endured racially-motived discrimination, harassment, and bullying by members of the coaching staff—coaches charged with shaping their growth both on and off the field. Their allegations are searing. They allege coaches directed vile racial epithets at them. They allege they were criticized for their hairstyles, clothing, and vernacular, often in front of their teammates. They allege rules were enforced against them and other African-American players but were not enforced against their white teammates.

Last summer, after the death of George Floyd at the hands of a Minneapolis police officer, African-Americans all over the United States came forward to share difficult and painful accounts of racism and discrimination they experienced in all areas of their lives. James Daniels, a former

1

University of Iowa football player, did the same. He tweeted "[t]here are too many racial disparities in the Iowa football program Black players have been treated unfairly for far too long." [ECF No. 15 ¶ 3] (Plaintiffs' Amended Complaint). Daniels's sentiments were soon echoed by other former members of the University of Iowa football program. *Id.* ¶ 4.

In response to the outcry from these revelations, the University of Iowa retained a law firm to investigate the athletes' accusations. The law firm issued a public report in July 2020. [ECF No. 22 at 36–63]. Shortly after the University of Iowa ("University") issued the report, thirteen former University of Iowa players ("Plaintiffs") filed suit in state court. Plaintiffs name the University, the Board of Regents of the State of Iowa ("Board"), Athletic Director Gary Barta, head football coach Kirk Ferentz, assistant coach Brian Ferentz[1], former assistant coach Christopher Doyle, and assistant coach Raimond Braithwaite as Defendants. Plaintiffs allege violations of Title VI of the Civil Rights Act of 1964 ("Title VI"), Deprivation of Rights under 42 U.S.C. § 1981 and § 1985, and breach of contract. [ECF No. 1-1]. Defendants removed the case to this Court on December 1, 2020. [ECF No. 1]. Defendants moved to dismiss on December 14, 2020. [ECF No. 10]. Plaintiff filed an Amended Complaint on January 13, 2021, [ECF No. 15], and now Defendants renew their Motion to Dismiss, [ECF No. 16].

Defendants argue that most of the named Plaintiffs are time-barred from asserting their claims. The Plaintiffs who are not time-barred, Defendants assert, fail to plead sufficient facts to satisfy the statutory elements required to maintain each claim. The parties requested oral argument on the Motion but the Court finds that it can resolve the Motion without it. *See* LR 7(c) ("A motion will be decided without oral argument unless the court orders otherwise. A request for oral

---

[1] To avoid confusion, Kirk Ferentz and Brian Ferentz will be identified by their full name when the Court discusses either Defendant individually.

argument . . . must be supported by a showing of good cause."). For the reasons that follow, Defendants' Motion to Dismiss is GRANTED in part and DENIED in part.

## I.   BACKGROUND

The Amended Complaint brings eight claims against Defendants.[2]  Counts I through III allege claims based on violations of Title VI: (1) racially hostile environment (Count I); (2) retaliation (Count II); and (3) systemic pattern and practice of racial discrimination (Count III). [ECF No. 15 ¶¶ 254–80]. Counts IV through VII are brought pursuant to § 1983: (4) racial discrimination in contractual rights prohibited under § 1981 (Count IV); (5) conspiracy to deprive persons of equal protection prohibited under § 1985 (Count V); (6) conspiracy to deprive persons of equal protection prohibited under § 1985 as to Plaintiffs Mends, Simon, and Foy (Count VI); and (7) failure to train and supervise pursuant to § 1983 against Defendants Kirk Ferentz and Gary Barta (Count VII). [ECF No. 15 ¶¶ 281–346]. Count VIII alleges a breach of contract claim. [ECF No. 15 ¶¶ 347–57].

Defendants move to dismiss the Amended Complaint in its entirety. They argue each count fails to plead sufficient facts to support plausible claims for each cause of action. Defendants further argue that all but three Plaintiffs—Mends, Simon, and Foy—are time-barred from bringing their claims because the statute of limitations for claims pursuant to Title VI, § 1981, and § 1983 is two years.

Plaintiffs resist Defendants' Motion to Dismiss. They concede the applicable statute of limitations is two years for claims pursuant to Title VI and § 1983. However, they contend the

---

[2] Because not all claims are asserted against each Defendant, the Court will specify which claims are brought against each Defendant if it is relevant in the analysis. As noted, Defendants argue that several of the claims are time-barred as to specific Plaintiffs. This will be noted as necessary in the evaluation of the Motion to Dismiss.

correct limitations period for Count IV, brought pursuant to § 1981, is four years.  Plaintiffs further argue they have pleaded sufficient facts to state plausible claims for all their remaining claims. The Court will evaluate each in turn.

## II.  DISCUSSION

In their Resistance to the Motion to Dismiss, Plaintiffs request the Court dismiss Counts V and VI in their entirety.  [ECF No. 22 at 7].  Plaintiffs also ask the Court to dismiss Barta as to all counts.[3]  *Id.*  They further request the dismissal of all individual Plaintiffs in Count VIII.  *Id.* Therefore, Count V and Count VI are DISMISSED WITHOUT PREJUDICE.  Defendant Barta is DISMISSED as a named defendant.  Defendant Braithwaite[4] is DISMISSED.  Count VIII is DISMISSED only as to Defendants Kirk Ferentz, Brian Ferentz, and Doyle.  The Court will begin its analysis with the statute of limitations issues and then proceed to the Motion to Dismiss on its merits.

### A.  Timeliness of Plaintiffs' Claims

Plaintiffs initially filed this suit in Iowa District Court for Polk County on November 12, 2020.  [ECF No. 1-1].  Defendants argue that any Plaintiff who left the University of Iowa football program prior to November 12, 2018 is time-barred from maintaining a claim pursuant to Title VI, § 1981, or § 1983.  The Amended Complaint pleads that only Plaintiffs Mends, Simon, and Foy participated as a member of the University of Iowa football program during 2018 or later.  [ECF No. 15 ¶¶ 18; 24; 25].  Plaintiffs respond to this argument by asserting that under a federal catchall statute of limitations the applicable limitations period for their

---

[3] Barta was named as a Defendant in Counts IV, VII, and VIII.

[4] Defendant Braithwaite is only named as a Defendant in Count V.

§ 1981 claims is actually four years, in which case Plaintiffs Wadley, Parker, Joly, and Cooper may also maintain claims under § 1981.

There is no express statute of limitations in § 1981.[5]  *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 371 (2004).  The Supreme Court has held that when a federal statute does not contain its own limitations period, courts should select "the most appropriate or analogous state statute of limitations."  *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 660 (1987) (citing *Wilson v. Garcia*, 471 U.S. 261, 266–68 (1985)).  The Court has characterized both § 1981 and § 1983 as personal injury statutes, so claims brought under either law are subject to the limitations period in the forum state's personal injury statute.  *Id.* at 661–64.

The United States Court of Appeals for the Eighth Circuit has held that Title VI claims are personal injury actions as well, subject to the forum state's limitations period.  *See Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 617 (8th Cir. 1995).  In Iowa, personal injury claims must be brought within two years of their accrual.  Iowa Code § 614.1(2).

---

[5] 42 U.S.C. § 1981 provides:

> a. All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

> b. For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

1.  Interaction between Section 1981 and Section 1658

In 1990, Congress passed a "catchall" statute providing for an extended statute of limitation period for subsequent federal laws that do not provide their own statute of limitations: "[A] civil action arising under an Act of Congress enacted after the date of the enactment of this section may not be commenced later than 4 years after the cause of action accrues." 28 U.S.C. § 1658(a).  Note that § 1658 is prospective, not retroactive.  The Supreme Court has interpreted the scope of § 1658—whether a claim "aris[es] under an Act of Congress"—to encompass causes of action "made possible by a post-1990 enactment." *Jones*, 541 U.S. at 382.

Prior to 1991, § 1981 only addressed racial discrimination in the formation and enforcement of contracts.  *Patterson v. McLean Credit Union*, 491 U.S. 164, 176 (1989).  This included "the refusal to enter into a contract with someone, as well as the offer to make a contract only on discriminatory terms." *Id.* at 177.  The *Patterson* Court held the prohibition against racial discrimination under the pre-1991 amendments to § 1981 did "not extend, as a matter of either logic or semantics, to conduct by the employer after the contract relation has been established, including breach of the terms of the contract or imposition of discriminatory working conditions," but rather, "implicate[d] the performance of established contract obligations and the conditions of continuing employment." *Id.*

Two years after *Patterson*, Congress amended § 1981 to include a new subsection which defined "make and enforce contracts" as "termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *Jones*, 541 U.S. at 373. (quoting 42 U.S.C. § 1981(b)).

Defendants insist that the statute of limitations for Count IV is two years because § 1981 is only enforceable against a state actor pursuant to § 1983. *See Artis v. Francis Howell N. Band*

-6-

*Booster Ass'n*, 161 F.3d 1178, 1181 (8th Cir. 1998) ("A federal action to enforce rights under § 1981 against a state actor may only be brought pursuant to § 1983."); *Wycoff v. Menke*, 773 F.2d 983, 984 (8th Cir. 1985) ("all [§ 1983] actions [are] governed by a two-year statute of limitations") (citing Iowa Code § 614.1(2)).

The Court finds that the four-year limitations period in § 1658 is the proper limitations period here because Plaintiffs' claims are "made possible by a post-1990 enactment" of Congress. In Count IV, Plaintiffs do not allege they were subjected to racial discrimination in the formation of their contracts, they allege they were subjected to discriminatory "working conditions" as student-athletes in the University of Iowa football program.  These allegations fall squarely within the ambit of § 1981 post-amendment, because such claims would not have been viable prior to the amendment, given the Supreme Court's interpretation in *Patterson*.  To find that § 1658 is inapplicable here would transform the *Jones* Court's interpretation of "arising under" into "based solely upon"—a narrow reading the Supreme Court rejected.  *Jones*, 541 U.S. at 383.  The Court's conclusion finds support in other courts that have considered the interaction between the three statutes post-*Jones*.  *See Baker v. Birmingham Bd. of Educ.*, 531 F.3d 1336, 1338 (11th Cir. 2008) (concluding a plaintiff's claims "were 'made possible by a post-1990 enactment' and 'therefore [are] governed by § 1658's 4-year statute of limitations" (citation omitted) (alteration in original)); *Mveng-Whitted v. Virginia State Univ.*, 927 F. Supp. 2d 275, 279 (E.D. Va. 2013) (holding a § 1981 claim based on post-contract formation conduct only actionable after 1991 amendments); *DeNigris v. New York City Health and Hosps. Corp.*, 861 F. Supp. 2d 185, 191–92 (S.D. N.Y. 2012) ("[T]o the extent Plaintiffs § 1981 and § 1983 claims seek recovery for discriminatory acts occurring in the course of her contractual relationship with Defendants, her cause of action was authorized by the 1991 amendment and [§ 1658] will apply."); *Robinson v. City of Arkansas*

*City*, 896 F. Supp. 2d 1020, 1042 (D. Kan. 2012) ("[Plaintiff's] claims are based on post-formation conduct, so they are subject to the four-year statute of limitations.").  Plaintiffs Wadley, Parker, Joly, Cooper, Mends, Simon, and Foy are not time-barred from bringing claims under § 1981.

### 2.   Timeliness of Remaining Claims

Plaintiffs' remaining claims are brought pursuant to Title VI, § 1983, and state contract law.  Title VI and § 1983, as noted, are subject to a two-year statute of limitations.  Defendants request the Court dismiss all Title VI and § 1983 claims by all Plaintiffs except Plaintiffs Mends, Simon, and Foy.  Plaintiffs agree that these claims are governed by a two-year statute of limitations.  [ECF No. 22 at 6].  Defendants do not ask for the Court to dismiss Count VIII on statute of limitations grounds as the period for those claims are either five years or ten years.  *See* Iowa Code § 614.1(4), (5).

Accordingly, none of the claims by Plaintiffs Mends, Simon, and Foy are time-barred. Count IV is also not time-barred as to Wadley, Parker, Joly, and Cooper under the four-year limitations of § 1658.  Counts I, II, III, IV, and VII are DISMISSED as to Plaintiffs Fleming, Spearman, Martin-Manley, Taylor, Andre Harris, and Terrence Harris.

### B.   *Rule 12(b)(6) Failure to State a Claim*

Defendants move to dismiss all counts pursuant to Federal Rule of Civil Procedure 12(b)(6), alleging that Plaintiffs fail to plead sufficient facts to support their claims. Rule 12(b)(6) permits a motion to dismiss for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  To meet this standard, and thus survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Braden v.*

*Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  Although the plausibility standard "is not akin to a 'probability requirement,'" it demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).  "The facts alleged in the complaint 'must be enough to raise a right to relief above the speculative level.'" *Clemons v. Crawford*, 585 F.3d 1119, 1124 (8th Cir. 2009) (quoting *Drobnak v. Andersen Corp.*, 561 F.3d 778, 783 (8th Cir. 2009)).

"[T]he rules of procedure continue to allow notice pleading through 'a short and plain statement of the claim showing that the pleading is entitled to relief.' 'Specific facts are not necessary; the statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."'" *Johnson v. Precythe*, 954 F.3d 1098, 1101 (8th Cir. 2020) (citation omitted).  "Whether [Plaintiffs] can *prove* the claim through admissible evidence . . . is a different matter to be addressed at a later stage of the proceedings." *Id.*

### 1. Title VI generally

Title VI of the Civil Rights Act of 1964 provides: "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.  Title VI provides for a private right of action for damages and injunctive relief. *Alexander v. Sandoval*, 532 U.S. 275, 279 (2001); *cf. Franklin v. Gwinnett Cnty. Pub. Sch.*, 503 U.S. 60, 72 (1992) ("Congress did not intend to limit the remedies available in a suit brought under Title IX.").

Claims under Title VI are interpreted the same as Title IX.  *Cannon v. Univ. of Chicago*, 441 U.S. 677, 696 (1979) ("The drafters of Title IX explicitly assumed that it would be interpreted and applied as Title VI had been during the preceding eight years.").  Claims under Title VI and Title IX are "parallel" except the former "prohibits race discrimination . . . and applies in all programs receiving federal funds," whereas the latter only addresses education programs.  *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 286 (1998).  Title VII and § 1981 claims are also analyzed the same as Title VI.[6]

An institution receiving federal funds is not liable for money damages for discrimination by their employees based on a theory of *respondeat superior*, rather, the institution must have actual knowledge of the discrimination—not simply constructive notice.  *See id.* at 285.  Actual knowledge of discrimination will be imputed to the institution only if the knowledge is possessed by "an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures . . . [but] fails adequately to respond."  *Id.* at 290.  An inadequate response must rise to the level of deliberate indifference to the discrimination.  *Id.*

### a. Count I: Racially Hostile Environment

Count I of the Amended Complaint alleges that "Plaintiffs experienced severe, pervasive, and objectively offensive acts of racial discrimination . . . on account of their race."  [ECF No. 15 ¶ 261].  They allege that during their participation in the University of Iowa football program they were subjected to a hostile racial environment where coaches openly used racial epithets and racially derogatory language, ridiculed them for their dress and hair styles, and insulted their intelligence for their use of non-white vernacular.  They allege this harassment was

---

[6] An "inquiry into intentional discrimination is essentially the same for individual actions brought under sections 1981 and 1983, and Title VII."  *Lauderdale v. Texas Dep't of Crim. Just., Institutional Div.*, 512 F.3d 157, 166 (5th Cir. 2007).

racially motivated and occurred on a regular basis sufficient for it to be "severe, pervasive, and objectively offensive." *Id.* ¶ 263.  Defendants respond that the Amended Complaint fails to plead sufficient facts to support a hostile environment claim and point out that few allegations specifically relate to Plaintiffs Mends, Simon, and Foy—the only Plaintiffs whose claims are not time-barred.  As such, Defendants move to dismiss Count I for failure to state a claim.

A prima facie claim for a racially hostile environment under Title VI requires defendant be deliberately indifferent to known acts of discrimination occurring under its control.  *See Shrum ex rel. Kelly v. Kluck*, 249 F.3d 773, 782 (8th Cir. 2001) (Title IX).  "[T]he deliberate indifference must, at a minimum, cause students to undergo harassment or make them liable or vulnerable to it."  *K.T. v. Culver-Stockton Coll.*, 865 F.3d 1054, 1059 (8th Cir. 2017) (quoting *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 644–45 (1999)).  Discrimination under Title VI must be motivated by race and be "so severe, pervasive, and objectively offensive, and that so undermines and detracts from the victims' educational experience, that the victim-students are effectively denied equal access to an institution's resources and opportunities."  *Davis*, 526 U.S. at 651; *see Wolfe v. Fayetteville, Ark. Sch. Dist.*, 648 F.3d 860, 864, 867 (8th Cir. 2011).

To survive a motion to dismiss on a hostile racial environment claim, Plaintiffs must plead: "(1) they belong to a protected group, (2) they were subjected to unwelcome racial harassment, (3) the harassment was because of their race, and (4) the harassment was sufficiently severe or pervasive so as to affect 'a term, condition, or privilege' of [their] [education]."  *Ellis v. Houston*, 742 F.3d 307, 319 (8th Cir. 2014) (§ 1981 claim) (first alteration in original) (citation omitted).  The harassment must be subjectively perceived as severe and "a reasonable person would find the environment hostile or abusive."  *Id.* (citation omitted).

-11-

Defendants urge the Court to dismiss the claim for a racially hostile environment because allegations specifically relating to Plaintiffs Mends, Simon, and Foy are sparse. Defendants assert that the sole allegation specifically related to Plaintiff Mends is an incident where white players were allowed to post a photograph to their social media profiles showing them holding firearms but he was denied the opportunity to do the same. [ECF No. 15 ¶¶ 156–59]. Defendants downplay allegations by Plaintiff Simon as limited only to Defendant Doyle which Defendants claim "do not contain a plausible or explained nexus between the conduct and Plaintiff Simon's race." [ECF No. 16-1 at 10]. The allegations include Doyle making remarks about Simon's height and intelligence and his "constant bull[ying] of [Simon] merely because [he] is African-American." [ECF No. 15 ¶ 221]. Defendants take issue with the lack of specificity of Plaintiff Foy's claims that Defendant Doyle "bullied" him because the allegations do not include "any sort of dates, specificity in the 'bullying,' or degree of frequency to this allegation." [ECF No. 16-1 at 11].

Defendants understate the factual allegations in the Amended Complaint. The facts advanced by Plaintiffs allege an atmosphere permeated by racial harassment. They allege that Defendants Doyle and Brian Ferentz would regularly use racial epithets and other racially discriminatory language.[7] Plaintiffs allege the "African-American athletes were commonly referred to as 'stupid,' 'hood' and 'dumb'" and such comments were "made in open forums during team meetings and at practice regularly, if not daily, in the presence of [Kirk] Ferentz, other coaches, and teammates." [ECF No. 15 ¶¶ 53, 54]. According to Plaintiffs, social media posts of African-American players were "frequently displayed" where coaches would humiliate them "for

---

[7] Paragraph 50 of the Amended Complaint lists comments including: "what gang is he in"; "dumbass black player"; "you are not smart at all"; "stupid mother******"; "go back to the ghetto." The two coaches are alleged to have "commonly" used the word "n*****" (hereinafter "the n-word") [ECF No. 15 ¶ 50].

how 'stupid' they sounded for their use of non-White vernacular."  *Id.* ¶ 61.  The Amended

Complaint alleges many of these incidents occurred in team-wide settings or even specifically

directed at time-barred Plaintiffs, but where "there is evidence that the offensive remarks became

known to all plaintiffs, their relevance to claims of a hostile work environment is clear."

*Ellis*, 742 F.3d at 320–21 (citations omitted).

Plaintiffs further allege that team rules prohibited football players from

expressing their political views in a public forum but they were not applied consistently.  They

allege African-American players were prohibited from kneeling during the National Anthem to

protest police brutality.  *Id.* ¶ 63.  In contrast, Plaintiffs allege that a group of their white teammates

were allowed to "personally deliver[] a custom-made Iowa football jersey to President Donald J.

Trump at a political rally."[8]  *Id.* ¶ 65.  Plaintiffs say this alleged violation of team rules was never

addressed by Kirk Ferentz or other coaches.  *Id.* ¶ 67.

The Amended Complaint also alleges that a group of athletes, designated as the

"Leadership Group," were elected by their teammates "to act as a conduit for players to present

[Kirk] Ferentz with any grievances or complaints they had with the Program."  *Id.* ¶ 103.  It alleges

the Leadership Group brought concerns about these allegations to the attention of Kirk Ferentz.

*Id.* ¶¶ 72; 162.  Plaintiff Mends was one of the members of the Leadership Group.  *Id.* ¶ 161.

Plaintiff Mends alleges that, as a result of Kirk Ferentz's non-responsiveness to concerns about

the program's "system and culture," he left the program.  *Id.* ¶ 163; 164.

The Amended Complaint pleads sufficient facts to proceed.  Plaintiffs Mends, Simon, and

Foy all belong to a protected group; they advance facts that they were subjected to racially

---

[8] A picture is included in the Amended Complaint showing a group of white players
standing around President Trump as he holds a University of Iowa football jersey with "Trump"
emblazoned on the name plate of the jersey.

motivated harassment; and the harassment was severe or pervasive to affect "a term, condition, or privilege" of their education. *See Ellis*, 742 F.3d at 319. Plaintiffs allege that Mends left the program after Kirk Ferentz ignored his complaints, [ECF No. 15 ¶ 164]; they allege Simon transferred from the school after his complaints to "athletic academic advising staff" went unheeded, *id.* ¶ 222; and they allege Foy exited the program because he was concerned "he would continue to be subjected to racially-motivated disparate treatment," *id.* ¶ 229.

The facts advanced by Plaintiffs describe harassment that is actionable under the law. The alleged harassment is pervasive. It occurred, particularly the racial epithets and insults, on a regular basis according to the Amended Complaint. [ECF No. 22 ¶¶ 49; 50; 54]. The allegations, taken as true on a Motion to Dismiss, are very severe. The Amended Complaint describes members of the coaching staff engaging in regular ridicule and discrimination of Plaintiffs and other African-American athletes based on their race. The comments about players' intelligence, gang membership, and purported criminality are very severe—particularly coming from individuals in positions of authority such as Defendants Doyle and Brian Ferentz. The alleged use of the "n-word" needs little exposition from the Court regarding its severity. *See Monteiro v. Tempe Union High Sch. Dist.*, 158 F.3d 1022, 1034 (9th Cir. 1998) (referring to the word as "the most noxious racial epithet in the contemporary American lexicon").

Defendants' attempts to isolate specific incidents are unpersuasive. The inquiry into whether an environment is objectively hostile "is shaped by the accumulation of abusive conduct, and the resulting harm cannot be measured by carving it into a series of discrete incidents." *Ellis*, 742 F.3d at 319 (quoting *Hathaway v. Runyon*, 132 F.3d 1214, 1222 (8th Cir. 1997)). When a plaintiff sets forth "[s]pecific examples cited as discriminatory and alleged to be part of a pattern of hostile treatment," courts are to view these as "'examples of the offensive racial

incidents' . . . not as 'an exhaustive litany of every offensive racial slur or incident' which occurred." *Id.* (citation omitted). Furthermore, "racist attacks need not be directed at the complainant in order to create a hostile educational environment." *Monteiro*, 158 F.3d at 1033. "[W]hen a pattern of discriminatory conduct is alleged, specific individual acts should be viewed as illustrative rather than as isolated incidents." *Ellis*, 742 F.3d at 320.

It is also important to highlight the procedural posture of this case. It is before the Court on a Motion to Dismiss. The allegations are sufficient to state a claim for a racially hostile environment at this stage; to succeed at the merits stage, Plaintiffs will need additional factual development to tie much of the racial harassment to the individual Plaintiffs. But the Court must evaluate Defendants' Motion to Dismiss by taking all of Plaintiffs' allegations as true. *Smithrud v. City of St. Paul*, 746 F.3d 391, 397 (8th Cir. 2014). The Court does not have any evidence before it to evaluate—only the pleadings—and all reasonable inferences must be drawn in Plaintiffs' favor. *See Crooks v. Lynch*, 557 F.3d 846, 848 (8th Cir. 2009). Plaintiffs' Amended Complaint states a claim for a racially hostile environment under Title VI. Accordingly, Defendants' Motion to Dismiss Count I is DENIED.

### b. Count II: Retaliation

In Count II, the Amended Complaint alleges Plaintiff Mends was retaliated against for "making complaints and/or supporting other teammates' complaints" regarding Defendants' racially discriminatory conduct. [ECF No. 15 ¶ 268]. No other Plaintiff is named in Count II. To state a claim for retaliation, Plaintiff Mends must plead: (1) he engaged in protected conduct; (2) he suffered an adverse action which a reasonable person would perceive as materially adverse; and (3) the adverse action was causally linked to his protected conduct. *Higgins v.*

*Gonzales*, 481 F.3d 578, 589 (8th Cir. 2007), *abrogated on other grounds by Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011) (en banc).

Plaintiff Mends fails to state a claim for retaliation of Title VI protected conduct. The Amended Complaint alleges that Plaintiff Mends complained to Kirk Ferentz about disparate treatment between white players and African-American players but omits any materially adverse action as a direct result of his protected conduct. Plaintiffs concede Count II "omitted a materially adverse action," but insists "that even the mere act of restricting coveted playing time would be perceived as objectively offensive and injurious to a reasonable person." [ECF No. 22 at 15]. The Court agrees. However, there is no allegation such action was taken against Plaintiff Mends. The conclusory statements of law and unspecified adverse actions are insufficient to state a claim for retaliation. Defendants' Motion to Dismiss Count II is GRANTED.

c. Count III: Systemic Pattern and Practice of Discrimination

Count III alleges "Defendants created and maintained a systemic pattern and practice of unlawful race discrimination." [ECF No. 15 ¶ 276]. Plaintiffs allege the "pattern and practice of intentional race discrimination is so pervasive so as to constitute" a policy of intentional race discrimination. *Id.* ¶ 277. They contend the "pattern and practice of intentional discrimination is backed by statistical disparities," including racial imbalances in graduation rates, transfer rates, and drug testing. *Id.* ¶ 278.

Defendants ask the Court to dismiss Count III asserting that individual plaintiffs may only bring Title VI claims for intentional discrimination. They also assert Plaintiffs do not plead sufficiently detailed facts to support a "pattern and practice" of racial discrimination against Plaintiffs Mends, Simon, and Foy. [ECF No. 16-1 at 14]. Plaintiffs resist dismissal claiming the styling of their claim is "to emphasize the widespread nature of the discriminatory acts towards

African-American players, including Plaintiffs."  [ECF No. 22 at 15].  They contend that under *International Brotherhood of Teamsters v. United States*, 431 U.S. 324 (1977), "statistics showing racial or ethnic imbalance are probative . . . because such imbalance is often a telltale sign of purposeful discrimination."  *Id.* at 339 n.20.

Under Title VI, a private individual cannot bring a disparate impact claim. *Sandoval*, 532 U.S. at 280 (observing it is "beyond dispute" that Title VI "prohibits only intentional discrimination").  Plaintiffs acknowledge this but insist the statistical disparities they advance support an intentional discrimination claim.  However, case law is clear on this point— proof of disparate impact—alone—is not sufficient to state a claim for intentional discrimination. *Mumid v. Abraham Lincoln High Sch.*, 618 F.3d 789, 794 (8th Cir. 2010).  The cases Plaintiffs rely upon for their "pattern and practice" claim—*Int'l Brotherhood* and *Hazelwood Sch. Dist. v. United States*, 433 U.S. 299 (1977)—are distinguishable.  Both cases were brought by the federal government, not private litigants.  *See Int'l Brotherhood*, 431 U.S. at 328; *Hazelwood Sch. Dist.*, 433 U.S. at 301.  This Court is bound by the interpretation of Title VI by the Supreme Court which has expressly held Title VI does not create a private cause of action for disparate impact claims.  *Sandoval*, 532 U.S. at 285.  Defendants' Motion to Dismiss Count III is GRANTED.

### d. Count IV: Deprivation of Rights Under § 1981

Plaintiffs allege in Count IV that Defendants' conduct violated their rights under § 1981. It provides, in pertinent part: "All persons . . . shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens . . . ."  42 U.S.C. § 1981.  The Court discussed, *supra*, that Plaintiffs Mends, Simon, Foy, Wadley, Parker, Joly, and Cooper are all within the four-year statute of limitations to a bring claim under § 1981.  Defendants argue that Count IV merely recites the elements of a § 1981 claim supported by "'naked assertion[s]' devoid of 'further factual

enhancement.'" *Iqbal*, 556 U.S. at 678 (alteration in original) (citation omitted).  They ask the Court to dismiss Count IV for failure to state a claim.

Plaintiffs must allege four elements to maintain a claim under § 1981: "(1) membership in a protected class, (2) discriminatory intent on the part of the defendant, (3) engagement in a protected activity, and (4) interference with that activity by the defendant." *Gregory v. Dillard's, Inc.*, 565 F.3d 464, 469 (8th Cir. 2009).  "While § 1981 prohibits racial discrimination in 'all phases and incidents' of a contractual relationship, the statute 'does not provide a general cause of action for race discrimination.'" *Id.* at 468 (citations omitted).  A claim brought pursuant to § 1981 "must initially identify an impaired 'contractual relationship.'" *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006).

The contractual relationship which Plaintiffs rely upon for Count IV is the relationship between the University of Iowa and Plaintiffs.  The Supreme Court has held that "a contract for educational services is a 'contract' for purposes of § 1981." *Gratz v. Bollinger*, 539 U.S. 244, 276 n.23 (2003) (citing *Runyon v. McCrary*, 427 U.S. 160, 172 (1976)).  This includes college athletics.  *See Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 562 (3d Cir. 2002) (evaluating a § 1981 claim in the context of college athletics).

Count IV names Kirk Ferentz, Brian Ferentz, and Doyle as Defendants.  Plaintiffs assert that the basis for § 1981 liability as to Brian Ferentz and Doyle was their direct participation in racially harassing acts alleged by Plaintiffs.  "A plaintiff may prove intentional race discrimination using either direct or indirect (circumstantial) evidence." *Putman v. Unity Health Sys.*, 348 F.3d 732, 734 (8th Cir. 2003).  The Court finds that, consistent with its conclusion for Count I, the Amended Complaint states a claim for intentional discrimination.  The Court will not repeat the pleaded facts of racial harassment but given the allegations that Brian Ferentz and Doyle

regularly used verbal abuse and racial epithets, the Court finds the facts advanced are sufficient to allow a reasonable inference that Brian Ferentz and Doyle intentionally discriminated against Plaintiffs during the limitations period under § 1981.

The Amended Complaint, however, does not allege any intentional discriminatory act by Kirk Ferentz.  Plaintiffs urge that the allegations that Kirk Ferentz was aware of the harassing and discriminatory language used by Brian Ferentz and Doyle is sufficient to establish his deliberate indifference.   They further argue that "his own racially suspect comments and selective enforcement of team rules is sufficient to overcome dismissal."  [ECF No. 22 at 18].  However, a claim under § 1981 requires Plaintiffs to plead "discriminatory intent."  *Dillard's*, 565 F.3d at 469. Deliberate indifference is not enough.   Defendants' Motion to Dismiss Count IV as to Brian Ferentz and Doyle is DENIED.  Count IV is DISMISSED as to Kirk Ferentz.

### e. Count VII: Failure to Train or Supervise

Plaintiffs bring Count VII pursuant to § 1983, alleging Kirk Ferentz failed to train and supervise his coaching staff, leading to "pervasive discriminatory behavior against African American players" and Plaintiffs.  [ECF No. 15 ¶ 341].  Liability under § 1983 does not lie against a supervisor on a *respondeat superior* theory.  *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). Rather, Plaintiffs must prove a supervisor failed to supervise and train a subordinate to be held liable under § 1983.  This requires Plaintiffs demonstrate Kirk Ferentz: (1) had notice of a pattern of unconstitutional acts committed by subordinates; (2) demonstrate deliberate indifference to or tacit authorization of those acts; (3) fail to take sufficient remedial actions; and (4) failure to remediate caused injury to Plaintiffs.  *Wilson v. City of North Little Rock*, 801 F.2d 316, 322 (8th Cir. 1986).

Fatal to Plaintiffs' claim is Count VII does not allege any specific constitutional violation, much less that Kirk Ferentz had notice of such violation and failed to respond.  Plaintiffs essentially acknowledge this flaw in their Resistance to Defendants' Motion but urge the Court to consider Count VII as a § 1983 claim under the Equal Protection Clause of the Fourteenth Amendment. The Court cannot do so.  The Court's analysis is limited to the pleadings, and Plaintiffs have failed to state a claim for liability on the part of Kirk Ferentz under § 1983 for failure to train and supervise.  Accordingly, Defendants' Motion to Dismiss Count VII is GRANTED.

### f. Count VIII: Breach of Contract

The final claim in the Amended Complaint is a state law claim for breach of contract.  The remaining Defendants under Count VIII are the University and the Board.[9]  Plaintiffs allege in Count VIII that they performed their obligations under the contracts "including presenting their complaints and grievances to the coaching staff."  [ECF No. 15 ¶ 354].  They allege Defendants breached *their* contract by "failing to expel the systemic plague of racial discrimination and disparate treatment occurring within the Program."  *Id.* ¶ 355.  They further allege that they have incurred damages because of the breach.

Defendants move to dismiss.  They argue that the Amended Complaint fails to mention any contractual documents, much less any of its terms.  Plaintiffs' Resistance directs the Court to the University's Operations Manual as the source of their contract claim.  Defendants respond this argument is foreclosed by the Iowa Supreme Court's decision in *Petro v. Palmer Coll. of Chiropractic*, 945 N.W.2d 763, 780 (Iowa 2020) (holding a college's "general statements of nondiscrimination" in application and equal opportunity policy did not form a contract).

---

[9] Defendants did not move for dismissal of any Plaintiffs on statute of limitations grounds.

The Court finds there is no enforceable contract here.  Plaintiffs fail to plead any contract in the Amended Complaint.  Even under their theory that the University's Operations Manual provides a binding contract between the parties, they fail to follow *Petro*'s dicta—that if a school's "student handbook amounts to a binding contract . . . at most [the University's] contractual commitment in the area of nondiscrimination was to follow the identified processes and procedures for addressing discrimination complaints."  *Id.* at 780.  Plaintiffs concede they failed to do this but assert "the Court may infer that the 'processes and procedures for addressing discrimination complaints' were wholly unavailable to Plaintiffs" because of their fear of retaliation due to previous discrimination and threats."  [ECF No. 22 at 21].  The Court will decline Plaintiffs' invitation to a novel reading of state contract law, especially when such pleading is absent from the Amended Complaint.  Defendants' Motion to Dismiss Count VIII is GRANTED.

## III. CONCLUSION

Plaintiffs' Amended Complaint states a claim for a racially hostile environment under Count I.  Plaintiffs Mends, Simon, and Foy may maintain claims under Count I.  The Amended Complaint also states a claim in Count IV for a violation under § 1981 as to only Defendants Brian Ferentz and Christopher Doyle.  Plaintiffs Wadley, Parker, Joly, Cooper, Mends, Simon, and Foy may maintain claims under Count IV.  The remaining claims and Plaintiffs are DISMISSED. Defendants' first Motion to Dismiss, [ECF No. 10], is DENIED as moot.

IT IS SO ORDERED.

Dated this 6th day of May, 2021.

_____
STEPHANIE M. ROSE, JUDGE
UNITED STATES DISTRICT COURT