IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| AKRUM WADLEY, JONATHAN PARKER, MARCEL JOLY, AARON MENDS, MAURICE FLEMING, REGGIE SPEARMAN, KEVONTE MARTIN-MANLEY, DARIAN COOPER, LARON TAYLOR, BRANDON SIMON, JAVON FOY, ANDRE HARRIS, and TERRENCE HARRIS,<br><br>      Plaintiffs,<br><br>vs.<br><br>UNIVERSITY OF IOWA, BOARD OF REGENTS OF THE STATE OF IOWA, GARY BARTA, KIRK FERENTZ, BRIAN FERENTZ, CHRISTOPHER DOYLE, and RAIMOND BRAITHWAITE,<br><br>      Defendants. | Case No.  4:20-cv-00366-SMR-HCA<br><br><br><br><br>**BRIEF IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND DISCOVERY RESPONSES**<br><br>**(REQUEST FOR ORAL ARGUMENT)** |

**COME NOW the Plaintiffs, pursuant to FRCP 26, 37, and LR 7, 37, and for their Brief in Support of their Motion to Compel Production of Documents and Discovery Responses hereby state as follows:**

**Table of Contents**

INTRODUCTION ........................................................................................................................3

    **Argument** ......................................................................................................................... **5**

I.   THE COURT SHOULD ORDER DEFENDANTS TO PRODUCE ALL DOCUMENTS
      REQUESTED TO DATE NO LATER THAN TEN (10) DAYS AFTER ENTRY OF THE
      COURT'S ORDER ON THE INSTANT MOTION............................................................5

II.  THE REQUESTED DOCUMENTS ARE DISCOVERABLE. .......................................7

      A. Personnel Files .................................................................................................................... 7

      B. Other Discrimination Complaints ....................................................................................... 8

III. CURRENT RESPONSES ARE EVASIVE OR INCOMPLETE: DEFENDANTS SHOULD
      IDENTIFY ALL WITHHELD DOCUMENTS, SUPPLEMENT THEIR PRIVILEGE LOG
      & PRODUCE DOCUMENTS ON A COURT-ORDERED TIMETABLE. ...............................9

IV. THE COURT SHOULD SANCTION DEFENDANTS FOR IMPROPER
      CERTIFICATION. ....................................................................................................................10

PRAYER FOR RELIEF...............................................................................................................11

## INTRODUCTION

The evidence that the Hawkeye Football Program created and sustained a racially hostile education environment for Black student athletes is incontrovertible. Prior to this litigation, an internal University of Iowa Report confirmed race discrimination in the Program led to disproportionate Black student athlete attrition rates.

> […] In 2018 we established the UI Athletic Diversity Task force to specifically address African American male student-athletes graduation rates. As part of the process, the task force interviewed current and former student-athletes to better understand our department's climate towards diversity and the experiences of student-athletes. It was evident at that time we needed to improve as a department. While we have taken several steps to address these issues, there is more to do.
>
> Ultimately, our success will be defined by our actions. Our greatest victory won't be found on a box score but a willingness to speak out against racism, and to make sure every student athlete, coach, and staff member feel safe, supported, and that they have a voice that is empowered.

[Email Statement From Gary Barta to Press (June 6, 2020) **(Exhibit 7)**].

In response to the University of Iowa's internal investigation findings, the Hawkeye Football Program made a special request to finance their own independent external report. [Email from Gary Barta to President Bruce Harreld, Jennifer Modestou (Jun. 9, 2020, 10:10 A.M.) **(Exhibit 8)**]. The independent external report was approved to be generated outside the purview of the University's own Office of Equal Opportunity and Diversity. [Email from Jennifer Modestou to Gary Barta (Jun. 9, 2020, 11:17 A.M.) **(Exhibit 9)**]. The well-publicized Husch Blackwell Report confirmed race discrimination in the Program but kept the most damning personnel allegations (for Kirk Ferentz, Brian Ferentz, Seth Wallace, and Chris Doyle) from the public eye. (See Motion to Compel ¶¶ 20-22).

In June 2020, Kirk Ferentz admitted he should be benched and taught a lesson because change in the Hawkeye Football Program necessarily begins with him:

> *I am a white football coach. Teaching is what I do best. But it is also important to know when to be the student.* […]
>
> *These are painful times. As a leader you can learn a lot by listening but then you must take action. Finally, I told the team that change begins with us, but truly change begins with me.*

[Email Statement From Head Coach Kirk Ferentz to Press (June 6, 2020) **(Exhibit 7)**].

However, now that a lawsuit has been filed seeking equitable remedies and compensation for Black student athletes, Defendants are doing everything they can to deny reality and delay responsibility by obstructing discovery. Coach Kirk Ferentz's promise of change is buried alongside his head in the sand—a blind spot of his own creation.

> 105. Produce documents, including Electronic Information, evidencing that Doyle discriminated against, bullied, demeaned, and/or harassed African-American football student-athletes playing for Iowa.

> **RESPONSE: Plaintiffs' allegations that Doyle "discriminated against, bullied, demeaned, and/or harassed African-American football student-athletes playing for Iowa" have been denied, and thus there are no documents evidencing such claims.**

[Def. Fourth Supp. Responses to Plaintiffs' First RPDs (Jan. 18, 2022) (which also contain Defendants' first, second, and third supplemental responses) **(Exhibit 4)**].

Defendants want the Plaintiffs (and this Court) to entertain an alternate reality in which decision-makers have not already admitted responsibility for racial harassment that caused harm. In the multi-verse of their own creation, Defendants are attempting to re-write history. Defendants' public admissions are preserved on the internet and in their own business records, yet their written discovery responses brazenly deny race discrimination and the resulting harm that occurred. This

about-face has generated multiple inconsistent statements from key witnesses, most notably Athletic Director Gary Barta and Head Coach Kirk Ferentz.

Plaintiffs are entitled to written discovery within the broad parameters of FRCP 26(b). To combat Plaintiffs' access, Defendants' tactics are simultaneously dilatory and non-responsive. Defendants produce batches of documents in spurts to distract Plaintiffs from reality—discovery obstruction. The parties have now extended discovery deadlines on multiple occasions and Plaintiffs cannot wait for Defendants to produce documents in good faith any longer. Defendants' litigation tactics should not be permitted to continue lest they hypnotize this litigation into a state of inertia wherein Plaintiffs await supplementation of documents over which Defendants maintain a vice grip.

Plaintiffs must file motions to compel to ask the Court to end the discovery inertia.

**Argument**

## I. THE COURT SHOULD ORDER DEFENDANTS TO PRODUCE ALL DOCUMENTS REQUESTED TO DATE NO LATER THAN TEN (10) DAYS AFTER ENTRY OF THE COURT'S ORDER ON THE INSTANT MOTION.

Plaintiffs have waited eight months since discovery requests were first served. The Court should order Defendants to produce *all* responsive documents no later than 10 days after entry of the Court's order on this motion. Throughout discovery, Defendants have unduly delayed properly responding to discovery requests and producing documents. Federal Rule of Civil Procedure 34 clearly requires that "The production of documents . . . must be completed no later than the time for inspection specified in the request or another reasonable time ***specified in the response***." Fed. R. Civ. P. 34(b)(2)(B). The notes of the Advisory Committee to the 2007 amendments to the Federal Rules of Civil Procedure further clarify that "When it is necessary to make the production in stages the response should specify the beginning and end dates of the production." Defendants

have never given any specific time frame for when documents can be expected, and they certainly have not produced all documents in the 30-day time period provided in Plaintiffs' requests. Further, because Defendants have taken a shiftless approach to producing documents, it is impossible for Plaintiffs to ascertain whether productions in response to specific requests have been completed, or whether any documents are missing or have been withheld such that a motion to compel needs to be filed. When Plaintiffs requested that Defendants clarify whether certain requests have been fully responded to and if so which ones, Defendants responded:

> Re:    Wadley, et al v. University of Iowa, et al, Case No. 4:20-cv-366
>
> Dear Beatriz,
>
>     I am in receipt of your November 24, 2021 letter and enclose our responses below. As a general note, discovery in this matter does not close until September 13, 2022, and Defendants are allowed to supplement discovery up until that time. Therefore, Defendants decline to provide an affirmative statement that all documents to a request have already been produced.

[Letter AG to BMK (Dec. 10, 2021) **(Exhibit 10)**].

Counsel's statement that Defendants are "allowed" to supplement discovery responses, while technically true, fails to recognize that the rule requiring supplementation of responses anticipates that the party having the responsibility to supplement has already responded in such a way that it viewed as complete at the time of responding. *See* Fed. R. Civ. P. 26(e)(1)(A) ("A party who has . . . responded to an interrogatory, request for production, or request for admission . . . must supplement or correct its disclosure or response . . . in a timely manner if the party ***learns*** that in some material respect the . . . response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing . . . .") (Emphasis added). The supplementation rule is not intended to allow parties to respond to discovery at their leisure until the close of discovery. If that were the

case, the 30-day response periods provided by the Federal Rules of Civil Procedure's discovery provisions would be entirely useless. Likewise, there would be no need for Federal Rule of Civil Procedure 26(g)'s certification requirement, which, as the Advisory Committee explained in the notes to the 1980 amendments, "certifies that the client has provided all the information and documents available to him that are responsive to the discovery demand."

Defendants have had more than an ample amount of time not only to fully and properly respond in writing to Plaintiffs' requests for production, but also to produce the documents requested. They should not be permitted to draw out document production until the end of discovery. That would not only put Plaintiffs at a disadvantage in conducting depositions, but also render it impossible for Plaintiffs to conduct any follow-up discovery regarding any documents produced. Accordingly, Plaintiffs respectfully request that the Court order Defendants to produce all responsive documents requested to date no later than 10 days from the entry of the Court's Order on Plaintiffs' motion.

## II.      THE REQUESTED DOCUMENTS ARE DISCOVERABLE.

### Personnel Files

**Plaintiffs' Second RPD Nos. 1-18.** Personnel File Requests.

Plaintiffs agreed to narrow these personnel file requests by excluding the following information: tax withholdings, dates of birth, SSN, beneficiary information, medical records, spouse/kids contact information, wage information, and contracts for employment. [Email from BMK to AG (Jan. 6, 2022) **(Exhibit 3)**]. Defendants failed to supplement with personnel files despite this limitation. Because there is a protective order on file, Defendants should produce

performance evaluations, disciplinary documents including documents related to personnel investigations, and anything related to Plaintiffs claims.

The personnel files of decision-makers are discoverable. *See Wards Cove Packing Co. v. Antonio*, 490 U.S. 642, 657 (1989) (plaintiff entitled to broad access to defendant records); *Dzanis v. JPMorgan Chase & Co.*, 2011 WL 5979650 (S.D.N.Y. 2011); *Jones v. Wet Seal Retail, Inc.*, 245 F.R.D. 724, 726 (D. Kan. 2007); *Oglesby v. Hy-Vee, Inc.*, 2005 WL 857036, at *2 (D. Kan. Apr. 13, 2005); *Fox-Martin v. H.J. Heinz Operations*, 2003 WL 23139105, at *2 (D. Kan. Dec. 19, 2003); *Jones v. Hamilton Cty. Sheriff's Dep't.*, 2003 U.S. Dist. LEXIS 10100 (D. Ind. 2003); *Spina v. Forest Preserve of Cook County*, 2001 WL 1491524, *11-12 (N.D. Ill. 2001).

## Other Discrimination Complaints

**Plaintiffs' Second RPD No. 25**: Willie Fred Mims discrimination complaint.

Defendants insist Mims' employment discrimination claims and related documents (if any) do not latch on or relate in any way to Plaintiffs' claims. Mims worked for the University and Athletic Department for decades and has previously provided sworn testimony that he is aware of race discrimination complaints made by student athletes within the University. [Deposition Excerpts of Willie Fred Mims (Jan. 1, 2017) **(Exhibit 11)**].

Mims' knowledge of both student complaints and his own complaints are probative of Defendants institutional response to race discrimination. Specifically, any discrimination complaints made within the athletic department are probative of the culture within the athletic department, of policies and practices, and how they are enforced (or not) by the University and the Athletic Department. Fed. R. Evid. 403(b). This case is in large part about Defendants' failure to monitor the Athletic Program for Black student athletes following notice of racial bias within the Hawkeye Football Program. *See Vance v. Ball State Univ.*, 570 U.S. 421, 449 (2013) (evidence

that defendant "did not monitor the workplace [and education environment], failed to respond to complaints, failed to provide a system for registering complaints, or effectively discouraged complaints from being filed would be relevant [to a finding of harassment].")

### III.   CURRENT RESPONSES ARE EVASIVE OR INCOMPLETE: DEFENDANTS SHOULD IDENTIFY ALL WITHHELD DOCUMENTS, SUPPLEMENT THEIR PRIVILEGE LOG & PRODUCE DOCUMENTS ON A COURT-ORDERED TIMETABLE.

#### Plaintiffs' First RPD Nos. 1-181:

Defendants' current status on these responses is open-ended. Defendants should be Ordered to supplement their privilege logs and produce documents on a timetable.

#### Plaintiffs' Second RPD Nos. 19, 24, 28:

Defendants have not objected to production but have not identified whether documents are withheld, nor have they identified when documents will be supplemented. Defendants should be Ordered to supplement their privilege logs and produce documents on a timetable.

**Plaintiffs' Second RPD Nos. 20-21:** Ben Niemann documents.

Plaintiffs expected responsive documents would be produced by January 18, 2022. Defendants should be Ordered to supplement their privilege logs and produce documents on a timetable.

**Plaintiffs' Second RPD No. 27:**  Firm Proposals or Requisitions for Independent Investigation.

During the Rule 37 Conferral, counsel for Defendants asserted Husch Blackwell did not submit a requisition in order to be considered as the external independent investigator of the Hawkeye Football Program. Plaintiffs are entitled to discover whether that is because the state of

Iowa has a history of hiring Husch Blackwell to represent them in education discrimination litigation or some other reason.[1]

Documents produced thus far establish Gary Barta made a special request to the University President Bruce Harreld and the Office of Equal Opportunity and Diversity to consider more than one firm to conduct an independent review of the Hawkeye Football Program. [Email from Gary Barta to President Bruce Harreld, Jennifer Modestou **(Exhibit 8)**]. This document contradicts counsel's representation and again leaves Plaintiff lacking clarity as to whether documents are being withheld that may shed light on Plaintiffs' forthcoming Motion to Compel Husch Blackwell documents and underscores Plaintiffs' need for judicial scrutiny of discovery in this case.

## IV.     THE COURT SHOULD SANCTION DEFENDANTS FOR IMPROPER CERTIFICATION.

By signing Defendants' discovery responses, defense counsel certified that they were "consistent with [the Federal Rules of Civil Procedure] and warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law." Fed. R. Civ. P. 26(g)(1)(B)(i). As previously explained, defense counsel's signature, according to the Advisory Committee Notes, also includes a certification that "the client has provided all the information and documents available to him that are responsive to the discovery demand." Notes of Advisory Committee on Rules – 1980 Amendment to Fed. R. Civ. P. 26. Because Defendants have made no effort to provide complete responses to Plaintiffs' discovery requests in a timely manner, in violation of the Federal Rules of Civil Procedure, defense counsel's certification was improper. Under Federal Rule of Civil Procedure 26(g)(3):

---

[1] *See* https://www.iowastatedaily.com/news/investigation-charges-for-iowa-state-title-ix-litigation-top-416-000/article_cfc9665c-e5f1-11e8-9cf7-7382863e2d42.html.

> If a certification violates this rule without substantial justification, the court, on motion or on its own, must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both. The sanction may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation.

Given Defendants' persistent and intentional subversion of the rules of discovery in spite of their certifications to the contrary, the Court should invoke this provision and impose an appropriate sanction on Defendants and/or their counsel, which should include an order requiring payment of Plaintiffs' attorney's fees incurred as a result of Defendants' persistent dilatory conduct in violation of the rules.

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs request increased judicial scrutiny of discovery in this matter.[2] Specifically, Plaintiffs request a Court Order compelling Defendants to do the following:

I.   Produce documents responsive to Plaintiffs' Second RPD Nos. 1 – 18, 19-21, 24, 25, 27, and 28 no later than ten (10) days after entry of the Court's Order on the instant motion.

---

[2] Jarvey, Boilerplate Discovery Objections: How They are Used, Why They are Wrong, and What We Can Do About Them, 61 Drake L. Rev. 913, 932 (2013) ("[R]esponding to abusive discovery practices will require increasingly aggressive judicial supervision. While this supervision can be initiated upon a motion to the court, it can also be initiated by a court sua sponte. Even attorneys recognize that the discovery process is most satisfactory when judges actively supervise the parties. In fact, some have suggested that increased judicial scrutiny is the only solution that can begin to remedy a broken discovery system.").

II. Produce Fifth (*et seq.*) Supplemental Responses for **all** Plaintiffs' RPDs (First and Second RPDs) no later than ten (10) days after entry of the Court's Order on the instant motion.

a. All responses to objections that have not been waived shall be stated with specificity pursuant to Fed. R. Civ. P. 33(b)(4) and Fed. R. Civ. P. 34(b)(2)(C) because current responses are evasive or incomplete within the meaning of the Fed. R. Civ. P. 37(a)(4).

III. Defendants shall supplement their privilege logs on a recurring weekly or biweekly basis as their custodians continue to search for responsive documents to "… state whether any responsive materials are being withheld on the basis of [any] objection[]"[3] and in order to shed light on their ongoing measures to search for responsive documents to "[s]pecify the time for production and, if a rolling production, when production will begin and when it will be concluded."[4]

IV. Plaintiffs request Oral Argument pursuant to LR 7(c) for good cause shown herein;

V. Plaintiffs' counsel request attorneys' fees and expenses for the preparation and argument of this motion to be assessed against Defendant University of Iowa;

VI. Plaintiffs request such other relief as the Court deems appropriate.

---

[3] *See Fischer v. Forrest*, No. 14CIV1304PAEAJP, 2017 WL 773694 (S.D.N.Y. Feb. 28, 2017).

[4] *Id.*

Respectfully Submitted,

**SOLOMON SIMMONS LAW**

Damario Solomon-Simmons, OBA # 20340
Kymberli J.M. Heckenkemper, OBA # 33524
601 S. Boulder, Ste. 600
Tulsa, Oklahoma 74119
Telephone: (918) 551-8999
Facsimile: (918) 582-6106
Email: dss@solomonsimmons.com
Email: kheckenkemper@solomonsimmons.com


**BARLOW GARSEK & SIMON, LLP**

Christian Dennie, TX Bar #24045775
920 Foch Street
Fort Worth, TX 76107
817.731.4500 (telephone)
817.731.6200 (facsimile)
Email: cdennie@bgsfirm.com


**BMK LAW FIRM, P.L.L.C.**

*/s/Beatriz Mate-Kodjo*
Beatriz Mate-Kodjo AT0012331
1910 Washington Street, Suite 100
Pella, Iowa 50219
Telephone: (641) 450-1668
Fax: (641) 847-7968
Email: beatriz@mate-kodjo-law.com

**ATTORNEYS FOR PLAINTIFFS**