AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the
_____ District of _____

| | ) | |
|---|---|---|
| *Plaintiff* | ) | |
| v. | ) | Civil Action No. |
| | ) | |
| | ) | |
| *Defendant* | ) | |

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
### OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:

*(Name of person to whom this subpoena is directed)*

❒ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

| Place: | Date and Time: |
|---|---|
| | |

❒ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _____

*CLERK OF COURT*

OR

_____        _____
*Signature of Clerk or Deputy Clerk*            *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
_____ , who issues or requests this subpoena, are:

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

**EXHIBIT 10**

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.

# PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

Case 4:20-cv-00366-SMR-HCA   Document 80-11   Filed 01/28/22   Page 3 of 9

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

 **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
     **(i)** is a party or a party's officer; or
     **(ii)** is commanded to attend a trial and would not incur substantial expense.

 **(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

 **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

 **(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
     **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
     **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

 **(3)** *Quashing or Modifying a Subpoena.*
   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
     **(i)** fails to allow a reasonable time to comply;
     **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
     **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
     **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
     **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
     **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
     **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
     **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

 **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

 **(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
     **(i)** expressly make the claim; and
     **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# EXHIBIT 1
# TO SUBPOENA DUCES TECUM HUSCH BLACKWELL

1. All names and contact information for each and every African-American football student-athlete who was interviewed by Husch Blackwell as part of the investigation into the University of Iowa football program that resulted in the report dated July 30, 2020.

2. All documents relating to the specific allegations of mistreatment, verbal abuse, racism, and bullying of the Iowa football players by current and former employees of the University of Iowa that were separately provided to the University of Iowa, as referenced on pages 1, 5, and 25 of the Husch Blackwell Report, dated July 30, 2020.

3. All emails, text messages, or other written communications sent or received by any of the current or former University of Iowa employees listed in left column of the chart below from June 3, 2020 to present, which contain one or more of the keywords listed in the middle column of the chart below and/or one or more of the names (either first, last, or both) listed in the right column of the chart below:

| Current/Former Employees | Keywords | Keywords (Names) |
|---|---|---|
| - Gary Barta<br>- Bruce Harreld<br>- Kirk Ferentz<br>- Brian Ferentz<br>- Christopher Doyle<br>- Phil Parker<br>- Raimond Braithwaite<br>- Seth Wallace<br>- Broderick Binns<br>- Any other current or former University administrator, official, or employee over or within the football program. | - Race<br>- Racial<br>- Racially Charged<br>- Racism<br>- Discrimination<br>- Discriminate<br>- Discriminating<br>- Disparities<br>- Disparate<br>- Harass<br>- Harassing<br>- Harassment<br>- Twitter<br>- Tweet(s)<br>- Facebook post(s)<br>- Former player(s)<br>- Black (persons)<br>- African-American<br>- Black Lives Matter<br>- Police<br>- Cops<br>- George Floyd<br>- Protest(s)<br>- Protesting<br>- Riot(s)<br>- Rioting<br>- National Anthem<br>- Kneel | - James Daniels<br>- Akrum Wadley<br>- Amani Hooker<br>- Jonathan Parker<br>- Amani Jones<br>- Laron Taylor<br>- Faith Ekakitie<br>- Mike Daniels<br>- Adam Gettis<br>- Dezman Moses<br>- Marcel Joly<br>- Brad Rogers<br>- Reggie Spearman<br>- Anthony Gair<br>- Jerminic Smith<br>- Jordan Lomax<br>- Albert Young<br>- Carl Davis<br>- Samson Evans<br>- Jayden McDonald<br>- Fabian Dodd<br>- Sean Draper<br>- Toran Young<br>- LeBron Daniel<br>- Dominique Dafney<br>- Tevaun Smith<br>- Jemire Roberts<br>- Tony Jackson |

|  | |  |
|---|---|---|
| | • Kneeling<br>• Ghetto<br>• Hood<br>• Complaint<br>• Complain<br>• Investigation<br>• Investigate<br>• Demand<br>• Demand letter<br>• Report<br>• Interview<br>• Lawsuit<br>• Settle<br>• Settlement<br>• Blind Spot<br>• Dropped the Ball<br>• Iowa Way<br>• Mold<br>• Dreadlocks<br>• Braids<br>• Tattoos<br>• Dumbass<br>• Motherfucker<br>• Gang banger<br>• Gangbanger<br>• Gang<br>• Gangster<br>• Criminal<br>• Crime<br>• Nigger<br>• Meal card<br>• Motherfucker<br>• Double Standard | • George Lewis<br>• Greg Mabin<br>• Emmanuel "Manny" Rugamba<br>• Carl Davis<br>• Colin Sandeman<br>• Terrance Pryor<br>• Darian Cooper<br>• Cedric Boswell<br>• Aaron Mends<br>• Jaleel Johnson<br>• Jameer Outsey<br>• Terrance Harris<br>• Kevonte Martin-Manley<br>• Brandon Simon<br>• Diaunte Morrow<br>• Derrell Johnson-Koulianos<br>• Jack Kallenberger<br>• Marvin McNutt<br>• Andre Harris<br>• Matt Hankins<br>• Maurice Fleming<br>• Javon Foy<br>• D.J. Johnson<br>• Geno Stone<br>• Jovon Johnson<br>• Jordan Oladokun |

4. All documents, emails, notes, text messages, letters, and memoranda that relate to the July 30, 2020 report regarding Husch Blackwell's investigation into the University of Iowa football program, including drafts of the final report.

5. All contracts and invoices for the work Husch Blackwell completed in relation to the July 30, 2020 report.

6. All documents, emails, notes, text messages, letters, and memoranda sent by attorneys Hayley Hanson, Demetrus Peterson, and/or Kristine Zayko to the University of Iowa or any one or more of the following individuals, from June 2020 to the present:
   a. Gary Barta;

     b. Bruce Harreld;
     c. Kirk Ferentz;
     d. Brian Ferentz;
     e. Christopher Doyle;
     f. Phil Parker;
     g. Raimond Braithwaite;
     h. Seth Wallace;
     i. Broderick Binns;
     j. Liz Tavor;
     k. Carroll Reasonor;
     l. John Bruno;
     m. Tabitha Wiggins; and/or
     n. Jodi Linley.

7. All audio and video recordings and transcripts generated in the course of conducting interviews in connection with Husch Blackwell's investigation into the University of Iowa football program that resulted in the report dated July 30, 2020.

8. The name and contact information of the players who told Husch Blackwell that the "Iowa Way" philosophy made them feel "isolated, targeted, and unwelcome in the program." (Report, pp. 1-2).

9. Copies of the four separate personnel reports provided by Husch Blackwell to the University of Iowa. (*See* Report, p. 1).

10. Year-end student-athlete survey results provided by the University of Iowa. (*See* Report, p. 3).

11. All team documents provided by Kirk Ferentz. (*See* Report, p. 3).

12. Transcripts from two media conferences given in advance of the Pinstripe Bowl. (*See* Report, p. 3).

13. Athletic Diversity Task Force Notes provided by the University of Iowa. (*See* Report, p. 19).

14. All documents, including but not limited to notes, transcripts, recordings, memos, records, emails, text messages relating to, referencing, or wherein the subject matter is or contains a specific allegation about any current or former employee of the University of Iowa that was separately provided to the University by Husch Blackwell. (*See* Report, p. 5).

15. The name and contact information of the individual who told Husch Blackwell that "the coaching staff abused their power and verbally abused and bullied players," and any documents, including but not limited to call logs, biographical information, notes, transcripts, recordings, memos, text messages, and emails relating to the individual's statement. (Report, p. 5).

16. The name and contact information of the former player who told Husch Blackwell that "Being an Iowa football player was a daily struggle for black players . . . ," and any documents, including but not limited to call logs, biographical information, notes, transcripts, recordings, memos, text messages, and emails relating to the former player's statement. (Report, p. 5).

17. The name and contact information of the coach who told Husch Blackwell that "it is harder to be a Black player in the program because of the player 'mold,'" and any documents, including but not limited to call logs, biographical information, notes, transcripts, recordings, memos, text messages, and emails relating to the former coach's statement. (Report, p. 6).

18. The names and contact information of the players who "[a]cknowledg[ed] extra burdens for Black players," and any documents, including but not limited to call logs, biographical information, notes, transcripts, recordings, memos, text messages, and emails relating to the players' statements. (Report, p. 6).

19. The names and contact information for the players and coaches who told Husch Blackwell that "the Iowa Way requires players to fit a 'mold' that discourages self-expression and is not inclusive to Black players, " and any documents, including but not limited to call logs, biographical information, notes, transcripts, recordings, memos, text messages, and emails relating to the players' and coaches' statements. (Report, p. 8).

20. The name and contact information of the coach who stated "that players have told him the Iowa Way means 'you act like a White person and cannot be yourself,'" and any documents, including but not limited to call logs, biographical information, notes, transcripts, recordings, memos, text messages, and emails relating to the coach's statement. (Report, p. 8).

21. The name and contact information of the employees and coach who said "Black players do not fit 'the mold,'" and any documents, including but not limited to call logs, biographical information, notes, transcripts, recordings, memos, text messages, and emails relating to the employees' and coach's statements. (Report, p. 8).

22. The name and contact information of the then-current player who said "constantly needing to conform was 'mentally draining,'" and any documents, including but not limited to call logs, biographical information, notes, transcripts, recordings, memos, text messages, and emails relating to the player's statement. (Report, p. 8).

23. The names and contact information of the "numerous players" who reported that "the rules appeared to be racially motivated or enforced differently based on race," and any documents, including but not limited to call logs, biographical information, notes, transcripts, recordings, memos, text messages, and emails relating to the players' statements. (Report, p. 10).

24. The names and contact information of the "several players" who "expressed a belief that the rules were targeted toward Black players," and the player who said "the coaches were using the rules to 'eliminate Black culture,'" and any documents, including but not limited to call logs, biographical information, notes, transcripts, recordings, memos, text messages, and emails relating to the players' statements. (Report, pp. 10-11).

25. The names and contact information of the players who "discussed the pressure they felt to maintain the requisite weight" and who reported "that coaches subjected them to unfair and unreasonable weight expectations after being sick . . . ." (Report, p. 12)

26. The name and contact information of the coach who said "Black players were held to a different standard after they were sick and lost weight," and any documents, including but not limited to call logs, biographical information, notes, transcripts, recordings, memos, text messages, and emails relating to the coach's statement. (Report, p. 13).

27. The names and contact information for each of the then-current and former players who reported "Black players were treated differently than White players, predominantly through differential punishment for perceived rule violations," and any documents, including but not limited to call logs, biographical information, notes, transcripts, recordings, memos, text messages, and emails relating to the players' statements. (Report, p. 14).

28. The names and contact information of those interviewed who referenced the incident in which a Black player was "yelled at extensively, kicked out of training, and required to do 10 hours of community service for spitting on the turf . . . ," and any documents, including but not limited to call logs, biographical information, notes, transcripts, recordings, memos, text messages, and emails relating to the interviewees' statements. (Report, p. 14).

29. The name and contact information for the coach who said he "brought the treatment of players up to Head Coach Ferentz a couple times over the last four years with no resulting change," and any documents, including but not limited to call logs, biographical information, notes, transcripts, recordings, memos, text messages, and emails relating to the coach's statement. (Report, p. 14).

30. The name and contact information of the former players who "described being subjected to verbally abusive behavior." (Report, p. 15).

31. The names and contact information of the former players who "alleged that the coach used his influence with NFL scouts to 'blackball' players, mostly Black players, whom he did not like." (Report, p. 16).

32. The names and contact information of the players who said "Black players left the program because they were unable to fit the Iowa 'mold' or were uncomfortable being themselves." (Report, p. 17).

33. The names and contact information of the players who said "the Task Force group met with him and other players during which the players 'told them the same things we are saying now," and that "Head Coach Ferentz was aware of the concerns, took notes, and met with the Black players," but "'did not take into account' what was said, leaving the impression they did not believe there was a problem," and any documents, including but not limited to call logs, biographical information, notes, transcripts, recordings, memos, text messages, and emails relating to the players' statements. (Report, p. 21).

34. The name and contact information of the former player who "told investigators that players had been afraid to say anything to the Task Force because of their perception that a particular coach was 'always there' and would 'make or break you' in the program," and any documents, including but not limited to call logs, biographical information, notes, transcripts, recordings, memos, text messages, and emails relating to the player's statement. (Report, p. 21).

35. The name and contact information of the former player who said "he participated in the review and told them 'some things but not all; enough to know there was a problem,'" and any documents, including but not limited to call logs, biographical information, notes, transcripts, recordings, memos, text messages, and emails relating to the player's statement. (Report, p. 21).

36. The name and contact information of the "numerous players" who said "the only tangible change that resulted from the review was the ability of players to wear earrings," and any documents, including but not limited to call logs, biographical information, notes, transcripts, recordings, memos, text messages, and emails relating to the players' statements. (Report, p. 21).

37. The name and contact information of the player who said "he participated in the review and told them 'some things but not all; enough to know there was a problem,'" and any documents, including but not limited to call logs, biographical information, notes, transcripts, recordings, memos, text messages, and emails relating to the player's statement. (Report, p. 21).