IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| AKRUM WADLEY; JONATHAN PARKER; MARCEL JOLY; AARON MENDS; DARIAN COOPER; BRANDON SIMON; and JAVON FOY,<br><br>    Plaintiffs,<br><br>vs.<br><br>UNIVERSITY OF IOWA, BOARD OF REGENTS FOR THE STATE OF IOWA; BRIAN FERENTZ; and CHRISTOPHER DOYLE.<br><br>    Defendants. | Case No. 4:20-cv-366<br><br><br><br>**DEFENDANTS' RESISTANCE TO PLAINTIFFS' MOTION TO COMPEL HUSCH BLACKWELL MATERIALS** |

## BACKGROUND

This discovery dispute centers on Plaintiffs' request for the files of attorneys hired by the University of Iowa to "provide legal services" "to represent you in an independent review of issues and allegations relating to racial disparities within the football program." Agreement for legal Services Exh. A p. 1 That Agreement for Legal Services, when read in its entirety, sets out "the terms under which we will undertake this representation." *Id* p. 3. In accordance with the Agreement Husch Blackwell, hereinafter "HB" or the "law firm" performed numerous tasks including gathering information from their clients, conducting interviews of multiple people and ultimately producing a document entitled "Report of External Review". This document was made available to the public and Plaintiffs have provided a copy of the Report as Exh. 3 to their motion.

After completion of their representations on this project the law firm kept the entirety of the file materials they had gathered and generated and used during their representation of the University on this project. After the HB report was published and after this lawsuit was filed

1

Plaintiffs served voluminous discovery requests which, since the service of those requests, has resulted in the Defendants producing nearly two hundred thousand pages of documents. The University has though objected to the production of their attorneys' files that were generated as part of the firm's representation of the University with respect to its review of the football program. As this litigation progressed the University requested that HB provide its work files to its defense lawyers from the Iowa Attorney General's Office. Defendants' counsel subsequently, and in accordance with this Court's orders, provided the Court and Plaintiffs' counsel with an extensive privilege log identifying the contents of the HB file and claiming those materials were privileged and protected from discovery. Plaintiffs also issued a subpoena to HB which, as Plaintiffs' current motion notes (Brief at p. 6 fn. 1), HB objected to on the basis that the University was asserting its lawyers work files were privileged. The matter of the subpoena issued to HB is not presently before the court and need not be as defense counsel is in possession of the HB file and the Court's ruling on Plaintiffs' current motion will likely address all issues related to that file.

**I.  DEFENDANTS AND HUSCH BLACKWELL HAD AN ATTORNEY-CLIENT RELATIONSHIP**

For an attorney client privilege to exist, "the parties to the communication in question must bear the relationship of attorney and client. Moreover, the attorney must have been engaged or consulted by the client for the purpose of obtaining legal services or advice services or advice that a lawyer may perform or give in his capacity as a lawyer, not in some other capacity. *Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 602 (8th Cir. 1977) (rev'd en banc). In addition, when matters are committed to professional legal advisers such as HB, it is "prima facie committed for the sake of legal advice" and, therefore, "within the privilege absent a clear showing to the

contrary." *Diversified*, 572 F.2d at 610 (en banc) (holding some documents protected under attorney-client privilege.)[1]

Here, the agreement between Defendants (identified in the agreement as the University of Iowa) and HB show that they engaged in a relationship for the purposes of obtaining legal services. The subject of the June 12, 2020 document is "Agreement for Legal Services." (Exh. A, p. 1). The agreement shows Defendants selected HB to provide legal services. (Exh. A, p. 1). The agreement outlines who is HB's client (the University of Iowa) within the scope of their representation and who is not. (Exh. A, p.1) The agreement shows that HB was retained to provide the legal services of representing Defendants in "an independent review of issues and allegations relating to racial disparities within the football program." (Exh. A, p. 1). It also outlines the conditions for the termination of the "attorney-client relationship" created under the agreement. (Exh. A, p. 3). Both parties executed the agreement. (Exh. A, p. 4).

The agreement clearly shows Defendants and HB engaged in an attorney client relationship, and Plaintiffs have not presented anything to the contrary. The attorney client privilege can be broad in "... that the privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of the information to the lawyer to enable him to give sound and informed advice." *Upjohn Co. V. U.S.*, 449 U.S. 383, 391 (1981). In this matter the information requested by HB, the information provided by the University in order for HB to formulate their review and the material generated internally by HB to facilitate their representation of the University are protected as privileged. Absent waiver (discussed in the next section), communications between Defendants and HB are privileged and not subject to discovery.

---

[1] Plaintiffs cite to *Diversified*, 572 F.2d in support of their argument, however, Plaintiffs fail to note that the court's decision in that case was largely overturned en banc.

## II. DEFENDANTS HAVE NOT WAIVED ATTORNEY-CLIENT PRIVILEGE

Defendants have not waived attorney-client privilege because: (1) publication of the Husch Blackwell report does not waive attorney-client privilege; (2) any untimely responses to discovery requests do not warrant the extreme sanction of waiver; and (3) the crime-fraud exception does not apply.

### a. Publication of the Husch Blackwell Report did not Waive Privilege

The disclosure of HB's report did not create a subject matter waiver over all other documents protected under attorney-client privilege. There is limited case law in the Eighth Circuit on this issue. The Southern District of Iowa has used Federal Rule of Evidence. 502(a) as a framework to examine the issue, when disclosures are made outside the instant proceedings. *Mills v. Iowa*, 285 F.R.D. 411, 416 (S.D. Iowa 2012) (granting in part and denying in part moving party's motion to compel document production). Rule 502 applies to the disclosure of communications or information covered by the attorney-client and work product privileges. In relevant part, this rules states that:

> (a) Disclosure made in a Federal Proceeding or to a Federal Office or Agency; Scope of a Waiver. When the disclosure is made in a federal proceeding or to a federal office or agency and waives the attorney-client privilege or work-product protection, the waiver extends to an undisclosed communication or information in a federal or state proceeding only if:
> (1) the waiver is intentional;
> (2) the disclosed and undisclosed communications or information concern the same subject matter; and
> (3) they ought in fairness to be considered together.

Fed.R.Evid. 502(a).

"The rule clearly disfavors broad subject matter waivers[,]" and waiver is the exception, not the rule. *Mills*, 285 F.R.D. at 416. In considering fairness, other district courts have found that "there will be a subject matter waiver only when the waiving party has disclosed the confidential

4

information in order to gain a tactical advantage." *North Dakota v. United States*, 64 F. Supp. 3d 1314, 1344 (D. N. D. 2014); *see also In re United Mine Workers of America Employee Benefit Plans Litig.*, 159 F.R.D. 307, 312 (D.D.C. 1994) (waiver of work product limited to materials actually disclosed, because the party did not deliberately disclose documents in an attempt to gain a tactical advantage).

*Doe 1 v. Baylor Univ.*, 320 F.R.D. 430 (W.D. Tex. 2017) is the only case Plaintiffs cite to support their argument that the release of the Report creates a waiver for all privileged communications between Defendants and HB. The *Baylor* case is not binding on this court and distinguishable from this case because the disclosures in *Baylor* are distinct from the release of the Report here. In *Baylor*, Baylor University, the defendant, hired an outside law firm, Pepper Hamilton, to investigate Baylor's institutional response to Title IX and related compliance issues. *See Baylor*, 320 F.R.D. at 434. Under this engagement, Pepper Hamilton produced two documents summarizing its findings: a thirteen page "Findings of Fact" and a ten-page list of recommendations titled "Report of External and Independent Review, Recommendations." *Id*. Baylor repeatedly made other disclosures conveying privileged communications with Pepper Hamilton. *Id*. at 437. The disclosures provided "substantial detail about both what Baylor and its employees told Pepper Hamilton and what advice Baylor received in return." *Id*. The HB report, however, is very limited in the confidential communications HB exchanged with Defendants. Unlike the report in *Baylor*, the HB report does not make finding as to whether specific incidents occurred or didn't occur. (Exh. 3 at p. 6).

Here, the considerations of fairness do not justify overriding long standing principles of protecting privileged documents from discovery. Defendants are not disclosing favorable facts while withholding harmful facts but rather have produced documents with regard or analysis of

where they may fall on the helpfulness spectrum. Plaintiffs also have not shown any unfairness. Denying this motion does not foreclose Plaintiffs from obtaining information from non-privileged sources. *See Diversified*, 572 F.2d at 611 (en banc) ("Litigants may still examine business documents, depose corporate employees and interview nonemployees, obtain preexisting documents and financial records not prepared by Diversified for the purpose of communications with the law firm in confidence.").

      **b.**    **Defendants' Alleged Untimely Objections Do Not Warrant the Extreme Sanction of Waiver of Attorney-Client Privilege**

Plaintiffs argue that the mere delay in serving responses to requests for production should result in the waiver of the attorney-client privilege.

In support of their argument, Plaintiffs rely exclusively on the amount of time between when they served their discovery requests and when Defendants responded to the requests. Because of the time difference, Plaintiffs contend the Court should waive the Defendants' attorney-client-privileged documents. Plaintiffs have produced no evidence, nor have they even argued that Defendants somehow acted in bad faith.

The attorney-client privilege "promotes full and frank communication between those in need of legal assistance and their advocates, [and] courts have long recognized the vital role the privilege plays in the administration of justice." *Am. Nat. Bank & Tr. Co. of Chicago v. Equitable Life Assur. Soc. of U.S.*, 406 F.3d 867, 878–79 (7th Cir. 2005). Because of the vital and important role of the privilege, "district courts should be highly reluctant to order disclosure without conducting an *in camera* review of allegedly privileged materials." *In re BankAmerica Corp. Sec. Litig.*, 270 F.3d 639, 644 (8th Cir. 2001). As the D.C. Circuit explained, "[w]aiver is not automatic, particularly if the party reasonably believed that its objections applied to the document." *United States v. Philip Morris Inc.*, 347 F.3d 951, 954 (D.C. Cir. 2003). Instead, "[a]s the federal rules,

6

case law and commentators suggest, waiver of a privilege is a serious sanction most suitable for cases of unjustified delay, inexcusable conduct, and bad faith." *Id.* (quoting *First Sav. Bank, F.S.B. v. First Bank Sys., Inc.*, 902 F.Supp. 1356, 1361 (D. Kan. 1995)). In fact, "several courts have recognized that waiver of the attorney-client privilege is an extreme sanction and thus one that should be reserved for cases of unjustifiable delay, inexcusable conduct, or bad faith in responding to discovery requests. *In re Cap. One Bank Credit Card Int. Rate Ligit.*, 286 F.R.D. 676, 679–80 (N.D. Ga. 2012). As another federal district court put it,

> [w]aiver of privilege is a sanction that is reserved for cases where the offending party committed unjustified delay in responding to discovery. Minor procedural violations, good faith attempts at compliance, and other such mitigating circumstances militate against finding waiver. Thus, [w]aiver is appropriate where the responding party's conduct evinces a deliberate pattern of delay and is egregious. While other sanctions may be appropriate for late disclosure, waiver— the most extreme sanction—should be used rarely.

*Stamps v. Town of Framingham*, 38 F.Supp.3d 134, 142 (D. Mass. 2014) (quoting Wright & Miller, 8 Fed. Prac. & Proc. Civ. § 2016.1) (cleaned up). And waiver is "too austere a remedy when the deficiencies can be readily rectified" at a particular juncture in litigation. *Trudeau v. New York State Consumer Prot. Bd.*, 237 F.R.D. 325, 335 (N.D.N.Y. 2006).

As an example of how a court decides whether waiver is an appropriate sanction, in *Sajda v. Brewton*, the plaintiffs urged the court that "the months-long delay and the incomplete privilege log provided by the defendants waived any privileges." *Sajda v. Brewton*, 265 F.R.D. 334, 338 (N.D. Ind. 2009). In analyzing the plaintiffs' requests, the Court began by reiterating that "Courts reserve waiver as a sanction for cases where the offending party was guilty of unjustified delay in responding to discovery." *Id.* The Court went on to explain that waiver is appropriate when an improper privilege claim is "accompanied by 'evidence of foot-dragging or a cavalier attitude towards following court orders and the discovery rules.'" *Id.* (quoting *Ritacca v. Abbott*

7

*Laboratories*, 203 F.R.D. 332, 335 (N.D. Ill. 2001)). And, "[e]ven where a privilege log is inadequate, the sanction of waiver for all purportedly privileged documents is severe. Such sanctions are disfavored absent bad faith, wilfulness [sic], or fault." *Id.* (citing *Am. Nat. Bank & Tr. Co. of Chicago v. Equitable Life Assur. Soc. of U.S.*, 406 F.3d 867, 879 (7th Cir. 2005). The *Sajda* Court ultimately concluded that because the proponent of the privilege communicated its intent to produce a privilege log and ultimately produced a privilege log that "appear[ed] to meet the requirements . . . the evidence of bad faith, wilfulness [sic] or fault necessary to impose the sanction of waiver of all privilege [was] lacking . . . ." *Id.* at 339.

This sharply contrasts with the types of cases in which courts typically find waiver. *See, e.g., West v. Lake State Ry. Co.*, 321 F.R.D. 566, 569 (E.D. Mich. 2017) (finding waiver when defense counsel's comments showed that counsel intended to withhold evidence and only disclose its existence near the close of discovery); *Parshall v. Menard, Inc.*, No. 4:16-CV-828 (CEJ), 2016 WL 7188125, at *2 (E.D. Mo. Dec. 12, 2016) (finding that a failure to produce a privilege log at all warranted a waiver of the asserted privilege); *In re Cap. One Bank Credit Card Int. Rate Litig.*, 286 F.R.D. 676, 679–80 (N.D. Ga. 2012) (finding defendant waived privilege by engaging in bad faith because sophisticated attorneys asserted the incorrect privilege and responded to an order compelling production of documents by producing "over 900,000 pages of documents, much of which was duplicative, making it much more difficult for Plaintiffs' attorneys to sift through the evidence and prepare a case").

Here, Plaintiffs have presented no evidence whatsoever that Defendants somehow engaged in bad faith to warrant the extreme sanction of waiver of attorney-client privilege. Instead, Defendant have long noted they believed the filles maintained by their attorneys generated during the course of HB's representation were privileged. Defense counsel has also informed Plaintiffs

8

that they initially did not have the file but had to request the file from their HB lawyers and even re-request that information in a more usable format. Ultimately all of this resulted in Defendants' accounting for all the materials in the HB file by submitting an extensive privilege log to Plaintiffs' counsel and this Court. Indeed, nowhere in Plaintiffs' brief do they allege that Defendants' privilege log prevents Plaintiffs from understanding the basis of the privilege, nor do Plaintiffs allege that a delay in responding to the requests somehow caused them prejudice. *See Anderson v. Hale*, 202 F.R.D. 548, 553 (N.D. Ill. 2001) (finding no waiver in large part because the plaintiff (proponent of waiver) did not suffer any prejudice based on the defendant's (opponent of waiver) less than perfect compliance with the Federal Rules of Civil Procedure).

### c. The Crime-Fraud Exception Does Not Apply

"[B]efore the crime-fraud exception may be applied, the moving party must 'make a prima facie showing that the legal advice has been obtained in furtherance of an illegal or fraudulent activity.'" *In re Green Grand Jury Proc.*, 492 F.3d 976, 982 (8th Cir. 2007) (quoting *United States v. Horvath*, 731 F.2d 557, 562 (8th Cir.1984)). "If there is a crime or fraud exception to the work product privilege that would justify discovery of opinion work product, the party seeking discovery has the burden of proving at least two elements. It must be established that (1) the client was engaged in or planning a criminal or fraudulent scheme when he sought the advice of counsel to further the scheme and (2) the documents containing the attorney's opinion work product must bear a close relationship to the client's existing or future scheme to commit a crime or fraud." *In re Murphy*, 560 F.2d at 338. And even when the proponent of waiver is able to make a prima facie showing, "the discretionary decision whether to conduct *in camera* review should be made 'in light of the facts and circumstances of the particular case,' including the volume of materials in question, their relative importance to the case, and the likelihood that the crime-fraud exception

9

will be found to apply. *In re BankAmerica Corp. Sec. Litig.*, 270 F.3d 639, 641–42 (8th Cir. 2001) (quoting *United States v. Zolin*, 491 U.S. 554, 563 (1989)). Courts have this discretion because the Supreme Court was "concerned that routine *in camera* review would encourage opponents of the privilege to engage in groundless fishing expeditions." *Id.* That is exactly what Plaintiffs are attempting here—beyond mere conclusory statements, Plaintiffs cannot make a prima facie showing that any Defendant obtained legal advice in furtherance of a crime or fraud.

Even if the Court were to accept as true Plaintiff's conclusory statements, they still do not amount to a criminal or fraudulent scheme. Plaintiff argues that Iowa employees knowing that Husch Blackwell was not acting independently or impartially and nonetheless disseminating the Husch Blackwell report would violate Iowa Code § 721.1 by knowingly delivering a falsified writing. *See* Plaintiff's Brief (docket no. 80-1) at 10–11. Plaintiffs have cited no authority that such conduct would violate the statute, and Defendants are unaware of any such authority. There is no evidence or allegation that Defendants made any changes to already-public documents to make them false. *See generally State v. Pieper*, 909 N.W.2d 443 (Table), 2017 WL 5185444, at *5–6 (Iowa Ct. App. Nov. 8, 2017).

## CONCLUSION

Based upon the arguments and authorities presented in this Resistance, it is respectfully requested that the Court enter a ruling denying Plaintiffs' Motion to Compel.

Respectfully submitted,

**THOMAS J. MILLER**
Attorney General of Iowa

*/s/ Jeffrey S. Thompson*
JEFFREY S. THOMPSON
Solicitor General

*/s/ Jeffrey C. Peterzalek*
JEFFREY C. PETERZALEK
*/s/ Christopher J. Deist*
CHRISTOPHER J. DEIST
*/s/ Samuel P. Langholz*
SAMUEL P. LANGHOLZ
Assistant Attorneys General
Department of Justice-Special Litigation
Hoover State Office Building
Des Moines, Iowa 50319
(515) 281-4419/4213
jeffrey.thompson@ag.iowa.gov
jeffrey.peterzalek@ag.iowa.gov
christopher.deist@ag.iowa.gov
sam.langholz@ag.iowa.gov
ATTORNEYS FOR DEFENDANTS

**PROOF OF SERVICE**
The undersigned certifies that the foregoing instrument was served upon each of the persons identified as receiving a copy by delivery in the following manner on February 11, 2022:

☐ U.S. Mail ☐ FAX
☐ Hand Delivery ☐ Overnight Courier
☐ Federal Express ☐ Email
☒ CM/ECF

Signature: */s/ Audra Drish*