IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

AKRUM WADLEY, JONATHAN PARKER, MARCEL JOLY, AARON MENDS, DARIAN COOPER, BRANDON SIMON, JAVON FOY,

Plaintiffs,

vs.

UNIVERSITY OF IOWA, BOARD OF REGENTS OF THE STATE OF IOWA, KIRK FERENTZ, BRIAN FERENTZ, CHRISTOPHER DOYLE,

Defendants.

4:20-cv-00366-SMR-HCA

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTIONS TO COMPEL**

## I. INTRODUCTION

Before the Court are Plaintiffs' two pending Motions to Compel. In their Second Motion to Compel, filed on January 27, 2022, Plaintiffs seek an order generically compelling Defendants to produce discovery responses. ECF No. 79. Plaintiffs filed another Motion to Compel on January 28, 2022 seeking production of Husch Blackwell documents. ECF No. 80. Defendants filed their resistances to the respective motions on February 10, 2022 and February 11, 2022. ECF No. 83 and 84. Plaintiffs filed a reply only to the Husch Blackwell motion on February 18, 2022. ECF No. 86. The Court heard oral argument on the motions on March 11, 2022 and now considers the motions ready for ruling.

## II. FACTUAL AND PROCEDURAL HISTORY

This lawsuit concerns the alleged racism and mistreatment of black student-athletes within the University of Iowa's ("Iowa") football program ("Program"). Following public

disclosure of allegations of disparate treatment of black players in the Program, Iowa hired the Husch Blackwell, LLP ("HB") law firm to conduct, what Iowa termed, an "independent and external" review of the Program to evaluate the player's disclosures. ECF No. 80-1 at 1-2. HB interviewed current and former Iowa football players and employees and ultimately produced a document titled "Report of External Review" ("Report"). *Id.* at 2. This Report confirmed that the Program's rules "perpetuated racial or cultural biases and diminished the value of cultural diversity." ECF No. 80-4, Pl. Exhibit 3, at 27. The Report was released to the public. This lawsuit was commenced by former and current Iowa football players thereafter.

At issue are discovery requests propounded by Plaintiffs. Plaintiffs served their first set of discovery requests on Defendants on May 27, 2021. ECF No. 80 at ¶ 7. These requests included 208 Requests for Admissions ("RFAs"), Interrogatories, and 181 Requests for Production of Documents ("RPDs"), 18 of which requested documents specifically related to the HB investigation (RPDs 25-28, 34, 89, 124-131, and 141-144). *Id.*; Pl. Exhibit 4, ECF No. 79-5 at ¶¶ 3-46; ECF No. 83 at 1. On July 28, 2021, Defendants served their responses to Plaintiffs' First RFAs and Interrogatories. ECF No. 80 at ¶ 9. Defendants provided some responsive documents but initially no formal response to the RFPs was served. *Id.* On August 26, 2021, Plaintiffs sent a letter to Defendants identifying deficiencies in the responses and indicating that Defendants had waived any objections to RPDs due to their lack of response. *Id*. at ¶ 10. Defendants indicated their failure to serve RPDs responses was an oversight and served written responses, with objections only to FERPA, three (3) weeks later. *Id*. at ¶ 11. Defendants also indicated the withheld documents would be produced once a protective order was entered but no privilege log was provided. *Id*. at ¶ 12. On October 12, 2021, Defendants served their first supplemental responses. *Id*. at ¶ 13. Defendants supplemented their responses again on October 18, 2021,

December 10, 2021, and January 18, 2022. *Id*. at ¶¶ 14,15; ECF No. 79 at ¶ 10. On December 10, 2021, Defendants objected for the first time to the RPDs related to the HB investigation based on attorney-client or work-product privilege. *Id*. at ¶ 15. Plaintiffs sent a deficiency letter to Defendants on November 24, 2021 regarding lack of clarity as to what documents Defendants withheld, and a lack of clarity as to the timeline of production. ECF No. 79 at ¶¶ 2, 3; ECF No. 79-1, Exhibit 1.

After being unable to resolve disputes relating to the first set of discovery requests, the parties turned to the Court for assistance. The Court held a status conference with the parties on December 15, 2021 during which the Court entered a Text Order requiring the Defendants to produce a privilege log by December 31, 2021. *Id.* at ¶¶ 5, 6. Defendants produced two privilege logs on December 30, 2021 including emails and HB documents withheld. *Id.* at ¶ 8.

On November 19, 2021, Plaintiffs served a second round of RFPs to which Defendants responded on December 20, 2021. *Id*. at ¶ 16. In the second set of RFPs, Plaintiffs sought an additional eighteen personnel files as well as other documents. On January 18, 2022, Defendants supplemented their responses to the second round of RFPs. Despite the supplementation, Defendants maintained their position with respect to most of the document requests and a dispute exists. On January 24, 2022, counsel had a meet and confer about the alleged deficiencies in the second round of RFPs. The Plaintiffs then filed these motions to compel.

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 26 authorizes discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1). Despite this broad standard, the scope of discovery is not unlimited. In determining whether information is proportional, courts consider "the importance of the issues at stake in the

action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." FED. R. CIV. P. 26(b)(1). Courts may limit discoverable evidence if the requested information is outside the scope permitted by Rule 26(b)(1), unreasonably cumulative, less expensive, or easier to obtain from some other source, or the requesting party has had ample opportunity to obtain the discovery. FED. R. CIV. P. 26(b)(2)(C). If the Court finds that the discovery request seeks privileged material, the Court may issue a protective order. *See* FED. R. CIV. P. 26(c). The party objecting to discovery carries the burden of proving its objection. *St. Paul Reinsurance Co. v. Commercial Fin. Corp.*, 198 F.R.D. 508, 511 (N.D. Iowa 2000). If a party fails to produce documents or provides evasive or incomplete disclosures, the requesting party may move the court for an order compelling an answering, designation, production, or inspection. FED. R. CIV. P. 37(a).

## IV. DISCUSSION AND ANALYSIS

Plaintiffs ask the Court for judicial scrutiny of discovery in this matter to prevent further delays in the case. Specifically, Plaintiffs seek an order requiring Defendants to:

1. Produce documents responsive to Plaintiffs' Second RPD Nos. 1-18, 19-21, 24, 25, 27, and 28. ECF No. 79 at 9;
2. Produce Supplemental Responses for *all* Plaintiffs' RPDs (First and Second RPDs), require that any objections that have not been waived be stated with specificity, and state whether any responsive materials have been withheld on the basis of an objection to an RPD. ECF No. 79 at 9;
3. Supplement Privilege Logs on a recurring basis, and indicate whether any responsive materials are being withheld on the basis of a privilege. ECF No. 79 at 9;

4. Provide a date by which all production will be complete. ECF No. 79 at 9;
5. Produce all Husch Blackwell documents responsive to Plaintiffs' requests. ECF No. 80 at 6; and
6. Pay attorneys' fees and expenses related to the preparation of these motions. ECF No. 79 at 9 and ECF No. 80 at 6.

Plaintiffs argue that production of these documents is warranted because the documents are relevant and discoverable, current responses are evasive or incomplete, and the documents are not privileged or if any privilege attached to the documents, that privilege was waived. In the alternative, if the Court finds the documents are privileged, the crime-fraud exception applies. In the context of the relevant law, parties' arguments, and the record in this case, the Court will address the two motions individually below.

**Motion to Compel Production of Documents and Discovery Responses ECF No. 79**

Defendants argue that Plaintiffs' first motion is without merit because it fails to cite any specific deficiencies in Defendants' discovery responses with respect to the first set of requests for production of documents[1]. Defendants assert that they have provided substantive answers and valid objections. ECF No. 83 at 2. Defendants further contend that they produced approximately 200,000 pages of documents in response to the first set of requests. *Id*. Defendants note that Plaintiffs' current request for Defendants to "produce all responsive documents" rests on mere speculation that other responsive documents might exist. *Id*. at 4, 5. Defendants argue that Plaintiffs have failed to show "that the documents produced permit a reasonable deduction that

[1] The Court will address the document production requests in the first set of document requests seeking the Husch Blackwell documents (RPDs 25-28, 34, 89, 124-131, and 141-144) when ruling on the Motion to Compel the Husch Blackwell Documents [ECF No. 80] later in this Order.

other documents exist or did exist." *Id.* Furthermore, Defendants argue that the parties agreed that Defendants would produce documents on a rolling basis and as such, have continued to supplement as materials are gathered. *Id*. Defendants state that just because the documents produced aren't the "smoking gun" evidence Plaintiffs expected to affirm their theory of the case, does not mean that such documents exist. *Id*. at 4. The gist of Defendants argument as to the first set of requests is that Plaintiffs have failed to provide any basis to believe that other responsive documents exist that have not been produced, but rather rely on mere speculation that other documents could exist.

At the hearing, Plaintiffs' counsel advised the Court that Defendants had supplemented their responses to the first set of requests since the filing of the motion to compel,[2] but she also indicated that the supplementations did not moot the motion to compel. Plaintiffs' counsel repeatedly referred to the motion to compel as a "housekeeping motion." Plaintiffs' counsel advised the Court that Plaintiffs were seeking a timetable or deadline for Defendants to complete their production of responsive documents rather than an ongoing rolling production with no end in sight. Plaintiffs' counsel also asked that the depositions of Defendants and related deponents be allowed to remain open in case Defendants produced additional discovery beyond any discovery deadlines.

In their briefing and at the hearing, Defendants' counsel confirmed that Defendants were not withholding any responsive documents other than those identified in the privilege logs and the personnel files requested in the second set of document requests. He further noted that Defendants soon would be providing an eighth supplementation of documents. Defendants'

---

[2] Counsel indicated that defendants had provided three additional supplementations since the filing of the motion (went from fourth supplemental response to seventh supplemental response).

counsel advised the Court that they were close to having exhausted all avenues to locate responsive materials. He further noted that if Plaintiffs could identify any specific information that had not yet been produced, Defendants would search for that material.

Setting aside the Husch Blackwell documents, at the hearing, Plaintiffs' counsel specifically identified an audio recording of an interview of Aaron Mends taken by Liz Tovar as part of a 2018 task force report that had not been produced by Defendants. In response, defense counsel stated they have produced all information relating to the 2018 task force that they had received from Liz Tovar and other university personnel involved with the task force. Defense counsel offered to revisit the Aaron Mends audio recording with Ms. Tovar and would produce the recording if it could be located. The Court advised defense counsel that additionally, they must ask Ms. Tovar about the disposition of the audio recording if there had been such a recording which was no longer in her possession or the possession or control of any of the Defendants.

As to Plaintiffs' Second RPDs, Defendants argue that documents either do not exist or those requests were supplemented as recently as January 22, 2022. *Id*. at 7. As such, the main requests at issue are RFP Nos. 1-18, which request the personnel files of current and former employees of the Program and University. *Id.* Defendants contend their objections are valid as to the disclosure of personnel files because thus far, Plaintiffs have been unable or unwilling to provide information to support a determination that the personnel files are relevant to issues in this case. *Id*. at 8. Of the 18 personnel files requested, only two of those persons, Broderick Binns and Erik Campbell, are mentioned in the Plaintiffs' complaint. *Id*. Additionally, Defendants claim the personnel files of the named Defendants and head coach, Kirk Ferentz have already been provided to Plaintiffs, with the exception of any personnel reports that were

part of the Husch Blackwell documents. *Id*. Because disclosure of personnel files is sensitive and intrusive, Defendants argue Plaintiffs should be required to show that those files are indeed relevant to the claims. *Id*.

With respect to the personnel files requested, as narrowed by Plaintiffs, the record before the Court is sparse as to the relationship and/or relevance of many of the individuals whose personnel files are being sought. Based on the allegations in the case and the available information, the Court concludes that Defendants must produce (1) any disciplinary documents, performance evaluations, or other documents that raise any concerns or allegations or otherwise discuss discriminatory or unfair treatment of Black athletes in the Program that are part of the requested personnel file for any individual who was employed as part of the Program (i.e. any identified person who coached or was otherwise employed in the Program), or (2) any disciplinary documents, performance evaluations, or other documents that raise any concerns or otherwise discuss discriminatory or unfair treatment or bias on the basis of race that are part of the requested personnel file for any individual who was involved in the 2018 task force investigation and report or Iowa's handling of the black players' complaints. If there are no such documents in a particular individual's personnel file, Defendants are not required to produce the personnel file but must state that no such documents exist for said person (i.e., "Defendants have reviewed the personnel file of "X" and there are no documents in his/her personnel file that meet the requirements of the Court's order.") If Plaintiffs obtain additional specific information that demonstrates the relevance of any other person's personnel file, they should promptly provide that information to Defendants and, may, if necessary, file a supplemental motion to compel.

The Court understands that Plaintiffs' counsel is concerned that Defendants may produce responsive documents after depositions have been concluded and/or on the eve of trial causing

prejudice to Plaintiffs. They suggest that the Court order that the depositions remain open in case that situation were to occur. The Court does not believe that to be an appropriate ruling based on the current record. The Court cannot rule based upon speculation or a possibility. All parties are bound to comply with the Federal Rules of Civil Procedure that govern the timing and adequacy of discovery. If Plaintiffs' fears come to fruition, Plaintiffs can request further relief from the Court including the reopening of discovery and sanctions under the Federal Rules of Civil Procedure.

**Motion to Compel Production of Husch Blackwell Documents ECF No. 80**

On June 12, 2020, Iowa retained HB to "conduct an independent review of issues and allegations relating to racial disparities within the football program." Pl. Exhibit 1, ECF No. 80-2; Def. Exhibit A, ECF No. 84-1. Iowa signed an Agreement for Legal Services ("Agreement"). Def. Exhibit A, ECF No. 84-1. On a June 24, 2020 email from Demetrius Peterson ("Peterson"), the attorney handling the investigation, to potential interviewees, Peterson wrote, "The University has directed us to use our independent and professional judgment in conducting the investigation and to present our findings to the University independent of any outside influence." Pl. Exhibit 1, ECF No. 80-2. Within the next few weeks, HB conducted its investigation and in July of 2020, Iowa publicly released a twenty-six-page document titled, "Report of External Review: Football Program Culture, University of Iowa" ("the Report") which summarized the results of the investigation and confirmed that the Program's rules perpetuated racial or cultural biases. ECF No. 86-1, p. 25. Plaintiffs now seek production of all materials related to this HB investigation. Defendants object on the basis of attorney-client and work-product privilege.

At issue in this motion are two privilege assertions, the attorney-client privilege, and the work-product privilege. Attorney-client privilege is "a long-established rule that confidential

communications between an attorney and his client are absolutely privileged from disclosure against the will of the client." *Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 601 (8th Cir. 1977). Attorney-client privilege applies "only to those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege." *Id.* As explained,

> "In order for the attorney-client privilege to be applicable the parties to the communication in question must bear the relationship of attorney and client. Moreover, the attorney must have been engaged or consulted by the client for the purpose of obtaining legal services or advice services or advice that a lawyer may perform or give in his capacity as a lawyer, not in some other capacity. A communication is not privileged simply because it is made by or to a person who happens to be a lawyer."

*Id.* at 602. "[T]he privilege does not protect documents and other communications simply because they result from an attorney-client privilege relationship." *Doe 1 v. Baylor University*, 320 F.R.D. 430, 435 (W.D. Tex. 2017). As to the narrower work-product doctrine, under FED. R. CIV. P. 26(b)(3), work-product privilege is a rule that "information or materials assembled by or for a person in anticipation of litigation or in preparation for trial may be qualifiedly privileged from disclosure to an opposing party." *Diversified Industries*, 572 F.2d at 601.

The Court will first dispose of Defendants' claim that the HB documents are privileged under the work-product doctrine. Federal Rule of Civil Procedure 26(b)(3) is clear that "information or materials sought to be protected as 'work product' must be obtained in anticipation of litigation or for trial. Otherwise, the privilege…[i]s not available." *Id.* at 603. It is uncontested that HB's investigation was not made, and the Report was not prepared because of any prospect of litigation. The HB documents came into existence well in advance of the Plaintiffs' lawsuit. The Defendants could not possibly have prepared the HB documents in anticipation of litigation when no such prospects of litigation existed. As such, the HB documents are not privileged under the work-product doctrine.

As to Defendants' claim that the HB materials are attorney-client privileged, Plaintiffs make three arguments in support of their motion. First, they argue that the HB documents are not privileged because the HB attorneys were not acting as attorneys in the investigation, therefore attorney-client privilege did not attach. Second, Plaintiffs argue that Defendants waived any privilege by failing to timely object to the discovery requests, by failing to quash Plaintiffs' subpoena to HB, and by voluntarily releasing the Report to the public. Lastly, Plaintiffs contend that even if the HB materials were privileged, the materials lost their privilege under the crime-fraud exception.

1. Attorney-Client Privilege

As a preliminary matter, the Court holds Defendants have failed to show that the HB law firm was engaged to provide legal services. Defendants rely on the Agreement's wording pointing out that the Agreement indicates HB was retained to "provide legal services", lists Iowa as HB's client, and outlines the scope of their representation and the conditions for the termination of the "attorney-client relationship." ECF No. 84 at 3. Plaintiffs concede that Defendants had *some* form of an attorney-client relationship with HB, but contend the scope of the services provided were limited to HB conducting an "independent review of issues and allegations relating to the racial disparities within the Football program." ECF No. 86 at 2. The Court agrees that other than the language of the Agreement, Defendants have not provided evidence to support their claim that the HB documents are covered under the attorney-client privilege. The Agreement alone does not prove that HB was retained to provide services which only an attorney, in its capacity as a professional legal adviser, could do. The fact that Mr. Peterson is an attorney is irrelevant because his role in the investigation was that of an investigator and not of any attorney. "A communication is not privileged simply because it is

made by or to a person who happens to be a lawyer." *Diversified Industries*, 572 F.2d at 602. Unlike other cases where materials related to investigations were found privileged, here there were no amendments to the engagement Agreement clarifying that the university was indeed seeking legal advice. *See Baylor*, 320 F.R.D at 436. Nor did the university submit any declarations from the law firm attesting that their services were a rendition of professional legal services or advice. *See id; Diversified Industries,* 572 F.2d at 610. Nor was there any indication that the interviewees were told the investigation was to provide Iowa with legal advice. *Id.* There is nothing in the record to support the argument that Mr. Peterson or the HB law firm provided any advice to Iowa for the purpose of an opinion on law, in anticipation of litigation, in preparation for trial, or any other service which only a lawyer is authorized to perform. At the hearing, defense counsel indicated that HB made no factual determinations, they simply gathered the information to create a record of the concerns. As such, the Court concludes that the HB materials are not privileged.

2. Waiver of Attorney-Client Privilege

Plaintiffs argue that even if the Court finds the HB materials are privileged, the privilege was waived in three ways. First, because Defendants failed to timely object to the discovery requests. Second, because they failed to quash Plaintiffs' subpoena to the HB law firm, and third, Defendants waived privilege when they disclosed the Report. The Court finds it unnecessary to address the first and second arguments because this Court holds that Iowa waived attorney-client privilege when it voluntarily disclosed the Report to the public.

Even assuming, *arguendo*, that the HB documents are privileged, it is well known that "[t]he confidentiality of a client's communications may be compromised either through the publication of evidence of the communications themselves or through the publication of

evidence of attorney statements or documents that disclose the client's confidential communications." *Baylor*, 320 F.R.D. at 437. Generally, "disclosure of any significant portion of a confidential communication waives the privilege as to the whole." *Id*. Defendants contend that although the Report was released to the public, disclosure of the Report did not create a subject matter waiver over all other HB materials. ECF No. 84 at 4. Defendants cite Federal Rule of Evidence 502(a), indicating that disclosure of communications or information covered by the attorney-client/work-product privilege only applies if: 1) the waiver is intentional; 2) the disclosed and undisclosed communication or information concerns the same subject matter; and 3) they ought in fairness to be considered together. *Id.* Defendants contend that fairness considerations and Rule 502(a) disfavor broad subject matter waivers especially considering Defendants' disclosure was not for tactical advantage. *Id.* Plaintiffs argue Defendants' reliance on Rule 502(a) is misplaced because that rule only applies where a partial disclosure was made in *a federal proceeding or to a federal office or agency*. ECF No. 86 at 4.

The Court finds Defendants' arguments unconvincing. First, the Court agrees that Rule 502(a) does not apply here because the disclosure of the Report was not made in a federal proceeding or to a federal office or agency. In contrast, Iowa disclosed the Report to the public to address the publicity of the Football players' comments. ECF No. 86 at 4,5. At the hearing, defense counsel stated that Iowa released the Report to make the concerns public and to create a safe place where others could come forward and discuss their concerns with an independent third-party. But even if Rule 502(a) did apply, considerations of fairness weigh in favor of waiver. As Plaintiffs counter, it would be unfair to allow Defendants to use the HB materials as both a sword and shield. "When a party entitled to claim the attorney-client privilege uses confidential information against his adversary (the sword), he implicitly waives its use

protectively (the shield) under that privilege." *Baylor*, 320 F.R.D. at 439. Defendants cannot have it both ways and allowing Defendants to keep HB materials confidential would be unfair given that Defendants were able to obtain that information under the guise that the investigation was "independent and external." Interviewees, particularly current and former players, did not anticipate that their participation in the investigation and the information they shared would ultimately be used in Defendants' defense of this lawsuit.

Additionally, it appears that Iowa may use the report in support of its defense in the instant litigation. In their answer, Defendants asserted the following two pertinent affirmative defenses: "(3). To the extent any harassing behavior occurred Defendants exercised reasonable care to prevent and promptly correct any potentially unlawful harassing behavior, and Plaintiffs unreasonably failed to take advantage of any preventative or corrective opportunities provided by Defendants or to otherwise avoid harm;" and (6) Defendants were not deliberately indifferent to any alleged discrimination of harassment." ECF No. 45, p.18. During the hearing, the Court asked defense counsel what role the HB review would play in the litigation. In response, defense counsel indicated that the HB review shows that the University listened and then found a way to provide a means for people to come forward with their concerns. As such, the Court finds that fairness concerns militate in favor of disclosure of the underlying HB investigation documents to Plaintiffs.

Similarly, Defendants' attempt to distinguish *Baylor* from this case is unavailing. In *Baylor,* the Court concluded that the university's disclosures of a similar investigative report constituted waiver because the disclosure was intentional and included substantial detail about confidential communications between the parties. 320 F.R.D. at 439. Defendants argue that unlike *Baylor*, whose disclosed materials contained privileged communications, the Report here

is limited in confidential communications. ECF No. 84 at 5. Plaintiffs refute that contention arguing that the Report is replete with confidential statements as identified by the Defendants. ECF No. 86 at 6. Like other cases where waiver was found, the Report here revealed not only findings of fact, but communications shared by the Iowa players and employees with HB. *See, e.g., In re Kidder Peabody Sec Litig.*, 168 F.R.D. 459 (S.D.N.Y. 1996) (finding waiver of the attorney-client privilege where a report made a factual summary and paraphrased interviews conducted by attorneys); *Nguyen v. Excel Corp.*, 197 F.3d 200 (5th Cir. 1999) (affirming a district court's finding of waiver where executives recounted communications with attorneys in depositions). Much like *Baylor*, a brief look at the Report will reveal that it not only contains generic statements about the investigation, but also specific communications. The Report summarizes its findings by providing specific details about the Program and the individuals involved in it. Moreover, the Report quotes or para-phrases the interviewees. Lastly, it is undisputed that Defendants voluntarily and publicly released the Report. As such, even if the HB materials were privileged, the Court concludes that Defendants waived attorney-client privilege over all HB materials when it chose to share the Report with the public.

In conclusion, the Court will briefly address Plaintiffs' claim that the crime-fraud exception applies in this case. Plaintiffs argue that even if the HB documents are privileged, they lost their privilege pursuant to the crime-fraud exception. This exception applies when a lawyer is engaged to "further a continuing or contemplated criminal or fraudulent scheme." Plaintiffs contend that if Defendants' position is true—that the HB investigation is attorney-client privileged—then they engaged in fraudulent activity because they falsely represented to the public that the investigation was independent and for purposes of ending discriminatory practices within the Program. ECF No. 80-1 at 15-16. Defendants refute that the crime-fraud exception

applies in this case. ECF No. 84 at 9. Privileged documents lose their privileged status under the crime-fraud exception when there is a "showing that the legal advice has been obtained in furtherance of an illegal or fraudulent activity." *Id*. Plaintiffs fail to make prima facie showing because there is no evidence that Defendants engaged HB for the purposes of furthering an illegal or fraudulent activity. Additionally, there is no evidence that Defendants made any changes to already-public documents to make them false. As such, the Court concludes the current record does not establish that the crime-fraud exception applies.

## V. CONCLUSION

Plaintiffs' Motion to Compel Production of Documents and Discovery Responses ECF No. 79 is **granted in limited part and denied in part**. Plaintiffs' Motion to Compel Production of Husch Blackwell Documents ECF No. 80 is **granted**.

Plaintiffs seek attorneys' fees and costs associated with the filing of their motions to compel. When the Court grants in part and denies in part a motion to compel, the Court has the discretion to award attorneys' fees and costs associated with the motion. In the instant case, the Court finds and concludes that each party shall bear its own costs and fees as Plaintiffs did not receive the full relief they sought and the parties each had a viable argument on the dispute over the disclosure of the HB investigative file.

For purposes of clarity, the Court will address each of Plaintiffs' requested items of relief below to prevent further delays in the case.

1. Produce documents responsive to Plaintiffs' Second RPD Nos. 1-18, 19-21, 24, 25, 27, and 28. ECF No. 79 at 9. **As described more fully above, Defendants must provide the information noted on pages 7 and 8 to Plaintiffs by July 11, 2022.**

**2.** Produce Supplemental Responses for *all* Plaintiffs' RPDs (First and Second RPDs), require that any objections that have not been waived be stated with specificity, and state whether any responsive materials have been withheld on the basis of an objection to an RPD. ECF No. 79 at 9. **As described more fully above, Defendants must provide the information noted on pages 7 and 8 to Plaintiffs by July 11, 2022.**

**3.** Supplement Privilege Logs on a recurring basis, and indicate whether any responsive materials are being withheld on the basis of a privilege. ECF No. 79 at 9. **Privilege logs shall be supplemented on a timely basis at the same time that a supplemental production is made.**

**4.** Provide a date by which all production will be complete. ECF No. 79 at 9. **The Court will include a date for substantial completion of written discovery in a separate order dealing with Plaintiffs' request to extend deadlines.**

**5.** Produce all Husch Blackwell documents responsive to Plaintiffs' requests. ECF No. 80 at 6**. Defendants must provide Plaintiffs with all HB materials responsive to Plaintiffs' discovery requests by July 11, 2022.**

**6.** Pay attorneys' fees and expenses related to the preparation of these motions. ECF No. 79 at 9 and ECF No. 80 at 6. **Each party to bear its own costs and fees.**

IT IS SO ORDERED.

Dated June 24, 2022.

Helen C. Adams
Chief U.S. Magistrate Judge