IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| AKRUM WADLEY; JONATHAN PARKER; MARCEL JOLY; AARON MENDS; DARIAN COOPER; BRANDON SIMON; and JAVON FOY,<br><br>　　　Plaintiffs,<br><br>vs.<br><br>UNIVERSITY OF IOWA, BOARD OF REGENTS FOR THE STATE OF IOWA; BRIAN FERENTZ; CHRISTOPHER DOYLE; GARY BARTA; KIRK FERENTZ; and SETH WALLACE,<br><br>　　　Defendants. | Case No. 4:20-cv-366<br><br><br><br>**BRIEF IN SUPPORT OF DEFENDANTS UNIVERSITY OF IOWA, BOARD OF REGENTS FOR THE STATE OF IOWA, CHRISTOPHER DOYLE, AND GARY BARTA'S MOTION TO DISMISS SECOND AMENDED COMPLAINT** |

## Table of Contents

I.　INTRODUCTION ................................................................................................... 3

II.　STANDARD OF REVIEW ................................................................................... 4

III.　ARGUMENT ........................................................................................................ 7

　A.　Several of Plaintiffs' claims must be dismissed because they are barred by the applicable statute of limitations, as Plaintiffs had either left the University of Iowa football program outside of the limitations period based on the filing of this suit or their claims do not relate back to the filing of this suit. ..................................................................................... 7

　　1.　*This Court should apply a two-year limitations period for § 1981 claims brought against state actors under § 1983, rather than the four-year limitations period established under § 1658.* .............................................................. 8

　　2.　*Regardless of which limitations period the Court applies, Plaintiff Cooper's claims are time-barred.* .............................................................. 11

　　3.　*Plaintiffs' new claims against Defendant Barta does not relate back to the filing of their state court petition and as a result, are time-barred.* ..................................... 11

　　4.　*Plaintiffs' § 1983 claims against Defendant Doyle are limited to conduct occurring after November 2018.* .............................................................. 12

1

B.  Several of Plaintiffs' claims must be dismissed because Plaintiffs fail to plead sufficient facts to state a claim for relief that is plausible on its face and in light of the incorporated record in this case ...................................................................................................... 13

   1.  *Count I fails to plead sufficient facts to support a plausible claim that Plaintiffs Mends, Simon, and Foy were subject to a racially hostile educational environment and Plaintiffs are barred from seeking emotional distress damages under Count I.* ........................................................................................................ 13

   2.  *Count III fails to plead sufficient facts to support a plausible § 1983 equal protection claim against Defendant Doyle.* .................................................................. 14

   3.  *Count V fails to plead sufficient facts to support plausible § 1983 failure to train and supervise claims against Defendant Barta.* ........................................................ 16

C.  Defendants Doyle and Barta are entitled to qualified immunity. ...................................... 18

   1.  *Defendant Doyle is entitled to qualified immunity on Plaintiffs' § 1981 claims.* ........ 20

   2.  *Defendant Doyle is entitled to qualified immunity on Plaintiffs' § 1983 equal protection claims.* ............................................................................................................ 21

   3.  *Defendant Barta is entitled to qualified immunity on Plaintiffs' § 1983 failure to train and supervise claim.* ............................................................................................ 22

IV. CONCLUSION ................................................................................................................... 22

## I.     INTRODUCTION

After nearly a year-and-a-half of litigation, it has become even more clear the claims of these seven Plaintiffs that they were discriminated against because of their race while participating in the University of Iowa football program fail as a matter of law. Plaintiffs kicked off this lawsuit on November 11, 2020, with the filing of their original state court petition in the Iowa District Court for Polk County. The case was then removed to this Court on December 1, 2020. On January 11, 2021, Plaintiffs filed their First Amended Complaint ("FAC"), which raised eight causes of action, including claims under 42 U.S.C. § 2000d ("Title VI"), 42 U.S.C. § 1981, 42 U.S.C. § 1983, 42 U.S.C. § 1985, and state law breach of contract claims.

On May 6, 2021, this Court granted in part and denied in part Defendants' Motion to Dismiss the FAC. In its Ruling, the Court dismissed six named Plaintiffs and three named Defendants from the case and dismissed Plaintiffs' § 1983 failure to train and supervise claim, § 1985 conspiracy claims, breach of contract claims, and two of their three Title VI claims. (Doc. 33). On June 7, 2021, Defendants filed their Answer to the remainder of the FAC (Doc. 45), and the parties proceeded with discovery.

Then, on April 8, 2022, Plaintiffs filed their Motion to Amend First Amended Complaint, seeking to file a Second Amended Complaint ("SAC"), which not only revised several of their factual allegations from the FAC, but also added a new named defendant—Seth Wallace—and several new causes of action. (Doc. 101, 101-1, 101-3). Defendants filed their Resistance to the Motion to Amend on April 22, 2022, arguing that Plaintiffs' new claims were futile, because they would not survive a Rule 12(b)(6) motion on both statute of limitations and plausibility grounds. (Doc. 103). Plaintiffs failed to file a reply brief in response to Defendants' resistance. On August 17, 2022, the Court granted Plaintiffs' motion without ruling on Defendants' claims of futility and

noting legal challenges to the SAC would best be addressed by way of dispositive motions. (Doc. 123).

Despite a second opportunity to amend their claims and allegations, including after nearly a year's worth of discovery, Plaintiffs' SAC – like the original Complaint and FAC – continues to rely upon allegations largely unrelated to these specific Plaintiffs. And once again, even among the allegations that *do* relate to these specific Plaintiffs, most of those allegations relate to conduct outside of the applicable limitations period and fail to sustain plausible claims on their face. For these reasons, several portions of the SAC must be dismissed for failing to state a claim under Federal Rule of Civil Procedure 12(b)(6).

## II.  STANDARD OF REVIEW

A complaint that fails to state a claim upon which relief can be granted must be dismissed. Fed R. Civ. P. 12(b)(6). While a complaint need not contain "detailed factual allegations" to state a claim, a plaintiff must provide more than "unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also* Fed. R. Civ. P. 8(a)(1)–(3). Complaints that offer nothing more than "labels or conclusions" or "formulaic recitations of the elements of a cause of action" are not sufficient. *Iqbal*, 556 U.S. at 678. "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). To proceed, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This "plausibility" standard is not the equivalent of a "probability requirement," but requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

In evaluating the sufficiency of a complaint under a 12(b)(6) motion, a court must accept the factual allegations as true. *Id.* However, there is no such requirement that the court accept the legal conclusions set forth in a complaint as true. *Id.* Courts evaluate plausibility under the *Iqbal–Twombly* standard by "draw[ing] on [their own] judicial experience and common sense" and "will consider "only the materials that are 'necessarily embraced by the pleadings and exhibits attached to the complaint." *Whitney v. Franklin Gen. Hosp.*, 995 F.Supp.2d 917, 925 (N.D. Iowa 2014). When deciding a motion to dismiss, "a court may consider the complaint and documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Kushner v. Beverly Enters., Inc.*, 317 F.3d 820, 831 (8th Cir. 2003). This is because such documents are not "matters outside the pleading." *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017); *see also Miller v. Redwood Toxicology Lab, Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012) ("While courts primarily consider the allegations in the complaint in determining whether to grant a Rule 12(b)(6) motion, courts additionally consider 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned;' without converting the motion into one for summary judgment.") (quoting 5B Wright & Miller, Federal Practice & Procedure § 1357 (3d ed. 2004)).

Further, a court "may dismiss a claim under Rule 12(b)(6) as barred by the statute of limitations if the complaint itself establishes that the claim is time-barred." *Humphrey v. Eureka Gardens Pub. Facility Bd.*, 891 F.3d 1079, 1081 (8th Cir. 2018). When assessing whether a claim raised in an amended complaint is time-barred, the court must determine if the new claim "relates back" to the original complaint for purposes of the applicable statute of limitations. Federal Rule of Civil Procedure 15(c) provides three scenarios where an amended claim relates back, two of

which are relevant here. *See* Fed. R. Civ. P. 15(c)(1). First, an amendment relates back when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). "To arise out of the same conduct, transaction, or occurrence, the claims must be tied to a common core of operative facts." *GenoSource, LLC v. Inguran, LLC*, 386 F.Supp.3d 984, 997 (N.D. Iowa 2019) (quoting *Dodd v. United States*, 614 F.3d 512, 515 (8th Cir. 2010)). "An amended [complaint] may raise new legal theories only if the new claims relate back to the original [complaint] by arising out of the same set of facts as the original claims." *Id.*

Second, an amendment seeking to change "the party or the naming of the party against whom a claim is asserted" relates back "if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment…received such notice of the action that it will not be prejudiced in defending on the merits" and "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C). "[A] new defendant may be added to an action by amendment after the statute of limitations has expired if the defendant had adequate notice of the action *and of the plaintiff's mistake in failing to name the new defendant at the beginning*." *Zimmer v. United Dominion Indus., Inc.*, 193 F.R.D. 620, 623 (W.D. Ark. 2000) (emphasis added); *Schiavone v. Fortune*, 477 U.S. 21, 29 (1986); *see also Schrader v. Royal Caribbean Cruise Line, Inc.*, 952 F.2d 1008 (8th Cir. 1991); *Smith v. Paladino*, 317 F.Supp.2d 884, 888 (W.D. Ark. 2004) ("Plaintiff's failure to include Azbell as a defendant when she instituted this action was not due to a mistake in identifying the proper defendant; rather, Plaintiff simply chose not to include Azbell in her suit. This was an instance not of mistaken identity but of mistaken legal judgment. . . .This is not the type of 'mistake' encompassed by Rule 15(c)'s relation-back provision."); *Arkin v. MedCenters Health Care, Inc.*, 1990 WL 608203, at

*6 (D. Minn. Apr. 17, 1990) ("Where, as in this case, plaintiffs knew the identity of the proper party but did not sue that party as a matter of strategy or otherwise, the amended pleading will not be held to relate back to the date of the original pleading.").

### III.     ARGUMENT

Plaintiffs' SAC reasserts Plaintiffs' previous Title VI hostile environment claim and § 1981 disparate treatment claim, as well as adds new claims and parties under §§ 1981 and 1983. But Plaintiffs' claims fail for two reasons: (1) they run afoul of the applicable statute of limitations; and (2) Plaintiffs failed to plead sufficient facts to sustain plausible claims, especially in light of the already-developed record in this case. Defendants will discuss both issues separately.

### A.     Several of Plaintiffs' claims must be dismissed because they are barred by the applicable statute of limitations, as Plaintiffs had either left the University of Iowa football program outside of the limitations period based on the filing of this suit or their claims do not relate back to the filing of this suit.

At the outset, several of the claims contained in Plaintiffs' SAC fail as a matter of law because they are time-barred. While Defendants acknowledge the Court's previous ruling that the four-year "catch all" statute of limitations set out in 28 U.S.C. § 1658 will be applied to Plaintiffs' § 1981 claims (Doc. 31, at 6-8), in light of more recent authority and out of an abundance of caution to preserve this issue, Defendants continue to assert that the two-year statute of limitations applicable to § 1983 actions filed in Iowa should apply here. As such, Plaintiffs Wadley, Parker, Joly, and Cooper are time-barred from raising their § 1981 claims, and the remaining Plaintiffs' claims should be limited to events occurring after November 11, 2018, or within two years of the filing of Plaintiffs' state court petition.

Regardless of whether the Court applies a two-year or four-year limitations period to Plaintiffs' § 1981 claims, Plaintiff Cooper's claims are time-barred, as his tenure at the University ended well-before November 11, 2016. Additionally, several of Plaintiffs' new claims raised in

their SAC do not relate back to the filing of their original state court petition, and are thus time-barred because the claims stem from events that occurred prior to April 8, 2018.

1. *This Court should apply a two-year limitations period for § 1981 claims brought against state actors under § 1983, rather than the four-year limitations period established under § 1658.*

It is undisputed that "[a] federal action to enforce rights under section 1981 against a state actor may only be brought pursuant to section 1983." *Artis v. Francis Howell N. Band Booster Ass'n*, 161 F.3d 1178, 1181 (8th Cir. 1998). In 1990, Congress enacted the catch-all limitations statute, establishing a four-year limitations period. The Civil Rights Act of 1991 later expanded rights protected by § 1981, allowing for Plaintiffs' claims arising after contract formation.

Recently, the Second and Sixth Circuit Courts of Appeals, as well as several other federal district courts, have held the shorter state limitations periods apply to § 1981 claims raised under § 1983, such as here, as opposed to the § 1658 four-year limitations period. *See Duplan v. City of New York*, 888 F.3d 612, 620–21 (2d Cir. 2018); *McCormick v. Miami Univ.*, 693 F.3d 654, 660–61 (6th Cir. 2012); *Brown v. Gibson*, 2019 WL 7194069, at *4 (E.D.N.C. July 1, 2019); *Agbefe v. Bd. of Educ. of City of Chicago*, 538 F.Supp.3d 833, 842-43 (N.D. Ill. 2021) (holding that because "§ 1983 remains the exclusive remedy for violations of § 1981 committed by state actors," the statute of limitations for any § 1983 claim against the board—including for racial discrimination under § 1981—is two years); *Gibson v. County of Suffolk*, No. 19-cv-03871(GRB)(ST), 2022WL1063017, at *7 (E.D.N.Y. Feb. 18, 2022) ("[B]ecause § 1983 has a three-year statute of limitations for claims against state actors, those [§ 1981] claims too are time-barred as brought against Defendants."); *Brown v. Wetz*, No. 18-cv-11178(NSR), 2021 WL 964922, at *14 n.7 (S.D.N.Y. Mar. 15, 2021) (rejecting application of the four-year limitations period for § 1981 claims against state actors); *Richardson v. City of New York*, No. 17-CV-9447, 2018 WL 4682224, at *12 (S.D.N.Y. Sept. 28, 2018) ("Ultimately, because Plaintiff[] ha[s] brought [his] [§] 1981 claims pursuant to [§] 1983, the claims are subject to [§] 1983's three-year statute of limitations

rather than [§] 1981's more variable limitations period." (alterations in original)); *Caltse v. New York State Dept. of Motor Vehicles*, No. 17-cv-791(VB), 2020WL1309062, at *6 (S.D.N.Y. Mar. 19, 2020); *Stewart v. Holder*, No. 1:16-cv-682, 2017 WL 4479612, at *4 n.7 (E.D. Va. July 19, 2017) (holding that because § 1981 claims against government officials are subject to the same requirements as § 1983 claims, Virginia's two-year statute of limitations applies to plaintiff's § 1981 claim as well), *aff'd*, 710 F. App'x 120 (4th Cir. 2018); *McQueen v. City of Chicago*, No. 19-cv-2048, 2014 WL 1715439, at *2 (N.D. Ill. Apr. 30, 2014).

The Eighth Circuit has not ruled on the issue of whether the limitations period in § 1658 applies to § 1981 performance claims against state actors under § 1983. Recently however, Judge Colloton's concurrence in *Onyiah v. St. Cloud State University* cited favorably to the Second Circuit's decision in *Duplan v. City of New York*. *See* 5 F.4th 926, 932-33 (8th Cir. 2021) (Colloton, J., concurring) (citing *Duplan*, 888 F.3d 612 (2d Cir. 2018)). In *Duplan*, the Second Circuit held that the four-year limitations period in § 1658 did not apply and that the shorter, three-year New York limitations period for § 1983 claims applies to actions against state actors for violations of § 1981. *See* 888 F.3d at 619–20. The Second Circuit explained:

> Duplan seeks to assert claims against the City under 42 U.S.C. § 1981, rather than under § 1983, because some § 1981 claims have a four-year statute of limitations, *see Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382–83, 124 S. Ct. 1836, 158 L.Ed.2d 645 (2004), whereas the limitations period for § 1983 claims is borrowed from state law, which, in the case of New York, confers only a three-year period, *Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009). In *Jett v. Dallas Independent School District*, 491 U.S. 701, 109 S. Ct. 2702, 105 L.Ed.2d 598 (1989), however, the Supreme Court held that "the express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units." *Id*. at 733, 109 S. Ct. 2702 (emphasis added). Duplan contends that *Jett* was implicitly overruled by a 1991 amendment to the Civil Rights Act. Although our precedents have not been entirely clear on this issue, we now join the strong consensus of our sister Circuits in rejecting Duplan's argument and reaffirming *Jett*'s ongoing viability.

*Id.*

There appears to be only two circuit cases holding that the § 1658 limitations period applies in cases such as the present one: *Baker v. Birmingham Board of Education*, 531 F.3d 1336 (11th Cir. 2008), and *Shahrivar v. City of San Jose*, 752 Fed. Appx. 415 (9th Cir. 2018). However, both cases are distinguishable from the present case. *Baker* involved a claim filed against a board of education, not an official sued in his individual capacity. 531 F.3d at 1338. As Judge Loken made clear in his concurrence in *Ellis v. Houston*, consideration of personal liability of state actors for § 1981 claims is considerably different from whether a board or entity is responsible. *See* 742 F.3d 307, 327–28 (Loken, J., concurring). Further, the Virginia and New York district court cases cited in *Baker* appear to have been since supplanted by subsequent rulings by the Second Circuit and the U.S. District Court for the Eastern District of Virginia, holding that the shorter limitations period borrowed from state law applied to § 1981 claims against state actors, not § 1658. *See Duplan*, 888 F.3d at 619–20; *Stewart*, 2017WL4479612, at *4 n. 7. In *Shahrivar*, the Ninth Circuit cited to the U.S. Supreme Court in *Jones v. R.R. Donnelley & Sons Company*, 541 U.S. 369 (2004), and to a prior Ninth Circuit case, *Johnson v. Lucent Technologies Inc.*, 653 F.3d 1000. *See Shahrivar*, 752 Fed. Appx. at 419 n. 3 (citing *Jones*, 541 U.S. at 382–83; *Johnson*, 653 F.3d at 1003). But neither *Jones* nor *Johnson* dealt with a § 1981 claim being brought against a state actor under § 1983. *See Jones*, 541 U.S. at 382–83; *Johnson*, 653 F.3d at 1003.

Defendants thus respectfully argue that Iowa's shorter two-year limitations period applies to § 1981 performance claims brought under § 1983. If this court agrees, then the claims of Plaintiffs Wadley, Cooper, Parker, and Joly should be dismissed as time-barred under the two-year statute of limitations applicable to § 1983 actions against state actors and the § 1981 claims of Mends, Simon, and Foy should be limited to claims based on incidents occurring after November 11, 2018, or within two years of the filing of the original state court petition.

2. *Regardless of which limitations period the Court applies, Plaintiff Cooper's claims are time-barred.*

Regardless of whether the Court applies a two- or four-year limitations period to Plaintiffs' § 1981 claims, Plaintiff Cooper's claims are time-barred and must be dismissed. It is undisputed that Plaintiff Cooper's tenure in the Iowa Football Program ended on or about January 1, 2016, and he graduated from the University in May 2016. (Doc. 103, at 6-7). Thus, all of Plaintiff Cooper's allegations arise from conduct occurring prior to the spring of 2016. And because these allegations all occurred more than four years before the filing of the state court petition, Plaintiff Cooper's claims are barred by the statute of limitations and must be dismissed.

3. *Plaintiffs' new claims against Defendant Barta does not relate back to the filing of their state court petition and as a result, are time-barred.*

Next, Plaintiffs have resurrected their § 1983 failure to train and supervise claims against Defendant Barta, which was previously dismissed in the Court's May 6, 2021 Ruling. (Doc. 31, at 4 (dismissing Defendant Barta as a named defendant, at Plaintiffs' request)). Plaintiffs' claims run afoul of the statute of limitations. A plaintiff may add new claims to a complaint, but only if the new claims fall within the applicable limitations period, either because they are based on conduct falling within the limitations period tolling from the filing of the amended complaint or because they relate back to the original filing of the suit and would thus fall within the limitations period. *See supra* Part II.

Plaintiffs allege that their claims are not time-barred because "[Count V] arise[s] out of the same conduct alleged Plaintiffs' original pleading." (Doc. 101-1, at 11). But Plaintiffs' argument as it relates to Defendant Barta is defeated by on-point Eighth Circuit precedent for parties who are voluntarily dismissed by a plaintiff. The Eighth Circuit has noted a "well-established rule that upon the entry of a voluntary dismissal without prejudice the court treats an action as if suit had never been filed," meaning the "statute of limitations runs as if no action had been filed." *Curtis v. United Transportation Union*, 648 F.2d 492, 494 (8th Cir. 1981). Further, the Eighth Circuit

rejected an argument that, where the voluntary dismissal is only dispositive as to one party, but not as to the entire case, Federal Rule of Civil Procedure 54(b) provides an exception to the ordinary rule and allows the dismissal to toll the statute of limitations. *Id.* at 495 ("[T]he breadth of the rule that Rule 41(a) dismissal without prejudice leaves the parties as if no suit had been brought is simply too strong and firmly based on the purposes behind the statute of limitations for us to hold that Rule 54(b) would make such a dismissal into a nonfinal order and in effect toll the statute of limitations. We must remember that this was a voluntary dismissal. The plaintiff himself had decided to drop the suit.").

Here, it is undisputed that Plaintiffs voluntarily dismissed Defendant Barta as a named defendant in this case, pursuant to Rule 41(a). (Doc. 22, at 7; Doc. 33, at 4 (granting Plaintiffs' request to dismiss Defendant Barta)). Thus, it is as if Plaintiffs never filed their original claims against Defendant Barta from the beginning. Defendant Barta must therefore be treated as a new defendant, subject to the relation-back analysis in Rule 15(c)(1)(B). *See supra* Part II.

Each Plaintiff's time at the University ended before April 8, 2020. (Doc. 133, at ¶¶ 15-21). Plaintiff's cannot show that failure to timely raise their claims against Defendant Barta was the result of a mistake of identity. *See Arkin v. MedCenters Health Care, Inc.*, 1990 WL 608203, at *6 (D. Minn. Apr. 17, 1990). Thus, Plaintiffs claims cannot relate back and are time-barred.

4. *Plaintiffs' § 1983 claims against Defendant Doyle are limited to conduct occurring after November 2018.*

Finally, Plaintiffs Mends, Simon, and Foy also added a new § 1983 equal protection claim against Defendant Doyle. Even if the Court finds the § 1983 claims relate back to the filing of the original petition, any claims rooted in conduct prior to November 2018 would still be time-barred. *See supra* Part III.A.1.

**B.    Several of Plaintiffs' claims must be dismissed because Plaintiffs fail to plead sufficient facts to state a claim for relief that is plausible on its face and in light of the incorporated record in this case.**

In addition to the limitations issue, Plaintiffs' SAC must also be dismissed because Plaintiffs fail to state a plausible claim upon which relief can be granted. This is Plaintiffs' third bite at the apple and despite nearly a year of discovery between the parties, Plaintiffs have been unable to sharpen their allegations beyond "naked assertions," vague allegations, and significant speculation. In light of the developments in this case and out of an abundance of caution to preserve these issues for appeal, Defendants argue that Plaintiffs' claims in their SAC do not pass the plausibility test and must be dismissed as a matter of law.

1.    *Count I fails to plead sufficient facts to support a plausible claim that Plaintiffs Mends, Simon, and Foy were subject to a racially hostile educational environment and Plaintiffs are barred from seeking emotional distress damages under Count I.*

Count I should be dismissed because Plaintiffs Mends, Simon, and Foy fail to state plausible claims that the University or Regents subjected them to a racially hostile educational environment in violation of Title VI. To state a claim for a racially hostile environment under Title VI, a plaintiff must show that the defendant was "(1) deliberately indifferent (2) to known acts of discrimination (3) which occurred under its control." *Pruitt v. Anderson*, No. 11-2143, 2012 WL 104540, at *2 (D. Minn. Jan. 12, 2012) (quoting *Shrum ex rel. Kelly v. Kluck*, 249 F.3d 773, 782 (8th Cir. 2001)). To be deliberately indifferent, the university's response must be "clearly unreasonable in light of the known circumstances." *Davis*, 526 U.S. at 648 ("[C]ourts should refrain from second-guessing the disciplinary decisions of school administrators."). As such, alleged victims of racial harassment "do not have a right to specific remedial measures." *Zeno v. Pine Plains Cent. Sch. Dist.*, 702 F.3d 655, 666 (8th Cir. 2012).

For conduct to qualify as discrimination under Title VI, the conduct must be motivated by the plaintiff's race and be "so severe, pervasive, and objectively offensive, and that so undermines and detracts from the victims' educational experience, that the victim-students are effectively

denied equal access to an institution's resources and opportunities." *Davis*, 526 U.S. at 651; *see also Wolfe v. Fayetteville, Ark. Sch. Dist.*, 648 F.3d 860, 864, 867 (8th Cir. 2011) ("[A]cts of name-calling do not amount to sex-based harassment [under Title IX] . . . unless the underlying motivation for the harassment is hostility toward the person's gender.").

Here, despite significant litigation and discovery, Plaintiffs allegations have not materially improved since their FAC. So out of an abundance of caution to preserve this issue for appeal, Defendants continue to assert that Plaintiffs' claims do not plausibly state claims for a racially hostile educational environment in violation of Title VI.

And even if the Court determines Count I contains sufficient factual allegations to plausibly state a Title VI claim, the Court should dismiss Plaintiffs' requests for emotional distress damages associated with Count I. *See Cummings v. Premier Rehab Keller, P.L.L.C.*, 142 S. Ct. 1562, 1569–76 (2022) (holding that plaintiffs suing under Title VI cannot recover emotional distress damages).

2. *Count III fails to plead sufficient facts to support a plausible § 1983 equal protection claim against Defendant Doyle.*

Even if the Court finds that Plaintiffs Mends, Simon, and Foy's § 1983 equal protection claims in Count III relate back to the filing of their original state court petition, their claims should be limited only to conduct alleged to have occurred after November 2018. *See supra* Part III.A.4.

The Equal Protection Clause requires state actors to treat similarly situated persons alike. *See American Family Ins. v. City of Minneapolis*, 836 F.3d 918, 921 (8th Cir. 2016). However, "treating similarly situated people differently is also 'not a denial of equal protection unless' the plaintiff shows it includes 'an element of intentional or purposeful discrimination.'" *Doe v. Bd. of Regents of Univ. of Nebraska*, 509 F.Supp. 1133, 1143 (D. Neb. 2020). "The key requirement is that [plaintiff] allege and prove unlawful, purposeful discrimination by each defendant." *Id.* (quoting *Batra v. Bd. of Regents of Univ. of Nebraska*, 79 F.3d 717, 723 (8th Cir. 1996)).

The test for determining whether purported comparators are "'similarly situated' to warrant comparison to a plaintiff is a 'rigorous' one." *EEOC v. Kohler Co.*, 335 F.3d 766, 775 (8th Cir. 2003) (quoting *Harvey v. Anheuser-Busch, Inc.*, 38 f.3D 968, 972 (8th Cir. 1994)). The purported comparators must be similarly situated "in all relevant aspects." *Id.* at 776 (quoting *Lynn v. Deaconess Med. Ctr.-West Campus*, 160 F.3d 484, 487 (8th Cir. 1998)). For example, in the employment context, the "individuals used for comparison must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct *without any mitigating or distinguishing factors*." *Id.* If a plaintiff alleges the comparators received more lenient discipline for misconduct, the misconduct must be of "comparable seriousness" as that of the plaintiff. *Lanear*, 843 F.2d at 301 (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804 (1973)). Even at the pleading stage, a plaintiff must at least provide sufficient allegations showing that the plaintiff and comparator were "involved in or accused of the same or similar conduct and [were] disciplined in different ways." *Fields v. Shelter Mut. Ins. Co.*, 520 F.3d 859, 864 (8th Cir. 2008).

Further, when alleging that similarly situated comparators received favorable treatment, conclusory allegations are insufficient. *See Hager v. Arkansas Dept. of Health*, 735 F.3d 1009, 1015 (8th Cir. 2013); *Coleman v. Maryland Ct. of Appeals*, 626 F.3d 187, 190–91 (4th Cir. 2010) (holding plaintiff's conclusory allegation that he was "treated differently as a result of his race than whites"—even where plaintiff identified an alleged comparator—was insufficient to sustain a Title VII claim because no factual allegations plausibly suggested the comparator was similarly situated)). Such a conclusory assertion simply "imports legal language couched as a factual allegation and fails to raise a right to relief above the speculative level." *Id.*

Here, Count III wholly fails to allege what each Defendant did that was unlawful and purposeful discrimination by this Defendant against any individual Plaintiff. (Doc. 133, at ¶¶ 295-

306). In fact, many of the allegations in Count III are not even directed at any of the three Defendants named in Count III, but rather are general allegations relating to Defendant K. Ferentz. (*Id.* at ¶¶ 299-303); *see also Perez v. Does 1-10*, 931 F.3d 641, 646 (8th Cir. 2019) (concluding plaintiffs failed to plausibly plead a § 1983 claim where they failed to provide sufficient factual support that any particular defendant deprived plaintiffs of a constitutional right and made general allegations against defendants as a group). In fact, Plaintiff Mends makes no specific allegations against Defendant Doyle (Doc. 133, at ¶¶ 153-66). And even where Plaintiff Simon makes allegations against Defendant Doyle, none of his allegations plausibly occurred within the two-year look-back period from the filing of Plaintiffs' state court petition. Specifically, Plaintiff Simon notes that he left the Program in January 2019, mere weeks after the cut-off for the look back period on November 12, 2018. (Doc. 133, at ¶ 20). Plaintiff Simon provides no allegations of mistreatment by Defendant Doyle between November 12, 2018 and January 2019.

Additionally, despite significant litigation, Plaintiffs still only provide a vague, conclusory assertion that there were similarly situated players who received more favorable treatment by Defendant Doyle. (*Id.* at ¶ 298). At no point in the SAC do Plaintiffs provide any specific examples of purported similarly situated comparators. Instead, Plaintiffs simply make conclusory assertions that they were treated less favorably than their White teammates. Such conclusory assertions are insufficient to sustain a § 1983 equal protection claim. *See Hagar*, 735 F.3d at 1015; *Coleman*, 626 F.3d at 190–91. For these reasons, Count III fails as a matter of law and should be dismissed.

3.   *Count V fails to plead sufficient facts to support plausible § 1983 failure to train and supervise claims against Defendant Barta.*

Even if Count V is not dismissed on limitations grounds, which it should, Count V still fails because Plaintiffs have not alleged a plausible claim against Defendant Bata.

Regardless of titles, government officials are generally only liable for their own individual misconduct. *See Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010). "[V]icarious liability is

inapplicable to § 1983 suits…" *Id.* (quoting *Iqbal*, 556 U.S. at 676) (cleaned up). While courts have previously held that state supervisors could be held liable for the misconduct of their subordinates where there was proof that the supervisor was deliberately indifferent to known acts of discrimination by subordinates or failed to adequately train their subordinates, that concept was called into question by the Eighth Circuit in *Ellis v. Houston*. 742 F.3d 307 (8th Cir. 2014). There, the Eighth Circuit held that "[i]n order to be found liable a supervisor must have the 'purpose' of engaging in unconstitutional discrimination." *Id.* at 321. This purpose requires the supervisor to "undertake actions 'because of, not merely in spite of, the action's adverse effects upon an identifiable group." *Id.* (quoting *Iqbal*, 556 U.S. at 676-77). In his concurring opinion, Judge Loken, joined by Judge Colloton, further argued that the U.S. Supreme Court implicitly overruled prior cases creating supervisor liability in § 1983 cases in *Ashcroft v. Iqbal*. *Ellis*, 742 F.3d at 327 (Loken, J., concurring). Judge Loken quoted the *Iqbal* Court as stating:

> In a § 1983 suit . . . where masters do not answer for the torts of their servants – the term "supervisory liability" is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct…[P]urpose rather than knowledge is required to impose [§ 1983] liability on…an official charged with violations arising from his or her superintendent responsibilities.

*Id.* (quoting *Iqbal*, 555 U.S. at 677) (alteration in original). Thus, "where the intent to discriminate is an element of the constitutional violation . . . the plaintiffs must show that the supervisory official *themselves* acted with an impermissible motive, not merely that they knew of their subordinates' impermissible motives and did not put a stop to their actions." *Id.* (quoting *Dodds v. Richardson*, 614 F.3d 1185, 1210 (10th Cir. 2010) (Tymkovich, J., concurring)).

Here, Plaintiffs' fail to provide anything but threadbare assertions that Defendant Barta failed to properly train staff members within the University football program. (Doc. 133, at ¶¶ 333, 345). Nowhere in the SAC do Plaintiffs make any specific allegations about what kind of training—or lack thereof—the coaching staff received. Indeed, this Court recently dismissed a

failure to train and supervise claim due to the same types of pleading issues present in Plaintiffs' SAC, where the complaint "fail[ed] to document any ways in which [Defendants'] training was deficient." *Meyer v. Herndon*, 419 F.Supp.3d 1109, 1121 (S.D. Iowa 2019). Furthermore, as in *Meyer*, Plaintiffs here fail to "alleged how any such failure in training or supervision would be the 'moving force' behind any injury." *Id.* at 1122.

Critically, Plaintiffs' only specific allegation to support their claim against Defendant Barta relates to the release of the 2018 Diversity Task Force report (Doc. 133, at ¶ 338). But the report was released *after* November 2018, and thus cannot serve as the basis for Plaintiffs' § 1983 claims against Defendant Barta. (*Id.*, at ¶¶ 80-81). Otherwise, Plaintiffs only make vague, unspecific, conclusory assertions that Defendant Barta was "aware of the racially discriminatory and hostile culture and environment through personal knowledge while hearing and seeing racially discriminatory behavior while attending football practices, games, meetings, and events." (*Id.*, at ¶ 337). Plaintiffs provide no further allegations explaining or even indicating what incidents Defendant Barta allegedly witnessed. Finally, Plaintiffs make no allegations of intentional discrimination by Defendant Barta in his handling of these alleged complaints of racial discrimination. *See Ellis*, 742 F.3d at 327 (Loken, J., concurring). For these reasons, Count V fails to plead sufficient facts to support a plausible claim and should be dismissed.

### C.   Defendants Doyle and Barta are entitled to qualified immunity.

Section 1983 is the exclusive vehicle for bringing § 1981 claims against state actors. *See Artis*, 161 F.3d at 1181; *Onyiah*, 5 F.4th at 932–33 (Colloton, J., concurring). Qualified immunity precludes liability under § 1983 when the state actor's conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity analysis requires a two-step inquiry: (1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory

right, and (2) whether that right was clearly established at the time of the defendant's alleged misconduct." *Nord v. Walsh Cty.*, 757 F.3d 734, 738 (8th Cir. 2014). Absent an affirmative answer to both prongs, defendants are immune from suit. *Id*. And this Court may utilize its discretion and decide which prong of the analysis will be addressed first. *Id*.

First considering the clearly-established prong, for a right to be clearly established for purposes of qualified immunity, "existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 137 R. Ct. 548, 551 (2017). The standard "'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 343 (1986)).

Importantly, "the Supreme Court has 'repeatedly' cautioned courts 'not to define clearly established law at a high level of generality.'" *Central Specialties, Inc.v. Large*, 18 F.4th 989, 996 (8th Cir. 2021) (quoting *Mullenix v. Luna*, 557 U.S. 7, 12 (2015)). Tautologies that merely restate general constitutional requirements are insufficient to overcome qualified immunity. Rather, the inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). Recently, the United States Supreme Court reaffirmed its stringent specificity requirement, explaining that a plaintiff "must identify a case that put [the defendant] on notice that his specific conduct was unlawful." *Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 8 (2021) (per curiam). In *Rivas-Villegas*, the Supreme Court reversed the Ninth Circuit's denial of qualified immunity, explaining "[n]either [the plaintiff] nor the Court of Appeals identified any Supreme Court case that addresses facts like the ones at issue here," and in the absence of a materially indistinguishable and precedential case placing the defendant's conduct beyond debate, qualified immunity was required. *Id*. at 8–9; *see also City of Tahlequah v. Bond*, 142 S. Ct. 9, 11–12 (2021) (per curiam) (reversing denial of qualified immunity where Tenth

Circuit failed to identify a sufficiently factually similar precedential case and officers were therefore entitled to qualified immunity).

  1. *Defendant Doyle is entitled to qualified immunity on Plaintiffs' § 1981 claims.*

  Here, Plaintiffs cannot establish a body of case law that is materially indistinguishable and precedential placing Defendant Doyle's conduct beyond debate. Section 1981 "does not provide a general cause of action for race discrimination." *Gregory v. Dillard's, Inc.*, 565 F.3d 464, 468 (8th Cir. 2009) (en banc). Rather, § 1981 "plaintiffs must identify injuries flowing from a racially motivated breach of their own contractual relationship." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 480 (2006); *see also Comcast Corp. v. Nat'l Ass'n. of African American-owned Media*, 140 S. Ct. 1009, 1019 (2020) ("To prevail, a plaintiff must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected [contractual] right."). A defendant who has no authority over the enforcement of a plaintiff's contract cannot be held liable under § 1981. *See Altson v. Spiegel*, 988 F.3d 564, 572–73 (1st Cir. 2021) (explaining absent impairment of the contract *by the defendant*, § 1981 claims should be dismissed); *Allen v. Denver Pub. Sch. Bd.*, 928 F.2d 978, 983 (10th Cir. 1991) (explaining a § 1981 plaintiff must demonstrate "some affirmative link to causally connect the actor with the discriminatory action" and a "claim seeking personal liability under § 1981 must be predicated on the actor's personal involvement"). Finally, to sustain a disparate treatment claim under § 1981, Plaintiffs must show they were "'similarly situated in all relevant respects' to a non-member of the protected class who was more favorably treated." *Thomas v. St. Luke's Health Sys., Inc.*, 869 F. Supp. 1413, 1434 (N.D. Iowa 1994) (quoting *Lanear v. Safeway Grocery*, 843 F.2d 298, 300 (8th Cir. 1988)).

  Even accepting Plaintiffs' allegations as true, no existing precedent would have informed Defendant Doyle that his alleged actions would violate § 1981. Instead, the existing precedent holds that § 1981 would not have been violated here unless Defendant Doyle personally targeted

players with intentional racial discrimination that resulted in a breach of their contracts with the University. But Plaintiffs make no allegations that Defendant Doyle ever had the authority to make or enforce their contracts with the University, let alone that any of his actions actually interfered with any of the Plaintiffs' contractual rights.

2. *Defendant Doyle is entitled to qualified immunity on Plaintiffs' § 1983 equal protection claims.*

To sustain an equal protection claim under § 1983, Plaintiffs must show that each individual Defendant treated Plaintiffs differently than similarly situated comparators and did so with discriminatory intent and/or purpose. *See* Part III.B.2. Generalized claims unspecified to the individual defendant at hand is insufficient. *Id.* Further, § 1983 is not "a general civility code for the workplace . . . and in numerous cases [the Eighth Circuit has] concluded that some amount of race-related insults or derogatory comments does not create an actionable hostile work environment under either Title VII or § 1983." *Ellis*, 742 F.3d at 328 (Loken, J., concurring).

In *Resendez v. Prance*, a college coach and two university officials were entitled to qualified immunity because plaintiff had not cited any analogous cases to show that a clearly established right exists for a college baseball player who is a member of a protected class to not be suspended from the team because of a verbal altercation with the coach. No. 3:16-CV-862-JVB-MGG, 2018 WL 3275615, at *5 (N.D. Ind. Jan. 26, 2018). There, the absence of clearly established precedent applicable to collegiate athletics resulted in qualified immunity for the coach who suspended a player and called him a "Mexican with a beard". *Id.* at *5–6.

Again, Plaintiffs' claims under Count III largely rely on vague, unspecified allegations, most of which are disconnected from Defendant Doyle. *Id.* No case law establishes the notion that an equal protection claim can be based upon discriminatory treatment of another person. Thus, absent a showing that Defendant Doyle individually subjected Plaintiffs Mends, Simon, or Foy to disparate treatment with discriminatory intent, existing § 1983 precedent would not have informed

Defendants that their actions could constitute a § 1983 equal protection claim against them. This is particularly salient regarding Plaintiff Mends' claims, as he never makes any specific allegations against Defendant Doyle. (Dkt. 133, at ¶¶ 153-66). Put simply, the allegations put forward by these Plaintiffs do not show, under the existing precedent, that Defendant Doyle's alleged actions would have violated § 1983. As such, Defendant Doyle is entitled to qualified immunity on Plaintiffs' § 1983 equal protection claims.

> 3. *Defendant Barta is entitled to qualified immunity on Plaintiffs' § 1983 failure to train and supervise claim.*

Plaintiffs Mends, Simon, and Foy have also asserted a § 1983 failure to train and supervise claim against Defendant Barta. To sustain such a claim, Plaintiffs must demonstrate that Defendant Barta acted with discriminatory purpose in his alleged failure to respond to complaints of racial discrimination within the Program. *See Ellis*, 742 F.3d at 321; *Iqbal*, 556 U.S. at 676. But as Judge Loken's concurring opinion in *Ellis*, joined by Judge Colloton, demonstrates, there is considerable doubt in this Circuit whether supervisory claims under § 1983 still exist at all. *See Ellis*, 742 F.3d at 327 (Loken, J. concurring). After *Ellis*, there was nothing in precedent to show that Defendant Barta's supervisory liability was beyond dispute. For this reason, Defendant Barta is entitled to qualified immunity on Plaintiffs' § 1983 failure to train and supervise claims.

## IV.     CONCLUSION

For these reasons, Plaintiffs' entire Second Amended Complaint must be dismissed for failing to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Respectfully submitted,

**THOMAS J. MILLER**
Attorney General of Iowa

*/s/ Jeffrey S. Thompson*
JEFFREY S. THOMPSON
Solicitor General

*/s/ Jeffrey C. Peterzalek*
JEFFREY C. PETERZALEK

*/s/ Christopher J. Deist*
CHRISTOPHER J. DEIST
Assistant Attorneys General
Department of Justice-Special Litigation
Hoover State Office Building
Des Moines, Iowa 50319
Phone : (515) 281-4419/4213
jeffrey.thompson@ag.iowa.gov
jeffrey.peterzalek@ag.iowa.gov
christopher.deist@ag.iowa.gov
ATTORNEYS FOR DEFENDANTS

---

**PROOF OF SERVICE**

The undersigned certifies that the foregoing instrument was served upon each of the persons identified as receiving a copy by delivery in the following manner on September 2, 2022:

☐ U.S. Mail                 ☐ FAX
☐ Hand Delivery             ☐ Overnight Courier
☐ Federal Express           ☐ Other
☒ CM/ECF

Signature: */s/ Audra Jobst*

---

23