**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

| | | |
|---|---|---|
| AKRUM WADLEY, *et al.*, | ) | Case No. 4:20-cv-00366-SMR-HCA |
| | ) | |
| Plaintiffs | ) | |
| | ) | **PLAINTIFFS' RESISTANCE TO** |
| v. | ) | **(ECF NO. 150) DEFENDANTS'** |
| | ) | **MOTION TO STAY** |
| UNIVERSITY OF IOWA, *et al.*, | ) | |
| | ) | **(ORAL ARGUMENT REQUESTED)** |
| Defendants. | ) | |

## Table of Contents

Introduction ..................................................................................................................................... 2

Argument ......................................................................................................................................... 4

    I.    Defendants' Qualified Immunity Arguments Fail at the Rule 12 Motion Stage. ...................... 4

        A.  *Resendez v. Prance* shows that it was clearly established that intentional race
           discrimination is illegal. ............................................................................................... 4

    II.   Defendants Will Be Deposed Regardless of the Court's Pending Rulings regarding Individual
       Liability under the Qualified Immunity Doctrine. .................................................................. 5

        A.  Defense Counsel Agrees the Sworn Testimony at Issue is Discoverable. ................... 6
        B.  The Scope of Discovery Will Not Change Following the Court's Pending Rulings
           regarding Individual Liability under the Qualified Immunity Doctrine. ...................... 7

    III.  Defendants Intend to Prejudice Plaintiffs ............................................................................ 14

        A.  *Mills v. State* is inapposite. ....................................................................................... 15
        B.  *Crawford-El v. Britton* is inapposite. ....................................................................... 18
        C.  The Merits of Motions to Stay are Highly Case Specific. ......................................... 19

Conclusion .................................................................................................................................... 20

## Introduction

Kirk Ferentz's legacy is, and will forever remain, "the Iowa Way." Under the guise of "discipline," "accountability," and "conformity," Kirk Ferentz created a racially hostile football program and then obstinately refused to take prompt, effective, remedial action to account for his racially biased leadership failures. Brian Ferentz and Seth Wallace are inextricably intertwined with Kirk Ferentz's racially biased conduct and decision-making and the Hawkeye Football Program's racially hostile education environment for Black student athletes spanning years. What Iowa coaches referred to as "doing things the right way," was simply code for doing things "the **white** way."

The Amended Complaint in this case was filed on January 13, 2021. The Court subsequently allowed Plaintiffs to file a Second Amended Complaint on August 19, 2022. (**ECF No. 133**). Defendants have individually and collectively engaged in discovery obstruction throughout the lifecycle of this case. *See, e.g., St. Paul Reins. Co., Ltd. v. Commercial Fin. Corp.*, 198 F.R.D. 508 (N.D. Iowa 2000) (describing obstructionist conduct in discovery). Following the recent barrage of FRCP 12(b) and FRCP 56 filings, Defendants have now filed the instant Motion to Stay Litigation (**ECF No. 150**) in their latest Hail Mary attempt to avoid prosecution of this case.

Defendants Kirk Ferentz and Brian Ferentz were noticed for depositions on September 17, 2021, for October 19 and 20, 2021 depositions. (**Exhibit 1, Plaintiffs' Notices of Deposition (Sept. 17, 2021)**). Seth Wallace's deposition would have naturally followed thereafter. Defendants filed a Motion to Quash citing the inconvenience of providing sworn testimony during the Fall 2021 Hawkeye Football schedule. (**ECF No. 51**).[1] On October 7, 2022, the Motion to Quash depositions was granted by the Court (**ECF**

---

[1] Individual defendants and material fact witnesses that work for small businesses, corporations, educational institutions, and federal/state/local governments are deposed in myriad cases involving all areas of the law every year. Big Ten Football, its participants, and their schedules are not more important than the work or schedules of any other individual defendant, entity, or material fact witness. Litigation is an inconvenience to all parties, lawyers, judges, and their respective staff, but being discriminated against by one's educational institution and coaches is the gravest inconvenience (trauma) of all.

No. 57). After avoiding sworn testimony under oath in 2021, Defendants have repeatedly avoided document production since then. On January 27 and 28, 2022, Plaintiffs were forced to file two motions to compel production of documents. (**ECF Nos. 79, 80**). One of the motions sought investigative documents and personnel reports prepared by the University of Iowa's contracted, third-party investigator -- the Husch Blackwell Law Firm. The motions were granted on June 24, 2022. **(ECF Nos. 116, 117)**. Plaintiffs did not receive the Husch Blackwell personnel reports for Kirk Ferentz, Brian Ferentz, Seth Wallace, or Chris Doyle until July 6, 2022.

Since this case was initiated almost two years ago, Plaintiffs have diligently sought written discovery, sworn testimony, a multitude of Rule 37 conferrals, and court intervention as necessary. Plaintiffs have also diligently complied with their obligations in responding to discovery propounded by Defendants, including each Plaintiff sitting for an individual deposition. In contrast, Defendants have gone above and beyond to ensure a one-sided discovery litigation strategy, in which they take discovery from Plaintiffs but do everything possible to avoid providing any discovery to Plaintiffs.[2] This strategy has culminated in the filing of a half dozen dispositive motions at the outset of the 2022 football season.

Defendants now argue they are "immune from discovery" despite being material fact witnesses and having already engaged in extensive discovery of the Plaintiffs. Defendants' pattern and practice of discovery obstruction continues to prejudice Plaintiffs.

Accordingly, Defendants' Motion to Stay should be summarily denied.

---

[2] In fact, despite the Court's explicit instruction and Text Order **(ECF No. 163)** to tentatively set depositions for the week of October 10, and despite Defendants' counsel's representation to the Court at the September 22, 2022 status conference that Kirk Ferentz and Brian Ferentz were available for depositions, respectively, Defendants' counsel objected to the tentative scheduling of those depositions in the Parties' Rule 37 meet and confer held yesterday, September 26, 2022. **(Exhibit 2, Email from Roger Stone to Plaintiffs' Counsel, Sept. 27, 2022 at 12:04PM CST)**. Pursuant to the Court's Text Order, Plaintiffs have tentatively noticed those depositions over the Defendants' objections. **(Exhibit 3, Plaintiffs' Notices of Depositions (Sept. 26, 2022))**.

## Argument

### I.    Defendants' Qualified Immunity Arguments Fail at the Rule 12 Motion Stage.

As an initial matter, Defendants' efforts to avoid liability on the face of the Second Amended Complaint will fail.[3] Defendants rely heavily on a misguided argument that it was not clearly established that their actions as alleged by Plaintiffs violated Plaintiffs' constitutional rights. The argument must fail given that, at the Rule 12 stage, Plaintiffs' allegations must be taken as true. One need only look to footnote 4 of Defendants' brief, and the case cited therein, to see that Defendants' "not clearly established" argument must fail.  **(ECF No. 150-1, p. 9).**

#### A.    *Resendez v. Prance* shows that it was clearly established that intentional race discrimination is illegal.

In each of the motions to dismiss brought by Defendants Kirk Ferentz, Brian Ferentz, and Seth Wallace, Defendants cited *Resendez v. Prance*, No. 3:16-CV-862-JVB-MGG, 2018 WL 3275615 (N.D. Ind. Jan. 26, 2018) as support for their argument that it was *not* clearly established that Defendants' intentional racially discriminatory conduct alleged by Plaintiffs in the Second Amended Complaint was illegal. **(ECF Nos. 136-1, pp. 15-16, 137-1, pp. 7-8 & 139-1, p. 13)**.  In that opinion, the Magistrate Judge recommended that college athletic coach defendants were entitled to qualified immunity on intentional race discrimination claims brought by a student athlete. What Defendants failed to realize was that the opinion they heavily relied on in all three dispositive motions was a Magistrate Judge's Recommendation and Report that recommended granting qualified immunity to the defendants that was ultimately *rejected by the District Court judge*. See *Resendez v. Prance*, No. 3:16-CV-862-JVB-MGG, 2018 WL 1531788 (March 29, 2018). The reason for that rejection was clear and applies equally to this case: "it has long been

---

[3] This legal argument will be more thoroughly discussed in Plaintiffs' Resistance to Defendants' Motions to Dismiss.

well-established that the government may not intentionally discriminate on the basis of race." *Id.* (citing multiple cases).

Here, the Defendants seeking to stay discovery are each alleged to have intentionally discriminated on the basis of race in causing and maintaining the racially hostile environment that this Court has already found was plausibly alleged by Plaintiffs.  **(ECF No. 31, pp. 10-15)**. The argument that any of these college-educated coaches are deserving of qualified immunity because they were unaware that racial harassment was unlawful is ludicrous. If Plaintiffs can prove these race discrimination claims against Defendants, "then qualified immunity will not shield [Defendants] from liability for that misconduct." *Resendez*, 2018 WL 1531788 at *4. Indeed, it is ironic that the Defendants accused of fostering an unabetted racially hostile education environment over a span of several years are now defending these claims by insisting they had no idea that Black student athletes were protected from race discrimination in education. "[Because] the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." *Crawford-El*, 523 U.S. 574, 591 (1998); *citing Harlow v. Fitzgerald*, 457 U.S. 800, 818–19 (1982) (internal citations omitted).

Thus, Defendants' Motions to Dismiss based on qualified immunity must be denied. To allow Defendants to further delay justice through a stay of discovery pending the inevitable denial of those motions would be a grave injustice.

## II.     Defendants Will Be Deposed Regardless of the Court's Pending Rulings regarding Individual Liability under the Qualified Immunity Doctrine.

Kirk Ferentz, Brian Ferentz, and Seth Wallace are cowering. They filed their Motion to Stay even though they are current, long-term coaches of the University of Iowa with discoverable, non-privileged knowledge germane to both the claims and defenses of all Plaintiffs and all Defendants. FRCP 26(b)(1). This includes Plaintiffs' claims of a racially hostile environment within the Iowa football program that

this Court has made clear will go forward in discovery (and which has, in fact, been proceeding through discovery). (**ECF No. 31, pp. 10-15**).[4] Not surprisingly, all three individuals seeking to avoid deposition are material fact witnesses in this case regardless of whether they will ultimately prevail in their respective qualified immunity arguments pending before the Court. (**ECF Nos. 128, 136, 137 & 139**). Each Defendant has knowledge that will evidence the facts related to the conduct of various individuals, including themselves, and facts relating to intent and motive related to the claims and defenses against the University of Iowa and the Board of Regents. FRE 404(b) (evidence admissible [and discoverable] to prove motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident). Regardless of whether these three defendants are individually liable as public employees, each (as employee and agent of the University of Iowa) was acting at all relevant times within the scope of their employment. The instant Motion to Stay underscores the desperation of Defendants to avoid the judicial process and should be denied. The discoverability of the sworn testimony of these individuals is inarguable, and that testimony is inevitable.

### A. Defense Counsel Agrees the Sworn Testimony at Issue is Discoverable.

According to opposing counsel, "Defendants K. Ferentz, B. Ferentz, and Seth Wallace, [] are 3 of the most important and top coaches at Iowa[]" (**Exhibit 4, Email from Roger Stone to The Honorable Court, Sept. 9, 2022 at 1:24:50PM CST**). Kirk Ferentz has participated as the primary corporate representative at Plaintiffs' depositions. In opposing counsel's representation to the Court, Kirk Ferentz will also serve as the FRCP 30(b)(6) corporate representative on most (if not all) topics related to the Hawkeye Football Program. Kirk Ferentz has been identified as the likely client representative at trial for the University of Iowa and the Board of Regents. *Id.* Specifically, opposing counsel represented

---

[4] Even if Brian Ferentz's pending Motion to Dismiss were to be granted, he will remain in the case as a Defendant.

that Kirk Ferentz "is the person with the best comprehensive knowledge about the events within the program. He would likely be the Rule 30(b)(6) designee on most topics related to the Iowa Football program, and he would be the key witness for the defense[]". Accordingly, Kirk Ferentz will provide at least two full days of depositions as an individual fact witness and as corporate representative in this case by admission of the defense. Therefore, the Motion to Stay should be summarily denied.

### B. The Scope of Discovery Will Not Change Following the Court's Pending Rulings regarding Individual Liability under the Qualified Immunity Doctrine.

By their own admission, Defendants recognize the testimony of the three witnesses will fall squarely within the scope of discovery that has yet to be limited by court order:

> [...] the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

FRCP 26(b)(1) (Scope of Discovery). These representations by counsel for the three elusive Defendants corroborate what Plaintiffs will prove at trial which can be summarized with admissions, statements against interest, and admissions of party opponents evidencing the three Defendants' knowledge and notice of the Black student-athlete civil rights they violated.

In 2018, the University of Iowa established an Athletics Diversity Task Force (hereinafter "Task Force") to analyze Black student athlete attrition rates with a particular focus on the Hawkeye Football Program (hereinafter "Program"). **(Exhibit 5, University of Iowa Athletics Diversity Task Force Report (2018), STATE 01-09)**; *see also* https://hawkeyesports.com/news/2019/04/04/general-iowa-athletics-creates-diversity-task-force/. In 2019, a University of Iowa Athletic Diversity Task Force Report was published and presented to Kirk Ferentz and Gary Barta. See https://bleacherreport.com/articles/2900913-report-iowa-

knew-of-racial-issues-inside-football-program-as-early-as-2019. The University of Iowa authored

the Task Force Report, thus its findings constitute admissions, statements against interest, and an

admissible business record. In 2020, Athletic Director Gary Barta admitted the Defendants were

on notice of the racially hostile education environment, the race discrimination allegations, and

that Black student athletes have clearly established statutory and constitutional rights:

> I'm concerned about the recent comments being voiced by several
> former Hawkeye football players on social media. It is important
> that we reach out and listen to both current and former student-
> athletes. We must be willing to improve and change. […]
>
> In 2018 we established the UI Athletic Diversity Task force to
> specifically address African American male student-athletes
> graduation rates. As part of the process, the task force interviewed
> current and former student-athletes to better understand our
> department's climate towards diversity and the experiences of
> student-athletes. **It was evident at that time we needed to improve
> as a department. While we have taken several steps to address
> these issues, there is more to do**.
>
> Ultimately, our success will be defined by our actions. Our greatest
> victory won't be found on a box score but a willingness to speak out
> against racism, and to make sure every student athlete, coach, and
> staff member feel safe, supported, and that they have a voice that is
> empowered.

**(Exhibit 6, Media Statements to Press (June 6, 2020), STATE 175548-550)** (emphasis added).

According to the University of Iowa Hawkeye Football website, Kirk Ferentz, Brian Ferentz, and

Seth Wallace all worked for the Program well before the internal report was disseminated,

evaluated, and reacted to internally and publicly.[5] Naturally, all three Defendants were personally

involved in creating and sustaining the environment that resulted in undisputed disproportionate

---

[5]   See University of Iowa Hawkeye Football Coaching Profiles available at:
https://hawkeyesports.com/sports/football/roster/season/2022-23/coach/kirk-ferentz/;
https://hawkeyesports.com/sports/football/roster/season/2022-23/coach/brian-ferentz/;
https://hawkeyesports.com/sports/football/roster/season/2022-23/coach/seth-wallace/.

Black student athlete attrition rates and reports of anti-black, racially hostile climate in the football Program.

The Defendants' knowledge of racial hostility in the context of the rights of Black student athletes was made more even more clear when the University of Iowa contracted Husch Blackwell Law Firm to investigate and publish additional findings regarding the racially hostile educational environment. **(Exhibit 7, Husch Blackwell External Report (July 2020), STATE 15-42).**

### i.    Kirk Ferentz admits he is a material fact witness.

Defendant Kirk Ferentz has publicly admitted he is responsible for the Program, its culture, and, accordingly, the years of unabetted racial hostility under his leadership:

> *I am a white football coach. Teaching is what I do best. But it is also important to know when to be the student.* […]
>
> *These are painful times. As a leader you can learn a lot by listening but then you must take action. Finally, I told the team that change begins with us, but truly change begins with me.*

**(Exhibit 6, Media Statements to Press (June 6, 2020)) (Exhibit 8, Hawk Central Article)**. Kirk Ferentz does not equivocate in his responsibility over the Program. He admits he accepts blame for any football player who had negative experiences at Iowa in saying

> *"I'm responsible for anything that happens here...That's my accountability, that's my responsibility, I'm the head coach. So anything that happens is[sic] a failure. That's on my desk. That's my issue to deal with. I can't do anything about what's happened. What I can do is try to do a better job moving forward.""*

*See*  https://www.espn.com/college-football/story/_/id/29304234/iowa-kirk-ferentz-admits-blind-spot-black-players-issues-vows-improve-environment.  Why would Kirk Ferentz make these admissions if he were not a material fact witness? The Motion to Stay must be summarily denied.

### ii.    Brian Ferentz admits he is a material fact witness.

Brian Ferentz publicly apologized for creating a racially hostile educational and football

environment for Black student-athletes at least two years after he was put on notice of racial disparities in the Program.

> *"For any player who had a negative experience in our program. For any player who did not feel valued or respected on a human level. I am deeply sorry, and I offer a sincere apology. My personal goal as a coach is to have a positive impact on young people. And it's painful to learn I may have fallen short in that department, but it's also a tremendous opportunity to learn and grow"*

Several players accused Brian Ferentz of being a "problem" and a "racist" and that change in the culture of the program, in part, needed to start with his termination. Defendant Brian Ferentz further stated:

> *"I'd share with you again not the details but a conversation with a former player and in our conversation I appreciate his honesty and candor and you know he told me coach sometimes you're just abrasive and your comments could be flipping and I didn't know how to take that all the time. The basis for any relationship has to be empathy right so when I hear something like that it's disappointing. I'm disappointing in myself that I couldn't be more empathetic that I couldn't understand how I was being perceived by that player"[6]*

**(Exhibit 9, KWQC Article) (Exhibit 10, The Daily Iowan Article) (Exhibit 11, The Athletic Article)**. Why would Brian Ferentz make these admissions and apologies if he were not a material fact witness? The Motion to Stay must be denied.

Notably, Brian Ferentz's apologies attempt to frame victim perceptions as the problem instead of his own actions. Shifting blame is a common practice of perpetrators of discrimination/racism and is known as racial gaslighting.[7] It is hard to believe that Brian Ferentz doesn't understand the power of words like "Black dumbass," "Monkey," "Bitch," or "Pussy" being directed at young Black student

---

[6] Donia, Joey, *Brian Ferentz apologizes to Iowa football players following accusations of racial disparity*, (October 9, 2020 at 10:37 AM CST) available at https://www.kwqc.com/2020/10/09/brian-ferentz-apologizes-to-iowa-football-players-following-accusations-of-racial-disparity/.

[7] Crawford-Roberts, Ann, et al., *George Floyd's Autopsy and the Structural Gaslighting of America*, (June 6, 2020) available at https://blogs.scientificamerican.com/voices/george-floyds-autopsy-and-the-structural-gaslighting-of-america/.

athletes coming from a grown, white man with total power over their educational and athletic future.
Perhaps his inability to comprehend or understand the power he has is because he was hired and retained
due to nepotism, not qualification, productivity, or ability.[8] His white privilege makes him comfortable
enough to publicly admit he is not qualified for his current job as offensive coordinator and quarterback
coach.[9] His lack of talent is as apparent as his lack of insight when considering the lived experience of
those he has traumatized and in light of University of Iowa personnel documents reflecting his flaws.

Plaintiff Jonathan Parker testified extensively to an incident with Brian Ferentz. The racially
violent outburst was captured on video by the University of Iowa and will be played at trial. In the words
of Jonathan Parker:

```
 8         A.   I recall taking my helmet off after he
 9    called me a black dumbass.  He constantly -- as I
10    was walking away -- you can see -- as you can see in
11    the video, as I was walking away from Brian Ferentz,
12    he still was attacking me, calling me a black
13    dumbass, "fuck you," and every other vulgar word you
14    may be able to think of.  He kept attacking me.  And
15    I went and stood on the sideline.  And maybe he
16    didn't like me standing on the sideline, and he came
17    and attacked me some more and kicked me out,
18    completely out of practice.
```

---

[8] *Brian Ferentz says dad, not AD, hired him* (Mar. 7, 2012 at 11:01PM CT) available at
https://www.galesburg.com/story/sports/college/2012/03/08/brian-ferentz-says-dad-not/44965132007/
(Brian Ferentz admits "he accepted a job offer from his father, contradicting a claim by the athletics director
that head coach Kirk Ferentz had stepped away from the hiring process to comply with the university's
nepotism policy.").

[9] Morehouse, Marc, *Iowa parts ways with a pair of assistant coaches*, (Jan. 11, 2017, 5:54PM CT,
Updated Jan. 12, 2017 at 11:59AM) https://www.thegazette.com/sports/iowa-parts-ways-with-a-pair-of-
assistant-coaches/ ("I would have almost zero comfort coaching quarterbacks at this moment as I stand in
front of you,' [Brian Ferentz] said. 'I've never done it. I've been around people who did it and I thought did
it very well ... Whatever you end up doing, just like when I coached the offensive line, you seek out good
people and you seek out their counsel and you learn; and we're all students.").

(Deposition of Jonathan Parker, p. 61:8-18 (Mar. 29, 2022)). Just like his son, Kirk Ferentz approached this incident that he witnessed in-person by blaming Jonathan Parker. In a meeting with Jonathan Parker, Kirk Ferentz didn't offer sympathy or apologies. He cut Jonathan Parker off from speaking about what happened. Instead, he actively blamed Jonathan Parker for hurting Brian Ferentz's feelings and triggering him. In so doing, Kirk Ferentz not only excused his son's racist tirade he justified it. Now, Defendants have the caucacity to defend this case by claiming they did not know race discrimination was unlawful.[10]

A cursory review of Brian Ferentz's play-calling since he has been Iowa's offensive coordinator indicates he lacks any real football knowledge, awareness, or IQ.[11] Do Defendants seriously believe Brian Ferentz isn't aware that calling a Black student athlete a "black dumbass" in a fieldhouse full of coaches and teammates was lawful?

Brian Ferentz has an anger management problem to be sure. On October 28, 2017, Brian Ferentz threw an unprofessional and physically violent tantrum—a "full blown rage." See https://thecomeback.com/ncaa/kirk-ferentz-brian-ferentz-swearing-official.html. He got a "talking to" by Gary Barta and his dad. *Id.* Brian was disciplined ... a whole year later.



**The University of Iowa**
Office of Equal Opportunity and Diversity
**CONFIDENTIAL REPORT OF INFORMAL* ANTI-HARASSMENT COMPLAINT RESOLUTION**
Please complete this form and submit it to the Office of Equal Opportunity and Diversity, 202 Jessup Hall,
As soon as reasonably possible after resolution of the complaint
Due to confidentiality considerations, please do not e-mail these forms.

| Date of Incident 10/28/2017 | | Date complaint received 10/29/2018 | |
| --- | --- | --- | --- |
| College/Organizational Unit Athletics | Department Football | Today's Date 09/06/2018 | |
| Name of Individual Completing Report Suzanne J. Hilleman | Title Senior HR Leader | Campus Telephone # 5-9957 | |

(STATE 1434-35, Brian Ferentz Personnel Document, Designated Confidential by Defendants).

---

[10] See www.dictionary.com ([caw-cas-i-tee] Caucacity is a slang term used to make fun of behaviors perceived to be stereotypically white or to call out what's seen to be a particularly bold instance of white privilege or racism.); see also www.urbandictionary.com (Caucacity is the audacity of white people. Meaning, the willingness to take bold risks only white people feel safe doing.).

[11] Keppen, Jacob, *A black and white, data-based look at the Iowa Hawkeyes' offense under Brian Ferentz*, (Sept. 15, 2022 at 6:30AM CT) available at https://hawkeyeswire.usatoday.com/lists/a-black-and-white-data-based-look-at-the-iowa-hawkeyes-offense-under-brian-ferentz/.

Brian Ferentz received a Founded, Written Reprimand for Verbal Harassment in his personnel file signed by Suzanne Hilleman, University of Iowa Associate Athletics Director for Human Resources, for "yelling obscenities [at game officials] and pounding on a wall" (STATE 1434-35, Designated Confidential by Defendants). Brian Ferentz is not immune from discovery but apparently the University of Iowa has determined he is immune from experiencing the consequences of his own racist actions. Brian Ferentz was disciplined on Office of Equal Opportunity and Diversity letterhead for verbally harassing a press box replay official, but he was not disciplined for any of the racial hostility and violence giving rise to this lawsuit. He has however received considerable pay raises. Plaintiffs (and the public) are owed an explanation under oath as to why. The Motion to Stay must be summarily denied.

### iii.    Seth Wallace admits he is a material fact witness.

Seth Wallace publicly took responsibility for how his behavior and coaching made Black student-athletes feel. Defendant Seth Wallace stated as follows:

> *"It was eye opening to see the sadness, the frustration," Wallace said. "It was a good opportunity to grow and a good opportunity to learn. As coaches we take responsibility with the way any of our players feel good or bad... It was an opportunity to learn, but it was also an opportunity to rebuild a relationship."[12]*

**(Exhibit 10, The Daily Iowan Article)**. Just like Brian Ferentz, Seth Wallace attempted to shift the narrative from his own actions to the victim's perceptions. Why would Seth Wallace make these admissions and apologies if he were not a material fact witness? The Motion to Stay must be summarily denied.

---

[12]Read, Robert, *Brian Ferentz, Seth Wallace respond publicly for first time to allegations against them, Hawkeye football program* (October 8, 2020) available at https://dailyiowan.com/2020/10/08/brian-ferentz-seth-wallace-respond-publicly-for-first-time-to-allegations-against-them-hawkeye-football-program/.

### iv. **Kirk Ferentz, Brian Ferentz, and Seth Wallace are admittedly material fact witnesses who have acknowledged their role in the discrimination of Black student-athletes and the creation of the well-documented racially hostile environment that persisted at Iowa for over a decade.**

In sum, Kirk Ferentz, Brian Ferentz, and Seth Wallace will be deposed soon regardless of whether they will ultimately be exposed to individual liability at trial.  The difference is a set of three jury instructions.[13] Given all the public apologies, acknowledgement of racial trauma caused by their actions, promises "to learn and do better", and the ownership over the program and acceptance of responsibility, it is intellectually dishonest to suggest that these three coaches should not be subject to depositions in the coming weeks. "[I]t is not unfair to hold liable the official who knows or should know he is acting outside the law[.]" *Butz v. Economou*, 438 U.S. 478, 506 (1978). The Motion to Stay must be summarily denied.

## III.   Defendants Intend to Prejudice Plaintiffs

Defendants' multifarious briefs about qualified immunity were filed as a smoke screen to distract the Court and Plaintiffs' counsel, divert resources, and prevent the efficient administration of this case. The "top three" coaches at Iowa are defending this case, not on the merits, but by insisting they are too busy and more important than the rights of the Plaintiffs, the Court's docket, and any other person or entity to ever have been sued in a federal district court. This Court has previously considered motions to stay litigation and denied the same after looking at the movant's conduct in a proceeding, weighing the costs and benefits of judicial economy, and in considering the parties' relative access to information. All these reasons support denying the Motion to Stay in this civil rights case.

---

[13] It is possible the Defendants plan to recant public admissions and deny the significance of their roles as "3 of the most important and top coaches at Iowa[]". They may plan to testify differently depending on whether they might find themselves individually liable; however, this does not support the granting of the Motion to Stay.

Here, Defendants argue that the Court should grant the Motion to Stay, in part, due to the Court's inherent authority to manage its own docket. Ironically, it is Defendants' refusal to participate in discovery and dilatory conferral avoidances that have prejudiced Plaintiffs and burdened the Court with a continued March 2023 trial date. **(ECF No. 152)**. Indeed, the Court has been put in the difficult position of having to set a trial date while Defendants continually prolong discovery (and now try to stay it indefinitely). As discussed above, the Defendants themselves admit the three coaches have discoverable knowledge (that will not change regardless of individual liability) that is probative of both the claims and defenses. The scope of discovery will not be affected by any ruling on qualified immunity because the University of Iowa and Board of Regents must still defend the civil rights claims relying, in part, on sworn testimony of each of the individual coaches as employees and agents. Lastly, the Court has tried to keep the parties on track with discovery. Granting a legally unjustified motion to stay under these circumstances will permit Defendants to halt their already slow supplementation and production of written discovery and the scheduling of depositions.[14] Defendants' purposeful delays threaten to push trial into (or after) the Fall *2023* football season.

**A.** ***Mills v. State* is inapposite.**

Defendants rely on *Mills v. State of Iowa, et al.* in support of their motion. *Mills v. Iowa,* No. 3:10-CV-112-RP-RAW, 2012 WL 12906157, at *1 (S.D. Iowa Mar. 1, 2012). *Mills* is inapposite to Defendants' position, but actually supports granting the Rule 56(d) motions filed by Plaintiffs in this case and supports continuing the deadline for Plaintiffs to respond to the premature

---

[14] Plaintiffs are still waiting for documents from Defendants including but not limited to Kirk Ferentz's handwritten notes. As discussed with the Court on the September 22, 2022 Status Conference, Plaintiffs may be forced to file yet another Motion to Compel. On September 26, 2022, Plaintiffs finally received some text messages and emails that should have been produced well over a year ago. Plaintiffs deserve the opportunity to thoroughly review these documents and depose the Defendants over the same.

pending summary judgment motions. *Id.* at *3. (acknowledging good cause to provide plaintiff an over two-month extension to respond to two summary judgment motions while waiting on written discovery and a "significant number of depositions"). Marcus Mills was general counsel for the University of Iowa. *Id.* at *1. Mills was a key decisionmaker in the University of Iowa's mishandling of a sexual misconduct complaint against Hawkeye Football players for which the university ultimately received considerable public backlash.[15] *Id.* In short, as the top attorney for the university, Mills fumbled the institutional response and when he was fired for the same, he filed a lawsuit alleging vague due process claims. *Id.* The defendants, like in this case, engaged in a pattern of obstructionist discovery practices and then filed dispositive motions prior to the close of discovery. *Id.* at *2.  Like Plaintiffs here, Mills filed a Rule 56(d) motion. *Id.* In its analysis the court correctly noted as follows:

> ""As a general rule, summary judgment is proper 'only after the nonmovant has had adequate time for discovery.'" *Iverson v. Johnson Gas Appliance Co.*, 172 F.3d 524, 530 (8th Cir. 1999) (quoting *In re TMJ Litigation*, 113 F.3d 1484, 1490 (8th Cir. 1997)); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). Rule 56(d)[] gives a party who does not believe he has had an adequate opportunity to conduct discovery an opportunity to avoid being thrown out of court by a premature motion for summary judgment. *Id.*; *see United States ex rel. Bernard v. Casino Magic Corp.*, 293 F.3d 419, 426 (8th Cir. 2002) (citing 10B C. Wright, A. Miller & N. Kane, *Federal Practice and Procedure: Civil 3d* § 2740 (1998) (hereinafter "Wright & Miller"))."

*Id.* at *2. While Judge Walters denied Mills's 56(d) motion, that decision was based heavily on the unique position Mills had as a key decision-maker involved with the university's failed response to the student-athlete sexual misconduct complaint. Mills was not denied rights or thrown

---

[15] In an uncharacteristic showing of accountability, the University of Iowa fired two high-level administrators for discriminating and retaliating against a sexual assault survivor. See https://www.chronicle.com/article/u-of-iowa-fires-2-vice-presidents-over-handling-of-rape-accusations/.

under the bus after-the-fact, rather, he was the person "call[ing] every shot". *Id*. at \*3. Unlike Mills, the Plaintiffs in this case are actual victims of discrimination. They were harmed by the **decisions of Defendants** and had no control over the creation of the racially hostile education environment. Rather, they were expected to perform as students and athletes under the leadership and direction of racially biased coaches and staff, including the three defendants at issue here, who actively refused to remedy known racial hostility and race-based barriers to success within the Program.

Unlike Mills, the Plaintiffs did not have a seat at the table in deciding how to respond to the university's Black student athlete attrition rates, the University's 2018 Task Force Report, or the Husch Blackwell External Report. Unlike Mills, the Plaintiffs did not have a seat at the table in deciding that Chris Doyle would be the only coach to receive any "consequence"—if you can call 15 months' salary amounting to two payments of \$556,249.50 and 15 months of health benefits a consequence. **(Exhibit 12, Christopher Doyle Separation Agreement)**. *See also* https://www.espn.com/college-football/story/_/id/29314003/iowa-hawkeyes-part-football-strength-coach-chris-doyle-amid-claims-biased-behavior ("...Iowa athletic director Gary Barta decided last week that separating from Doyle would be the "thoughtful and sensible" approach for Iowa to move forward. Barta spoke with [Kirk] Ferentz, who fully supported the decision, and then began discussions with Doyle that led to Sunday's signing.[...]").[16]

---

[16] Despite this admission and their statements against interest regarding Doyle's responsibility for the racially hostile education environment, the State of Iowa and University are now defending Doyle alongside the other Defendants. Defendants now claim no racially hostile environment ever existed:

> 105.   Produce documents, including Electronic Information, evidencing that Doyle discriminated against, bullied, demeaned, and/or harassed African-American football student-athletes playing for Iowa.

> **RESPONSE:** Plaintiffs' allegations that Doyle "discriminated against, bullied, demeaned, and/or harassed African-American football student-athletes playing for Iowa" have been denied, and thus there are no documents evidencing such claims.

**(Exhibit 13, Def. Eleventh Supp. Responses to Plaintiffs' First RPDs (Sept. 26, 2022))**.

Unlike Mills, Plaintiffs *do deserve* a seat at the deposition table next month to watch the three Defendants attempt to explain themselves.

**B.** ***Crawford-El v. Britton* is inapposite.**

Defendants mistakenly rely on *Crawford-El v. Britton* to argue that the pending dispositive motions support a stay of **all** discovery. 523 U.S. 574 (1998). Defendants' reliance on *Crawford-El* is misplaced. The case supports denying the Motion to Stay and extending the resistance deadline by which Plaintiffs' must respond to the pending summary judgment motions.

Crawford-El was a "highly litigious" pro se prisoner-plaintiff that filed Section 1983 and constitutional claims against a correctional system and a correctional officer, which were followed by multiple appeals spanning years, and eventually the United States Supreme Court granted certiorari. *Id*. On review, the United States Supreme Court dinged the D.C. Circuit for exceeding its authority in going outside the federal rules of civil procedure to fashion unique procedural hurdles for civil rights plaintiffs to "protect" public employees from the inconvenience of participating in discovery and trial. *Id*. at 577, 585. In so doing, the lower court effectively created a higher, special burden of proof for civil rights plaintiffs who allege unlawful, unconstitutional motive cases against public employees. *Id*. at 581-584.

Here, Defendants would like the Court to believe that each of the Plaintiffs must have at least been called a "n*****" by each Defendant to prove they were discriminated against based on their race. Like the clear and convincing standard rebuked by the United States Supreme Court in *Crawford-El*, Defendants' proposed legal standard is inconsistent with the law and inconsistent with what racial discrimination often looks like today.[17] Additionally, unlike the purported inconvenience to public employees relied on by the lower courts in *Crawford-El*, there is no real burden in requiring these three

---

[17] The defense of this case mirrors the racial gaslighting Black student athletes have been reporting at the University of Iowa since at least 2018.

individual coaches and material fact witnesses to sit for depositions when they intend to participate at trial in any event and when their testimony will be required under any circumstance.[18]

### C. The Merits of Motions to Stay are Highly Case Specific.

Defendants' reliance on *Mills* and *Crawford-El* is also flawed because motions to stay are not "one size fits all." A review of this Court's decisions on other motions to stay shows that a more individualized assessment is necessary.

For example, intellectual property cases routinely include denied motions to stay. In patent infringement litigation cases, the United States Patent and Trademark Office (hereinafter "USPTO") has jurisdiction to issue rulings that impact the validity of patents underlying infringement actions in district court. In those cases, it is common for parties to file motions to stay given the outcome-dispositive nature of the federal agency decisions. The Court often first considers whether pending claims are subject to invalidation or mootness pending rulings of federal agencies. Most recently in 2022, this Court first considered prejudice to the parties and the prevention of undue tactical litigation advantage. *G.W. Lisk Co., Inc. v. Power Packer N. Am., Inc.*, No. 417CV00273SMRSBJ, 2022 WL 766470, at *2 (S.D. Iowa Mar. 14, 2022) (internal citations omitted).

While delay alone may not constitute undue prejudice, the Court should consider Defendants' history of discovery obstruction in this case and Plaintiffs' multiple, required requests for court intervention. *Id*. at *2. (internal citations omitted). "A court may consider whether a party has been forthcoming with their intentions to seek review and if their conduct "'evidences an intention to prejudice Plaintiff[s].'"" *Id*. quoting *CDX Diagnostics, Inc. v. U.S. Endoscopy Grp.,*

---

[18] This is true under any circumstance unless the Court intends to Order summary dismissal of all claims against all defendants.

*Inc.*, No. 13-cv-05669 (NSR), 2014 WL 2854656, at *4 (S.D.N.Y. June 20, 2014). Second, the Court has considered whether a stay would simplify pending claims and defenses. *Id*. at *3. Third, the Court has considered court deadlines and the procedural posture of the case. In *G.W. Lisk Co., Inc.*, this Court considered the defendant's third motion to stay litigation pending an *ex parte* reexamination of a patent's validity ordered by the USPTO. *Id*. at *1. In ruling on the third motion to stay, this Court considered whether the pending *ex parte* reexamination of a patent dispute would necessarily end the litigation in the district court. The defendant urged the court to stay litigation because the *ex parte* reexamination could *potentially* render the patent void thereby nullifying the issues pending before the court for several years. This Court denied the motion to stay. Here, all three factors considered in *G.W. Lisk Co., Inc.* weigh in favor of denying Defendants' instant Motion to Stay, accordingly, it should be summarily denied.

## Conclusion

Defendants' admissions to date, defense counsel's representations to the Court, and the Court rulings to date show that regardless of any qualified immunity defense of any particular claim against them, Kirk Ferentz, Brian Ferentz, and Seth Wallace must sit for depositions and explain their actions, motive, intent, knowledge, decision-making and remedial response (or lack thereof) as they are each material fact witnesses in the prosecution of the claims and defenses of this case.

Civil rights are no less important than the intellectual property rights addressed above. In another federal civil rights case, the undersigned resisted a motion to stay filed on the eve of a preliminary injunction hearing. *Mayerova v. E. Michigan Univ.*, 346 F. Supp. 3d 983, 985 (E.D. Mich. 2018). That motion was a desperate attempt to protect material fact witnesses from having to testify or be deposed and was a concerted effort to avoid liability for wrongs many of which

were already admitted in the public record.[19] *Id.* In that case, the Honorable Court denied the Motion to Stay even before the undersigned had returned to counsel table after arguing her resistance. This Court has every reason and justification to do the same.[20]

## **Prayer**

WHEREFORE, the Plaintiffs respectfully request that this Court **DENY** Defendants' Motion to Stay Litigation (ECF No. 150). Plaintiffs further pray for all and such other relief to which they may be entitled in law or equity.

---

[19] A situation eerily similar to the instant case.

[20] The Plaintiffs request to be heard orally. However, to the extent the Court agrees the Motion to Stay should be denied, Plaintiffs would prefer to dedicate resources to traveling for depositions of Defendants currently scheduled for the week of October 10, other material fact witnesses, and an upcoming site inspection in Iowa City instead of traveling to Des Moines for a Hearing.

Respectfully submitted,

*/s/Beatriz Mate-Kodjo*
**BMK LAW FIRM, PLLC**
Beatriz Mate-Kodjo, AT0012331
1910 Washington St., Ste. 100
Pella, IA 50219
Phone: (641) 450-1668
beatriz@mate-kodjo-law.com

**SOLOMON SIMMONS LAW, PLLC**
Damario Solomon-Simmons, OBA # 20340
Kymberli J. M. Heckenkemper, OBA # 33524
601 S. Boulder Ave., Ste. 600
Tulsa, OK 74119
(918) 551-8999 – Office
(918) 582-6106 – Fax
dss@solomonsimmons.com
kheckenkemper@solomonsimmons.com

**FOX ROTHSCHILD, LLP**
Christian S. Dennie, TX Bar # 24045775
Saint Ann Court
2501 N Harwood Street, Suite 1800
Dallas, TX 75201
(214) 231-5745 – Direct
(972) 404-0516 – Fax
cdennie@foxrothschild.com

Patrick Kane, NC Bar # 36861
Sarah Traynor, NC Bar # 58301
101 N Tryon St, Suite 1300,
Charlotte, NC 28246
(704) 384-2600
pkane@foxrothschild.com
straynor@foxrothschild.com

Cameron Baker (*pro hac vice pending*)
West Tower
777 S Flagler Dr., #1700
West Palm Beach, FL 33401
(561) 835-9600
cbaker@foxrothschild.com

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I certify that on September 27, 2022, I served the foregoing Plaintiffs' Resistance to Defendants' Motion and Supporting Brief to Stay Litigation (ECF No. 150, 150-1) on Defendants' attorneys of record by the court's ECF electronic filing system.

*/s/Beatriz Mate-Kodjo*
Beatriz Mate-Kodjo, *Counsel for Plaintiff*