IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| AKRUM WADLEY; JONATHAN PARKER; MARCEL JOLY; AARON MENDS; DARIAN COOPER; BRANDON SIMON; and JAVON FOY, | Case No. 4:20-cv-00366 |
| Plaintiffs, | |
| vs. | REPLY BRIEF IN SUPPORT OF BRIAN FERENTZ'S MOTION FOR SUMMARY JUDGMENT REGARDING SECTION 1981 CLAIMS |
| UNIVERSITY OF IOWA, BOARD OF REGENTS FOR THE STATE OF IOWA; KIRK FERENTZ; BRIAN FERENTZ; CHRISTOPHER DOYLE; GARY BARTA; and SETH WALLACE, | |
| Defendants. | |

## **TABLE OF CONTENTS**

**Page**

Table of Authorities ..................................................................................................... iii

1.    Introduction ....................................................................................................... 1

2.    Section 1981 ...................................................................................................... 3

3.    Contract ............................................................................................................. 4

4.    Purposeful discrimination ................................................................................ 7

5.    Purposeful discrimination by a decisionmaker ............................................... 10

6.    No connection ................................................................................................... 12

7.    Severe and Pervasive ....................................................................................... 12

            Subjective ................................................................................................. 13

            Objective ................................................................................................... 14

            Severity ..................................................................................................... 17

            Physically threatening or humiliating, or a mere offensive utterance ................... 18

i

Unreasonably interfered with the Plaintiffs' performance.....................................19

Plaintiffs' cases are inapposite...............................................................................20

8.    Not clearly established.........................................................................................22

9.    Conclusion ............................................................................................................23

# TABLE OF AUTHORITIES

**Cases**

*Abdel-Ghani v. Target Corp.*, 686 F. App'x 377 (8th Cir. 2017) .................................................16

*Alston v. Spiegel*, 988 F.3d 564 (1st Cir. 2021) ...........................................................................11

*Anderson v. Durham D & M, LLC*, 606 F.3d 513 (8th Cir. 2010)................................................15

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)..........................................................................................7

*Bainbridge v. Loffredo Gardens, Inc.*, 378 F.3d 756 (8th Cir.2004) ................................14, 15, 16

*Bellows v. Amoco Oil Co.*, 118 F.3d 268 (5th Cir. 1997) ..............................................................4

*Bentley v. AutoZoners LLC*, 935 F.3d 76 (2d Cir. 2019) ...............................................................3

*Bowen v. Missouri Dep't of Soc. Servs.*, 311 F.3d 878 (8th Cir. 2002) ...................................20, 21

*Burkett v. Glickman,* 327 F.3d 658 (8th Cir. 2003) ......................................................................16

*Canady v. Wal–Mart Stores, Inc.,* 440 F.3d 1031 (8th Cir. 2006)................................................16

*Carter v. Atrium Hosp.*, 997 F.3d 803 (8th Cir. 2021) .................................................................17

*Clay v. Credit Bureau Enterprises, Inc.*, 754 F.3d 535 (8th Cir. 2014)............................13, 14, 16

*Davis v. Unified Sch. Dist. No. 512*, 335 F.Supp.3d 1230 (D. Kan. 2018), *aff'd* 799 F. App'x 566 (10th Cir. 2019)...........................................................................................................................23

*Devin v. Schwan's Home Serv.*, 491 F.3d 778 (8th Cir. 2008) .....................................................18

*Does 1-2 v. Regents of the Univ. of Minnesota*, 999 F.3d 571 (8th Cir. 2021)............................22

*Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470 (2006) ..........................................................4, 5

*Ellis v. Houston*, 742 F.3d 307 (8th Cir. 2014).........................................................8, 9, 10, 20, 23

*Ellis v. Houston*, 2012 WL 1440260 (D. Neb. Apr. 26, 2012), *aff'd in part, rev'd in part*, 742 F.3d 307 (8th Cir. 2014) ................................................................................................................8

*Elmahdi v. Marriott Hotel Servs., Inc.*, 339 F.3d 645 (8th Cir. 2003)..........................................16

*Fasone v. Clinton Twp.*, 142 F.3d 433 (6th Cir. 1998) ................................................................17

*Felton v. Polles*, 315 F.3d 470 (5th Cir. 2002) ............................................................10

*Garang v. City of Ames*, 2 F.4th 1115 (8th Cir. 2021)....................................................3

*Gen. Bldg. Contractors Ass'n v. Pa.*, 458 U.S. 375 (1982)..............................................7

*Gregory v. Dillard's, Inc.*, 565 F.3d 464 (8th Cir. 2009) ................................................4

*Hairston v. Wormuth*, 6 F.4th 834 (8th Cir. 2021) ........................................................19

*Hammond v. K-Mart*, 733 F.3d 360 (1st Cir. 2013) .....................................................4, 7

*Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091 (10th Cir. 2001) ........................4

*Harris v. Forklift Systems, Inc.*, 510 U.S. 17 (1993) ......................................................4

*Hicks v. IBM*, 44 F.Supp.2d 593 (S.D.N.Y. 1999)....................................................10, 23

*Jackman v. Fifth Jud. Dist. Dep't of Corr. Servs.*, 728 F.3d 800 (8th Cir. 2013) .........16

*Jacob-Mua v. Veneman*, 289 F.3d 519 (8th Cir. 2002)..................................................12

*Johnson v. Bunny Bread Co.*, 646 F.2d 1250 (8th Cir. 1981)...................................11, 16

*Ladd v. Grand Trunk W. R.R.*, 552 F.3d 495 (6th Cir. 2009) ........................................17

*McGuinness v. Univ. of New Mexico Sch. of Med.*, 170 F.3d 974 (10th Cir. 1998).....................11

*McKnight v. State of Louisiana Bese Board*, 242 F. App'x 141 (5th Cir. 2007)...........................11

*Mian v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 7 F.3d 1085 (2d Cir. 1993) ...........4

*Miller v. Wachovia Bank, N.A.*, 541 F.Supp.2d 858 (N.D. Tex. 2008) ....................10, 23

*Morris v. Office Max, Inc.*, 89 F.3d 411 (7th Cir. 1996).................................................4

*Myers v. Croell Redi-Mix, Inc.*, 672 F.Supp.2d 889 (N.D. Iowa 2009)..........................19

*Nitsche v. CEO of Osage Valley Elec. Coop.*, 446 F.3d 841 (8th Cir. 2006) ................17

*O'Brien v. Dep't of Agric.*, 532 F.3d 805 (8th Cir. 2008) ............................................17

*O'Connor v. Davis*, 126 F.3d 112 (2d Cir. 1997) ........................................................11

*Petro v. Palmer Coll. of Chiropractic*, 945 N.W.2d 763 (Iowa 2020) ...................5, 6, 22

*Pye v. Nu Aire, Inc.,* 641 F.3d 1011 (8th Cir. 2011) ...................................................16

*Ramsey v. Henderson*, 286 F.3d 264 (5th Cir. 2002)...................................................17

*Rutstein v. Avis Rent-A-Car Sys., Inc.*, 211 F.3d 1228 (11th Cir. 2000).........................4

*Scott v. Harris*, 550 U.S. 372 (2007) ........................................................................10

*Singletary v. Mo. Dep't of Corr.*, 423 F.3d 886 (8th Cir.2005) .........................14, 15, 16

*Smith v. Fairview Ridges Hosp.,* 625 F.3d 1076 (8th Cir. 2010)....................................16

*Sotak v. Bertoni*, 501 F.Supp.3d 59 (N.D.N.Y. 2020) ...................................................20

*Soto v. John Morrell & Co.*, 285 F.Supp.2d 1146 (N.D. Iowa 2003)..............................16

*Stone v. McGraw Hill Fin., Inc.*, 856 F.3d 1168 (8th Cir. 2017)....................................16

*Stuart v. Gen. Motors Corp.*, 217 F.3d 621 (8th Cir. 2000) ..........................................13

*Vance v. Ball State Univ.*, 570 U.S. 421 (2013)..........................................................11

*Wallingford v. Olson*, 592 F.3d 888 (8th Cir. 2010)....................................................10

*Watson v. CEVA Logistics U.S., Inc.*, 619 F.3d 936 (8th Cir. 2010) ................20, 21, 22

*Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62 (2d Cir. 2000) ...........10, 23

*Williams v. ConAgra Poultry Co.*, 378 F.3d 790 (8th Cir. 2004) .........................20, 21

*Williams v. Missouri Dep't of Mental Health,* 407 F.3d 972 (8th Cir. 2005)...............19

*Woodland v. Joseph T. Ryerson & Son, Inc.*, 302 F.3d 839 (8th Cir. 2002)...........13, 14, 16

*Youngblood v. Hy–Vee Food Stores, Inc.*, 266 F.3d 851 (8th Cir. 2001) ....................4, 7

*Zanders v. U.S. Bank*, No. 4:13-CV-00481-SMR-HCA, 2016 WL 8925395 (S.D. Iowa Jan. 14, 2016), *aff'd*, 674 F. App'x 591 (8th Cir. 2017) ...........................................................2, 3

**Other**

42 U.S.C. § 1981.................................................................................................22, 23

*1. Introduction.* In Count II of the First Amended Complaint ("FAC"), Plaintiffs pleaded disparate treatment claims against B. Ferentz. B. Ferentz moved for summary judgment on Plaintiffs' disparate treatment claims in Count II of the FAC. Plaintiffs' resistance conceded B. Ferentz's motion for summary judgment on Plaintiffs' disparate treatment claims. B. Ferentz is entitled to summary judgment on Plaintiffs' disparate treatment claims.

In an attempt to preserve some claim against B. Ferentz, Plaintiffs' resistance pivoted to hostile environment, which is different from Count II as pleaded in either the FAC or Second Amended Complaint ("SAC").[1] This Court has several options, including, among others, (1) granting summary judgment on Count II on grounds Plaintiffs only alleged disparate treatment, which has been abandoned; (2) granting summary judgment on disparate treatment only and reserving adjudication of the new hostile environment claim; or (3) granting summary judgment on disparate treatment and hostile environment because Plaintiffs cannot create a genuine issue of material fact that precludes summary judgment for the reasons set forth in his summary judgment motion and this reply brief.

---

[1] The SAC contains allegations in Count I by Mends, Simon, and Foy of a hostile environment claim under Title VI against the University and Board. [ECF No. 133, pp. 56-58]. The four Plaintiffs who need a longer statute of limitations—Wadley, Cooper, Joly and Parker—are Plaintiffs only on Count II which contains the Section 1983 claims based on Section 1981. The claim in SAC Count II is expressly described as a claim for disparate treatment in Paragraph 288 of Count II. [ECF No. 133, p. 61]. Only Mends, Simon and Foy pleaded any racial hostile environment claim in the superseded FAC. [ECF No. 15, p. 54]. While the SAC contains new references to an alleged racially hostile environment and Count I's allegations are incorporated by reference into Count II, the only claim for hostile environment is Count I against the University and Board by only three plaintiffs. [ECF No. 133, pp. 56-58]. Paragraph 262, incorporated into Count II, expressly states that Mends, Simon, and Foy have a hostile environment claim against the University and Board. Paragraph 288 indicates Count II is a claim for disparate treatment against B. Ferentz, Wallace, and Doyle by seven plaintiffs. [*Id.* p. 61]. Count II never alleges a hostile environment claim against the individual defendants, except the incorporation of paragraph 262 indicates Mends, Simon, and Foy have a hostile environment claim against the University and Board.

In *Zanders v. U.S. Bank*, the Court explained the requirements of Local Rule 56(b)(2):

> Local Rule 56.b.2 requires a party resisting summary judgment to file a response to the movant's statement of material facts expressly admitting, denying, or qualifying each of the movant's statements of fact. The first unnumbered paragraph of Local Rule 56.b elaborates:
>
>> A response to an individual statement of material fact that is not expressly admitted must be supported by references to those specific pages, paragraphs, or parts of the pleadings, depositions, answers to interrogatories, admissions, exhibits, and affidavits that support the resisting party's refusal to admit the statement, with citations to the appendix containing that part of the record. The failure to respond, with appropriate citations to the appendix, to an individual statement of material fact constitutes an admission of that fact.
>
> LR 56.b. Although Zanders filed a response to U.S. Bank's statement of facts expressly admitting or denying each of U.S. Bank's statements of fact, he in several instances failed to respond with an appropriate citation to his appendices. [See, e.g., ECF No. 72 ¶¶ 3, 8, 12, 14, 19, 23, 27, 56, 136]. In numerous other instances, Zanders's responses (all denials or partial denials) are non-responsive to the specific facts asserted. Accordingly, to the extent that Zanders failed either to cite his appendices or to respond specifically to the facts asserted, the Court treats each of these facts as admitted.

*Zanders v. U.S. Bank*, No. 4:13-CV-00481-SMR-HCA, 2016 WL 8925395, at *1–2 (S.D. Iowa Jan. 14, 2016), *aff'd*, 674 F. App'x 591 (8th Cir. 2017).

Plaintiffs' Response to B. Ferentz's Statement of Material Facts only contained 132 responses with citations to appendices in response to 424 statements of material fact.[2] [ECF No. 183-1]. The 132 responses with citations to appendices contained numerous non-responsive denials to the specific asserted facts. Accordingly, to the extent Plaintiffs failed either to cite to

---

[2] Plaintiffs' Response to B. Ferentz's Statement of Material Facts contained responses while omitting the Statement of Material Facts. A compiled version with B. Ferentz's Statement of Material Facts and Plaintiffs' Response is attached to this Reply Brief. Plaintiffs' 132 citations to "specific pages, paragraphs, or parts of the pleadings, depositions, answers to interrogatories, admissions, exhibits, and affidavits" required by Local Rule 56(b) have been highlighted in yellow. Plaintiffs' 24 repetitive responses about "the close relationship between Brian Ferentz" and Kirk Ferentz have been highlighted in blue. Plaintiffs' 80 repetitive objections about "immaterial" and "conclusory" statements have been highlighted in pink.

appendices or to respond specifically to the facts asserted, this Honorable Court must treat each of these facts as admitted. *See Zanders*, 2016 WL 8925395, at *1–2*. Additionally, each of the eighty "immaterial" responses are admitted for purposes of summary judgment.

On pages 16-17, 19-20, 21-22, and 27, Plaintiffs' Brief in Opposition [ECF No. 183] relies on Plaintiffs' responses to Interrogatory No. 8 regarding alleged acts of discrimination. Each Plaintiff admitted under oath their response to Interrogatory No. 8 contained inaccuracies with respect to Brian Ferentz. [ECF No. 131-1 & 183-1 ¶¶ 17-18, 58-60, 142-144, 185-187, 293, 336-338 & 390-394]. Plaintiffs attempt to rehabilitate the disavowed interrogatory responses in various ways, including the Plaintiffs "neglected to thoroughly review them before signing," [*id.* ¶ 58], Plaintiffs were "speaking in the collective and was not necessarily saying that Brian Ferentz mocked every one of those items," [*id. ¶¶* 144, 185-86, 337], or Plaintiffs "incorrectly attributed the conduct to Brian Ferentz and rectified it as soon as he realized the mistake" [*id. ¶¶* 293]. Because the sworn deposition testimony contradicts the interrogatory responses and Plaintiffs' attempt to rehabilitate the disavowed interrogatory responses admit the contradictions and inaccuracies, the summary judgment record conflicts with Plaintiffs' responses to Interrogatory No. 8 such that the responses to Interrogatory No. 8 raise "only 'a sham issue of fact.'" *Bentley v. AutoZoners LLC*, 935 F.3d 76, 86 (2d Cir. 2019) (quoting *Fosamax Prods. Liability Litig.*, 707 F.3d 189, 194 (2d Cir. 2013)). Neither the responses to Interrogatory No. 8 nor Plaintiffs' declarations contradicting Plaintiffs' sworn deposition testimony create genuine issues of material fact. *See id.; Garang v. City of Ames*, 2 F.4th 1115, 1122 (8th Cir. 2021).

*2. Section 1981.* "In order to make out a prima facie case of non-employment discrimination sufficient to withstand a motion for judgement as a matter of law under Section 1981, a plaintiff will have to establish that (1) he or she is a member of a racial minority; (2) the defendant had an

intent to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute (in this case, the making and enforcing of a contract)." *Rutstein v. Avis Rent-A-Car Sys., Inc.*, 211 F.3d 1228, 1234 (11th Cir. 2000) (citing *Bellows v. Amoco Oil Co.*, 118 F.3d 268, 274 (5th Cir. 1997); *Morris v. Office Max, Inc.*, 89 F.3d 411, 413 (7th Cir. 1996); *Mian v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993). The rights enumerated in Section 1981(a) include the right "to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." "Litigation involving § 1981 most commonly involves the right to make and enforce contracts of employment." *Morris v. Off. Max, Inc.*, 89 F.3d 411, 413 (7th Cir. 1996).

*3. Contract.* "Section 1981 offers relief when racial discrimination blocks the creation of a contractual relationship, as well as when racial discrimination impairs an existing contractual relationship, so long as the plaintiff has or would have rights under the existing or proposed contractual relationship." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006). "[N]othing in the text of § 1981 suggests that it was meant to provide an omnibus remedy for all racial injustice. If so, it would not have been limited to situations involving contracts." *Id.* at 479; *accord Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1101 (10th Cir. 2001) (stating "our § 1981 jurisprudence requires that the action interfered with must be based on a contract"), *cited in Gregory v. Dillard's, Inc.*, 565 F.3d 464, 470 (8th Cir. 2009) (en banc); *Hammond v. K-Mart*, 733 F.3d 360, 364 (1st Cir. 2013). Section 1981 "does not provide a general cause of action for race discrimination," *Gregory*, 565 F.3d at 468 (quoting *Youngblood v. Hy–Vee Food Stores, Inc.*, 266 F.3d 851, 855 (8th Cir. 2001)), or "the mere expectation of being treated without discrimination…," *id.* at 473. Plaintiffs' citation on page 10 to *Harris v. Forklift Systems, Inc.*,

510 U.S. 17 (1993) in support of the argument "a 'breach' is not required" is a citation to a Title

VII case. Title VII is materially different from Section 1981 because (1) Section 1981 is

applicable only "when racial discrimination impairs an existing contractual relationship,"

*Domino's Pizza*, 546 U.S. at 476, and (2) a hostile environment claim against an employer under

Title VII does not require "purposeful discrimination" by the decisionmaker.

Plaintiffs' responses to interrogatories indicate the contracts were Plaintiffs' "financial aid

agreements and University of Iowa policies on harassment, discrimination, and bullying."[3]

[Supp. App. 505-545, Plaintiffs' Answers to Interrogatory No. 5; ECF No. 131-2, pp. 381-395,

396-414, 415-422, 423-435, 436-453 & 454-466]. In the Order on Defendants' Motion to

Dismiss, this Court held the University's Operations Manual was not a binding contract under

Iowa law as set forth in *Petro v. Palmer College of Chiropractic*. [ECF No. 31, pp. 20-21]. At

the motion to dismiss stage, Plaintiffs never alleged Plaintiffs followed the processes and

procedures in the University of Iowa Operations Manual.

In Plaintiffs' Resistance to the Motion for Summary Judgment, Plaintiffs argue a different

version of the same argument rejected in the Order on Defendants' Motion to Dismiss,

specifically, Plaintiffs attempt to substitute the Iowa Student-Athlete Handbook for the

Operations Manual as the contract. [ECF No. 183, pp. 11-13]. "[C]ourts have consistently found

that [general statements of nondiscrimination in the online application and the equal opportunity

policy] are not tantamount to a binding contract." *Petro v. Palmer Coll. of Chiropractic*, 945

N.W.2d 763, 780 (Iowa 2020). The Iowa Supreme Court stated the law of Iowa:

> A party cannot pluck a single statement out of context and feather it into a
> contract. If the student handbook amounts to a binding contract, an issue we do
> not decide today, at most Palmer's contractual commitment in the area of

---

[3] Javon Foy did not have a financial aid contract.

> nondiscrimination was to follow the identified processes and procedures for
> addressing discrimination complaints.

*Id.* Similar to the Court's disposition of these issues at the motion to dismiss stage, nothing in the

summary judgment record shows Plaintiffs followed the identified processes and procedures for

addressing discrimination complaints in the Iowa Student-Athlete Handbook or the University of

Iowa failed to comply with the Iowa Student-Athlete Handbook. Similar to *Petro*, the Iowa

Student-Athlete Handbook is not a contract that confers rights beyond the identified processes

for addressing complaints. Plaintiffs attach a single page of the Handbook and failed to attach the

grievance procedures contained in the Handbook for addressing discrimination complaints. The

entire Handbook is part of the summary judgment record. [Supp. App. 483 & 488-489, pp. 22 &

27-28 (describes grievance procedures)]. Plaintiffs' argument on page 13 of the Brief in

Opposition assumes the Iowa Student-Athlete Handbook confers rights rather than addressing

the issue whether the Iowa Student-Athlete Handbook is an enforceable contract or the holding

in *Petro* and earlier by this Court that even if the manual is a contract, as a matter of law, it is

only the University's identified procedures for addressing discrimination complaints. As a result,

the only contracts for purposes of Section 1981 are Plaintiffs' financial aid contracts. The Court

correctly determined earlier "There is no enforceable contract here," when it ruled on the

University Operations Manual. [ECF No. 31, p. 21]. Plaintiffs merely replead their reliance on

the University Operations Manual in the Second Amended Complaint [ECF No. 133 ¶ 107], did

not plead that the Student-Athlete Handbook was a contract, did not plead they complied with

the grievance procedures in either document, or that B. Ferentz had anything to do with their

failure to do so.

For purposes of summary judgment, the only contracts for purposes of Section 1981 are the

financial aid contracts, and each Plaintiff admitted the University of Iowa complied with their

financial aid contracts. [ECF No. 131-1 & 183-1 ¶ 423]. The financial aid contracts were fully performed. The contracts were "enforced" for purposes of Section 1981. In *Hammond*, even assuming a black woman suffered "comments, alleged to have been fueled by racial animus," the plaintiff could not state a Section 1981 claim because the customer completed the transaction and the alleged discrimination did not impact her ability to contract with the store. 733 F.3d at 364. Similarly, in *Youngblood*, 266 F.3d at 854, after the black customer completed the contract by making the purchase, no contractual relationship or contractual duty remained to support liability under Section 1981. "Accordingly, [the retailer] cannot be said to have deprived [the plaintiff] of the benefit of any contractual relationship, as no such relationship existed" after consummation of the transaction. *Id*. After full performance of the financial aid contracts by the University of Iowa, no contractual relationship or duty remained, so the Plaintiffs could not be deprived of the benefit of such contractual relationships. Because Plaintiffs conceded their financial aid contracts were enforced or performed, there can be no violation of Section 1981.

4. *Purposeful discrimination.* Section 1981 "can be violated only by purposeful discrimination." *Gen. Bldg. Contractors Ass'n v. Pa.*, 458 U.S. 375, 391 (1982). "Under extant precedent purposeful discrimination requires more than 'intent as volition or intent as awareness of consequences.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (quoting *Personnel Admin. of Mass. v. Feeney*, 442 U.S. 256, 279 (1979)). "It instead involves a decisionmaker's undertaking a course of action because of, not merely in spite of, [the action's] adverse effects upon an identifiable group." *Id.* (internal quotation marks omitted). Accordingly "[i]t is not enough that a defendant 'participated' in the racial taunts and insults and turned a blind eye to harassing conduct by his subordinates. Plaintiffs must prove he acted (and failed to act) for the ***purpose*** of creating a hostile work environment for the plaintiffs, that is, that he intended to alter the terms

and conditions of their employment through severe and pervasive racial harassment." *Ellis v. Houston*, 742 F.3d 307, 327-28 (8th Cir. 2014) (emphasis in original). If Plaintiffs cannot satisfy this high standard—"proof of intentional discrimination by that defendant"—then summary judgment for the supervisor must be granted. *Id.* at 327.

In *Ellis*, the Court reversed the district court's grant of summary judgment to Sgt. Miles on Ellis's Section 1981 hostile environment claim,[4] yet affirmed the grant of summary judgment in favor of the other four individual supervisor defendants on plaintiffs' hostile environment claims.[5] Different from Sgt. Miles, B. Ferentz never had notice that any of his alleged insensitive

---

[4] "Miles made offensive 'jokes' regularly over the course of a few months in front of the entire first shift, with one witness describing it as 'almost like a daily occurrence;'" "Miles made the majority of the alleged derogatory comments at roll call, and plaintiffs testified that the harassment was worse when he was there;" and "Even if the insensitive comments were initially thought to be mere teasing or joking, a jury could reasonably infer that a supervisor who continued to participate in the hazing after Ellis, one of the targets, exclaimed, 'damn the jokes' and 'enough is enough,' was intentionally creating a hostile work environment." *Id.* at 328.

[5] By way of example, Plaintiffs established the following admissible evidentiary facts against Lt. Runge, and the Eighth Circuit found these facts supported a finding of summary judgment in favor of Lt. Runge. 2012 WL 1440260 (D. Neb. Apr. 26, 2012), *aff'd in part, rev'd in part*, 742 F.3d 307 (8th Cir. 2014).

- "[I]t became common practice for a significant number of the non-African American [NSP] staff to make comments in the presence of the first shift Plaintiffs to the effect of: "Looks like the back of the bus is here;" "Smells like fried chicken;" "The gang has arrived;" "The 'hood has arrived;" "If the lights went out, all you would see were white teeth;" and other racially charged comments.... At various times … Runge … [has] been present for and/or joined in the comments. *Id.* at *1.
- Runge made the comment "the bus has arrived" on at least two occasions. *Id.* at *19.
- One plaintiff testified he "heard Runge say 'the back of the bus is here' or 'finally the back of the bus made it' several times as he was going into roll call." *Id.* at *51.
- One plaintiff testified he "heard the comments 'the 'hood is here,' 'smells like fried chicken,' 'they are serving watermelon today, I am sure you guys are happy,' and comments about Plaintiff Johnson's hair. He heard Miles and Runge take turns making these comments." *Id.* at *51.
- When Miles wasn't here, Runge would make racial comments. *Id.* at *51.
- Runge smirked and laughed at racially insensitive comments. *Id.* at *19 & *27.
- A plaintiff testified that after he made a complaint, "[t]here is a drastic change in working conditions at NSP in that he has no more interaction with his co-workers. If he has interaction with co-workers, Stoner or Runge 'start coming down on them.'" *Id.* at *56.

comments were thought to be more than mere teasing or joking. B. Ferentz was never made aware of any complaints about racial epithets, slurs, discrimination, or racial harassment before June 2020. [SUF ¶ 9, ECF No. 131-1 & 183-1]. Plaintiffs Simon [*id.* ¶ 177], Parker [*id.* ¶ 260], Joly [*id.* ¶ 307], Wadley [*id.* ¶ 387], and Foy [*id.* ¶ 411] admitted they never made any complaints against B. Ferentz while playing football for Iowa. The key to finding individual supervisor liability for Sgt. Miles was "a jury could reasonably infer that a supervisor who continued to participate in the hazing after Ellis, one of the targets, exclaimed, 'damn the jokes' and 'enough is enough,' was intentionally creating a hostile work environment." 742 F.3d at 328. Different from Ellis' evidence against Sgt. Miles, Plaintiffs have not offered any evidence that B. Ferentz was aware that his comments were unwelcome but persisted in making harassing comments or that any player, let alone Plaintiffs, had any problem with B. Ferentz.

Here, Plaintiffs make a conclusory allegation from one plaintiff (Parker) regarding the frequency of B. Ferentz's alleged comments, but the record does not allow the Court to ascertain whether these comments occurred on a "daily basis" like Sgt. Miles. *Cf. Ellis*, 742 F.3d at 327. The only supporting evidence is Parker's conclusory assertion that "it was not uncommon for Brian Ferentz to curse and call players derogatory and racially discriminatory names" but does not identify what Mr. Parker considers "not uncommon" and what he considers "derogatory" or "racially discriminatory" names for the Court's consideration. [ECF No. 183-2, ¶ 9]. Notably

---

- A plaintiff told Runge that another NSP staff member was affiliated with a white supremacist group and did not report this fact to human resources. *Id*. at *43.
- Runge's supervisor testified "he would have expected Runge to report such comments immediately up the chain of command and address the person who made them immediately" and if he "did not do that, it was a failure on Runge's part." *Id*. at *49-*50.
- Regarding Runge, Plaintiff Ellis said he "has been made to feel like an inmate because he knows he has been watched and his whereabouts checked on every second of the day. He feels belittled and degraded basically making it seem like he doesn't know anything or that he is just stupid because he is black." *Id*. at *58.

Parker's sworn deposition testimony indicates B. Ferentz allegedly called him a "black dumbass" on a single occasion [ECF No. 183-3 p. 74, Parker Dep. 68:3-8] and otherwise used non-racial profanity which he admits is common in college football [ECF No. 131-1 & 183-1 ¶ 420].[6] Plaintiffs have not shown B. Ferentz's conduct is similar to Sgt. Miles.

*5. Purposeful discrimination by a decisionmaker.* The decisionmaker must be "acting on behalf of the state" or the decisionmaker and the state must be "essentially the same" to impose Section 1981 liability on an individual. *Felton v. Polles*, 315 F.3d 470, 480 (5th Cir. 2002), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006)). "In each of the cases that have allowed individual liability [under § 1981], the individuals have been supervisors who were personally involved in the discriminatory activity." *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 75 (2d Cir. 2000); *see also Miller v. Wachovia Bank, N.A.*, 541 F.Supp.2d 858, 861–865 (N.D. Tex. 2008) (collecting cases). "Thus, individuals should be held liable under § 1981 only when they are essentially one and the same with the employer; that is when they have the capacity to make and enforce the contract between the employer and the employee." *Hicks v. IBM*, 44 F.Supp.2d 593, 596–97 (S.D.N.Y. 1999); *see also Miller*, 541 F.Supp.2d at 865 ("The court is unaware of, and [Plaintiff] has not cited, a decision in which a court has allowed a § 1981 claim to proceed against an employee coworker who was neither a supervisor nor exercised supervisory authority."). The Eighth Circuit treated "supervisors" the same for purpose of both Section 1981 and Title VII. *Ellis*, 742 F.3d at 312 n.3. Under Title VII, a "supervisor" is an employee who could "take tangible employment actions against the victim, i.e., to effect a significant change in employment status, such as hiring, firing,

---

[6] Parker's secret video recording reporting the incident reveals Parker's insubordination without any discussion of race. [ECF No. 131-1 & 183-1 ¶¶ 222-27]. *See Scott v. Harris*, 550 U.S. 372, 380 (2007); *Wallingford v. Olson*, 592 F.3d 888, 892-93 (8th Cir. 2010).

failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Vance v. Ball State Univ.*, 570 U.S. 421, 431–32 (2013) (internal quotations omitted).[7]

For purposes of summary judgment, each Plaintiff admitted B. Ferentz did not have the capacity to make or enforce Plaintiffs' financial aid contracts with the University of Iowa. [ECF No. 131-1 & 183-1 ¶¶ 67, 149, 190, 270, 374, 412 & 422]. In *Alston v. Spiegel*, 988 F.3d 564, 572–73 (1st Cir. 2021), a firefighter could not state a claim for a Section 1981 violation against an elected Town Meeting member, because the firefighter never alleged the official was his employer, the official had any influence on the terms and conditions of his employment, or the official had any role in the enforcement of the contract. The firefighter's complaint had alleged nothing to connect the official to the contract. *Id*. Similarly, Plaintiffs never alleged B. Ferentz (1) executed financial aid contracts for the University of Iowa, (2) had any influence on the financial aid contracts, or (3) had any role in the enforcement of the financial aid contract. [ECF No. 131-1 & 183-1 ¶¶ 67, 149, 190, 270, 374, 412 & 422]. Because B. Ferentz never acted as the decisionmaker with respect to Plaintiffs' financial aid contracts, B. Ferentz cannot be liable under Section 1981 for anything related to Plaintiffs' financial aid contracts.

Additionally, B. Ferentz never acted as supervisor. B. Ferentz acted as offensive line coach from 2012 through January 9, 2017, and became offensive coordinator on January 9, 2017. [ECF No. 131-1 & 183-1 ¶¶ 5-6]. A position coach is different from a supervisor—it cannot take

---

[7] Additionally, for purposes of Title VII, a student is not an employee of the university or college. *O'Connor v. Davis*, 126 F.3d 112, 116 (2d Cir. 1997); *accord McKnight v. State of Louisiana Bese Board*, 242 F. App'x 141 (5th Cir. 2007); *McGuinness v. Univ. of New Mexico Sch. of Med.*, 170 F.3d 974, 979 (10th Cir. 1998). The *Johnson* case cited by Plaintiffs involved the FLSA, not Title VII, and is currently subject to an interlocutory appeal. 2021 WL 6125095.

tangible action with respect to financial aid. Plaintiffs argue neither B. Ferentz had the authority

to take tangible actions against Plaintiffs nor B. Ferentz actually took tangible actions.

In the alternative if the Court were to treat B. Ferentz as a decisionmaker or supervisor, this

is no genuine issue of material fact that B. Ferentz never acted as a decisionmaker or supervisor

for defensive players, such as Cooper, Mends, and Simon. [ECF No. 131-1 & 183-1 ¶¶ 29-30,

90, 151-52 & 416]. Similarly, B. Ferentz became offensive coordinator on January 9, 2017,

which was after Parker's insubordination on December 19, 2016 and fifteen days before Parker

transferred on January 24, 2017. [*Id.* ¶¶ 185, 192-94 & 418]. Parker lodges no complaints for

this time period. Because B. Ferentz never had coaching or decisionmaking authority over

Cooper, Mends, Simon, or Parker, these Plaintiffs' Section 1981 claims fail against B. Ferentz.

*6. No connection.* The Eighth Circuit requires a connection between alleged racially

discriminatory comments and any hostile environment. In *Jacob-Mua v. Veneman*, 289 F.3d 519,

519 (8th Cir. 2002), a black woman alleged colleagues made racist comments. The specific

allegations of harassment included co-workers causing her to feel isolated at work, a co-worker

yelling and throwing keys at her, and a co-worker asking invasive questions about race. *Id.* at

519. The specific allegations also included statements by her supervisor that "I have to accept a

black woman as an employee that I don't even want" and comments about traditional African

clothing. *Id.* at 523. The hostile work environment failed because "no evidence connect[ed]" the

supervisor's comments to any hostile work environment. *Id.* Similarly, Plaintiffs' argument B.

Ferentz has total responsibility for an alleged hostile environment ignores the requirement of a

causal connection between B. Ferentz's actions and the alleged hostile environment.

*7. Severe and Pervasive.* Even though Plaintiffs now pivot to a hostile environment claim,

they still cannot defeat summary judgment with their repetitious citation to the same allegation.

To establish a Section 1981 hostile environment claim based on race, a plaintiff must prove that "(1) he is a member of a protected group; (2) he was subject to unwelcome race-based harassment; (3) the harassment was because of membership in the protected group; and (4) the harassment affected a term, condition, or privilege of employment." *Clay v. Credit Bureau Enterprises, Inc.*, 754 F.3d 535, 540 (8th Cir. 2014). "In order for harassment to have affected a term, condition, or privilege of employment, the harassment must have been 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Id*. This requires "both objective and subjective components: an environment that a reasonable person would find hostile and one that the victim actually perceived as abusive." *Id.*

*Subjective.* "If the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment" and therefore the Plaintiffs cannot support a hostile environment claim. *Woodland v. Joseph T. Ryerson & Son, Inc.*, 302 F.3d 839, 843 (8th Cir. 2002). A touchstone for determining whether Plaintiffs subjectively perceived a hostile environment is whether any Plaintiff complained about their hostile environment. *See, e.g.*, *Woodland*, 302 F.3d at 844; *Stuart v. Gen. Motors Corp.*, 217 F.3d 621, 632 (8th Cir. 2000). In *Woodland*, the plaintiff "chose not to report many of the incidents about which he now complains" which "is strong evidence that, while offensive, these incidents did not subjectively affect the conditions of [plaintiff's] employment." *Id*. When the plaintiff fails "to complain about any of the alleged incidents," the plaintiff did not find the alleged conduct "subjectively offensive" as a matter of law. *Stuart*, 217 F.3d at 632.

Here, Plaintiffs admit B. Ferentz was never made aware of any complaint alleging racial harassment against him before June 2020. [Doc. 131-1 & 183-1 ¶¶ 8-11]. Plaintiffs Simon [*id.* ¶ 177], Parker [*id.* ¶ 260], Joly [*id.* ¶ 307], Wadley [*id.* ¶ 387], and Foy [*id.* ¶ 411] admit they

never made any complaints against B. Ferentz while playing football for Iowa. Plaintiffs Cooper [*id.* ¶¶ 20-21 & 32], Mends [*id.* ¶¶ 56-62], Simon [*id.* ¶¶ 140-43], Parker [*id.* ¶¶ 230-234], Wadley [*id.* ¶¶ 336, 339-40 & 351-52], and Foy [*id.* ¶¶ 389-94] admit B. Ferentz never racially harassed them personally, with the exception Simon alleged B. Ferentz once said his jewelry "looked stupid" [*id.* ¶ 141], Parker alleged he once called him a "black dumbass" after a drill [*id.* ¶¶ 215-229], and Wadley alleged he twice said about Wadley's skullcap that he looked like he "was about to go rob a liquor store" or "gas station" and had an incident about parking. [ECF No. 183-2 ¶¶ 11 & 20]. Mends and Simon were interviewed about the time that they left the program and Joly interviewed eleven months after he left the program, and none of them made any racial complaints about B. Ferentz. [ECF No. 183-3, pp. 152-53 & 206-07]. Mends met with Liz Tovar and did not mention any specific complaints about B. Ferentz. [ECF No. 131-1 & 183-1 ¶ 63]. Because Plaintiffs chose not to report any of the incidents for which they now complain, this is "strong evidence that, while offensive, these incidents did not subjectively affect the conditions of" Plaintiffs' education environment. *Woodland*, 302 F.3d at 844.

*Objective.* The United States Court of Appeals for the Eighth Circuit defined the objective portion of the analysis:

> "To decide whether a work environment is objectively offensive, ... we examine all the circumstances, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating or a mere offensive utterance, and whether the conduct unreasonably interfered with the employee's work performance." *Singletary v. Mo. Dep't of Corr.*, 423 F.3d 886, 892–93 (8th Cir.2005) (quoting *Bainbridge v. Loffredo Gardens, Inc.*, 378 F.3d 756, 759 (8th Cir.2004)). "A hostile work environment exists when the workplace is dominated by racial slurs, but not when the offensive conduct consists of offhand comments and isolated incidents." *Bainbridge*, 378 F.3d at 759.

*Clay v. Credit Bureau Enterprises, Inc.*, 754 F.3d 535, 540 (8th Cir. 2014).

*Frequency of discriminatory conduct.* Plaintiffs Cooper [ECF No. 131-1 & 183-1 ¶¶ 19-22 & 32], Mends [*id.* ¶¶ 56-62], Joly [*id.* ¶¶ 262-68], and Foy [*id.* ¶¶ 389-394] admit B. Ferentz never

14

said anything racially discriminatory towards them. Comments not directed at Plaintiffs and not made in Plaintiffs' presence are typically too remote and indirect to have an effect on the terms and conditions of Plaintiffs' environment. *Bainbridge v. Loffredo Gardens, Inc.*, 378 F.3d 756, 760 (8th Cir. 2004).

Simon admits that B. Ferentz never said anything racially discriminatory towards him except that B. Ferentz once told him his jewelry "looked stupid" and alleges an unnamed teammate claimed B. Ferentz once called him some undefined racial epithet. [*Id*. ¶¶ 140-46]. The jewelry comment does not reference race and the hearsay comment is insufficient to support a hostile environment claim. *Singletary v. Mo. Dep't of Corr.*, 423 F.3d 886, 893 (8th Cir. 2005) (holding when a plaintiff learns second-hand that co-workers and supervisors referred to him as a "n*****" several times was insufficient to support a hostile environment claim).

Parker admits that B. Ferentz never said anything racially discriminatory towards him except for the alleged incident on December 19, 2016. [ECF No. 131-1 & 183-1 ¶¶ 199 & 216-234]. Parker admits "B. Ferentz kicked him out of the practice for insubordination, tossing the ball to him, and his statement ["do the drill yourself"], and kicking him out had nothing to do with his race." [*Id*. ¶¶ 251-52]. Assuming for the purposes of summary judgment that B. Ferentz called Parker a "black dumbass," the "[m]ere utterance of an epithet which engenders offensive feelings in an employee does not sufficiently affect the conditions of employment to implicate § 1981." *Anderson v. Durham D & M, LLC*, 606 F.3d 513, 519 (8th Cir. 2010).

Wadley admits that B. Ferentz never said anything racially discriminatory towards him except he alleges B. Ferentz made two jokes about his skullcap and a confrontation in the parking lot. [*Id*. ¶¶ 336-341]. As to the skullcap references, the phrases were not overtly racial and rest upon the assumption that B. Ferentz would not make the same comment to a non-black

15

player. *Clay*, 754 F.3d at 540-41 (mere speculation or conjecture to attempt to show the alleged

harassment was race based was insufficient). The same is true about the parking lot incident.

Assuming these references were the equivalent of racial epithets, no matter how offensive "the

statements do not constitute a steady barrage of opprobrious racial comment sufficient to support

a § 1981 hostile work claim." *Elmahdi v. Marriott Hotel Servs., Inc.*, 339 F.3d 645, 653 (8th Cir.

2003) (internal quotations omitted).

As to each Plaintiff, they allege B. Ferentz targeted racially-discriminatory comments to each

of them between zero and three times, which is too infrequent for each individual Plaintiff to

support a claim that they were personally subjected to a hostile environment.[8] Accordingly

Plaintiffs rely on their generic interrogatory responses that "these comments and actions were

made to essentially every black player on the football team" and Parker's customized response

that "it was not uncommon for [B.] Ferentz to curse and call players derogatory and racially

discriminatory names." [ECF No. 183-2 ¶¶ 9 & 11]. Judge Bennett rejected such conclusory

allegations, holding plaintiffs "cannot simply rely on these few isolated incidents and a general,

unsupported allegation of a constant barrage of racial comments and ethnic slurs by [B. Ferentz]

to support [their] hostile work environment claim." *Soto v. John Morrell & Co.*, 285 F.Supp.2d

1146, 1169 (N.D. Iowa 2003). While Plaintiffs are not required to catalog each epithet for a

period of years to the date and exact words, there must be enough non-conclusory specific

---

[8] *See, e.g.*, *Stone v. McGraw Hill Fin., Inc.*, 856 F.3d 1168, 1175–76 (8th Cir. 2017); *Abdel-Ghani v. Target Corp.*, 686 F. App'x 377, 379 (8th Cir. 2017); *Clay*, 754 F.3d at 540–41; *Jackman v. Fifth Jud. Dist. Dep't of Corr. Servs.*, 728 F.3d 800, 805–06 (8th Cir. 2013); *Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1018 (8th Cir. 2011); *Smith v. Fairview Ridges Hosp.*, 625 F.3d 1076, 1086–87 (8th Cir. 2010); *Canady v. Wal–Mart Stores, Inc.*, 440 F.3d 1031, 1035 (8th Cir. 2006); *Singletary*, 423 F.3d at 893; *Bainbridge*, 378 F.3d at 759–60; *Elmahdi*, 339 F.3d at 652–53; *Burkett v. Glickman*, 327 F.3d 658, 661–62 (8th Cir. 2003); *Woodland*, 302 F.3d at 843–44; *Johnson v. Bunny Bread Co.*, 646 F.2d 1250, 1257 (8th Cir. 1981).

16

factual content for a factfinder to substantiate the frequency and severity of the allegations. *Carter v. Atrium Hosp.*, 997 F.3d 803, 812 (8th Cir. 2021); *see, e.g.*, *Ladd v. Grand Trunk W. R.R.*, 552 F.3d 495, 501 (6th Cir. 2009) ("we are limited by her total lack of specificity as to verbal abuse she received apart from the aforementioned remarks. She has alleged that she was subject to derogatory sex-based comments on a daily basis, but without specifics it is difficult to adjudge their severity."); *Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002) (holding conclusory allegations of frequent harassment are insufficient to establish a *prima facie* case of hostile work environment); *Fasone v. Clinton Twp.*, 142 F.3d 433 (6th Cir. 1998) ("Although Fasone stated that he was subject to constant harassment, he was able to identify only a few specific discriminatory comments. The few comments were insufficient to establish a hostile work environment under…federal…law.").

*Severity.* Plaintiffs Cooper [ECF No. 131-1 & 183-1 ¶¶ 19-22 & 32], Mends [*id.* ¶¶ 56-62], Joly [*id.* ¶¶ 262-68], and Foy [*id.* ¶¶ 389-394] admit they were not personally targeted by any discriminatory comments while Simon [*Id.* ¶¶ 140-46] admits he only heard hearsay comments about him. Parker admits B. Ferentz was justified in kicking Parker out of practice for "insubordination" and "kicking him out had nothing to do with his race" when B. Ferentz allegedly called him a "black dumbass." [*Id.* ¶¶ 251-52]. Wadley alleges two different incidents involving his skullcap and B. Ferentz called him a "dumb motherf*****" in a parking lot. Such allegations cannot be considered "extreme in nature and not merely rude or unpleasant." *Nitsche v. CEO of Osage Valley Elec. Coop.,* 446 F.3d 841, 846 (8th Cir. 2006).

At bottom, Plaintiffs' general allegations "may be distilled to verbal harassment and increased scrutiny." *O'Brien v. Dep't of Agric.*, 532 F.3d 805, 809 (8th Cir. 2008). Allegations such as being "excluded from the decision-making process, treated with disrespect, subjected to

false complaints, and curtailed in her supervisory duties" is not sufficiently severe to create a hostile environment. *Id.*; *see, e.g.*, *Devin v. Schwan's Home Serv.*, 491 F.3d 778, 788 (8th Cir. 2008) (claims an employee was denied benefits, "unfairly disciplined," and was treated worse than male co-workers was "at best . . . a frustrating work environment rather than an objectively hostile environment"). Plaintiffs' frustrations with the football program are no more severe.

*Physically threatening or humiliating, or a mere offensive utterance.* Plaintiffs Cooper [ECF No. 131-1 & 183-1 ¶¶ 19-22 & 32], Mends [*id.* ¶¶ 56-62], Joly [*id.* ¶¶ 262-68], Foy [*id.* ¶¶ 389-394], and Simon [*Id.* ¶¶ 140-46] admit B. Ferentz never physically threatened them. As these Plaintiffs do not allege he ever spoke any racial epithets to them personally (whether alone or in front of others), there can be no finding of humiliation.

Parker admits "Brian Ferentz did not put his hands on me." [ECF No. 183-3 p. 68, Parker Dep. 44:9-10]. Parker admits B. Ferentz did not kick a garbage can during the December 19 incident. [ECF No. 131-1 & 183-1 ¶¶ 241-42]. Accordingly Parker only alleges "B. Ferentz berated him, called him a 'dumbass Black player,' and kicked him out of practice." [ECF No. 183-2 ¶ 50]. As an objective matter, it is not reasonable to infer someone in Parker's position—a superb athlete playing college football—would reasonably fear that B. Ferentz would attack him in front of many other football players when B. Ferentz has no history of physically assaulting members of the Iowa football team. To the extent Parker alleges the event was humiliating, he admits B. Ferentz was justified in kicking him out of practice for "insubordination" and "kicking him out had nothing to do with his race." [ECF No. 131-1 & 183-1 ¶¶ 251-52].

Wadley alleges B. Ferentz "physically threatened" him when B. Ferentz allegedly called him "a dumb motherf*****" and said "I will get you when you get back." [ECF No. 183-2 ¶¶ 51 & 54]. Wadley does not allege B. Ferentz ever physically touched him. Wadley does not allege B.

Ferentz ever retaliated against him later that day or at any time since the (undefined) date of the alleged incident. Wadley was the starting running back for both the 2016 and 2017 seasons and always played unless he was injured. [ECF No. 131-1 & 183-1 ¶¶ 385-86]. As an objective matter, it is not reasonable to infer someone in Wadley's position—the team's star running back—would reasonably fear that B. Ferentz would physically attack him when B. Ferentz has no history of physically assaulting members of the Iowa football team.[9]

*Unreasonably interfered with the Plaintiffs' performance.* There are simply no allegations, besides the conclusory claims that the "abuse I suffered and witnessed other Black players suffer often made it difficult to perform in class and on the field," that the alleged hostile environment ***unreasonably interfered*** with the Plaintiffs' schoolwork or football performance. [ECF 183-3, pp. 223 ¶ 19 (Mends), 227 ¶ 19 (Wadley), 230 ¶ 9 (Simon), 234 ¶ 11 (Cooper), 239 ¶ 19 (Parker) & 244 ¶ 13 (Joly); *see also* 236 ¶ 9 (Foy) (slight paraphrase from generic affidavit)]. Even if Plaintiffs' allegations against B. Ferentz "could contribute to a hostile work environment under Title VII," the Plaintiffs have not "demonstrated that the [specific] incidents… 'permeated' or 'poisoned' the work environment … and made it a hostile one, such that it affected the terms or conditions of [their] employment." *Hairston v. Wormuth*, 6 F.4th 834, 842 (8th Cir. 2021).

Accordingly even if Plaintiffs can establish "such a broad pattern of harassment" existed on the Iowa football team as a threshold matter, the Plaintiffs "must still show that any charged

---

[9] Subjective concerns about retaliation or futility are legally insignificant. *Myers v. Croell Redi-Mix, Inc.*, 672 F.Supp.2d 889, 914 (N.D. Iowa 2009) ("Plaintiff cannot overcome her failure to report by simply declaring that reporting was futile."); *Williams v. Missouri Dep't of Mental Health,* 407 F.3d 972, 977 (8th Cir. 2005) (holding "an employee's subjective fears of confrontation, unpleasantness or retaliation do not alleviate" the individual's duty "to alert the employer to the allegedly hostile environment"). Even if they were relevant under Title VII, they are not relevant under Section 1981 because Plaintiffs' claims require them to show "intentional" or "purposeful discrimination" individually by B. Ferentz. *Ellis*, 742 F.3d at 320-21 & 327-28.

supervisor" – here, B. Ferentz – "took actions sufficient to create an objectively hostile work environment." *Ellis*, 742 F.3d at 321. No matter how offended each Plaintiff may have been about B. Ferentz's alleged conduct, they do not meet the "demanding objective component of the hostile environment standard" required under Section 1981 because each Plaintiff "would need to convince a jury that each defendant's own, personal misconduct was a 'but-for' cause of the hostile work environment." *Sotak v. Bertoni*, 501 F.Supp.3d 59, 82 (N.D.N.Y. 2020). Accordingly the Court should grant summary judgment for B. Ferentz because his own personal conduct did not cause any hostile environment as to each Plaintiff as a matter of law.

*Plaintiffs' cases are inapposite*. Plaintiffs cite three Eighth Circuit cases they contend are factually similar. *Bowen*, 311 F.3d 878; *Williams*, 378 F.3d 790; and *Watson*, 619 F.3d 936. These cases are distinguishable because each involved employer liability, not individual liability. *Bowen* only asserted Title VII claims, while *Williams* and *Watson* raised both Title VII and Section 1981 claims but the Eighth Circuit did not analyze them separately (e.g. whether the employer committed "purposeful discrimination"). Accordingly the only question presented was whether the conduct of the entire workforce in the aggregate created a hostile environment, not whether an individual supervisor acted "for the purpose of creating a hostile work environment for the plaintiffs." *Ellis*, 742 F.3d at 327.

*Bowen* did not allege "pervasive" harassment—only "severe" harassment. 311 F.3d at 884. The conduct was severe because Lee "called Bowen a 'menopausal white b****' and threatened her with a physical beating, and climaxing when Lee intimidated Bowen by running directly at her." *Id.* at 385. Bowen repeatedly complained to her supervisor about Lee's harassment, yet when Bowen asked "what guarantee do I have that [Lee] won't come up and shoot me in the back as she has threatened to?" her supervisor simply said her employer "could not guarantee

Bowen's safety." *Id*. at 881-82 & 885. Lee's co-workers, including Bowen, knew Lee "threatened to shoot fellow employees." *Id*. at 885. The objective evidence supporting physical threats in *Bowen* is not comparable to the claims asserted by Parker or Wadley. Both were superb athletes, never complained about B. Ferentz, and were never told by any supervisor that the team could not guarantee their safety. B. Ferentz never assaulted any member of the Iowa team. B. Ferentz never allegedly said a racial slur and immediately "threatened a physical beating" while running towards Parker or Wadley. Bowen's allegations were "severe"; Plaintiffs are not.

*Watson* involved hostile work environment allegations against his employer, making specific allegations against ten named co-workers and other unnamed co-workers: (1) they refused to work with plaintiffs on account of their race; (2) the presence of graffiti in the workplace saying "KKK" and "I hate n******" on plaintiff's work bench and in the bathroom; (3) co-workers displaying confederate flags and other racial emblems; (4) false accusations of plaintiffs' safety violations and co-workers creating dangerous workplace situations to cause plaintiffs physical harm; (5) rampant disparate treatment between black and non-black employees; (6) use of racial epithets such as "n*****, go down there and throw the switch"; and (7) a co-worker spitting chewing tobacco at a plaintiff after he said black people were just trying to earn a living. 619 F.3d at 937-45. The alleged conduct, in the aggregate, created a fact question whether a hostile environment existed in the employer-defendant's workplace. *Id*. at 945. On their face Plaintiffs allegations against B. Ferentz are not comparable.

*Williams* involved a workplace where specific evidence supported the employer treated black and white workers differently, racial graffiti was common in the workplace, his supervisor told the plaintiff "he would fire his black ass," the plaintiff complained about his harassment and the employer did nothing, and the supervisor eventually fired plaintiff. 378 F.3d at 793-96. There

was "evidence of widespread toleration of racial harassment and disparate treatment condoned by management was relevant to its motive in firing" plaintiff. *Id*. at 794. Like *Watson*, there is simply no comparison.

    *8. Not clearly established*. Plaintiffs have not alleged a plausible claim B. Ferentz violated a constitutional or statutory right and therefore he is entitled to qualified immunity. If Plaintiffs have successfully alleged such a violation, they have not alleged a violation of a clearly-established right at the time of B. Ferentz's alleged conduct against Plaintiffs. In the non-employment context, a violation of Section 1981 must be based upon a contractual promise recognized under state law. *See* Sections 2-3, *supra*. Iowa law has not yet clearly established the Iowa Student-Athlete Handbook is a binding contract for purposes of Section 1981, *Petro*, 945 N.W.2d at 780 ("If the student handbook amounts to a binding contract, an issue we do not decide today,….."), and such a contract right would be limited to complying with the identified procedures for addressing discrimination complaints (which Plaintiffs admit they did not use). *Id*. Moreover, Plaintiffs' concession that the University fully performed and executed Plaintiffs' financial aid contracts with the University entitles B. Ferentz to qualified immunity.

    The United States Supreme Court has not decided whether Section 1981 applies to hostile environment claims in college athletics, and it is not clearly established whether participation in college athletics is a constitutionally-protected interest. *Does 1-2 v. Regents of the Univ. of Minnesota*, 999 F.3d 571, 583 n.2 (8th Cir. 2021). Assuming *arguendo* both are clearly established, it is not enough to say there is "a general prohibition against racial discrimination": "To overcome the qualified immunity defense, plaintiff must show that at the time of the alleged violation, on the facts of this case, the law was clearly established such that every reasonable school official would have understood" that B. Ferentz's intentional conduct created a hostile

environment. *Davis v. Unified Sch. Dist. No. 512*, 335 F.Supp.3d 1230, 1238 (D. Kan. 2018), *aff'd* 799 F. App'x 566 (10th Cir. 2019); *see also Ellis*, 742 F.3d at 328. As applied, it was not clearly established at the time of B. Ferentz's alleged racial comments and his use of non-racial profanity (given profanity is common in the college football environment [ECF No. 131-1 & 183-1 ¶ 420]) that a reasonable football coach would understand his alleged personal conduct would create an illegal hostile environment as a matter of law. *See* Sections 4 & 6-7 *supra*. It was also not clearly established that B. Ferentz should have known that he was a "supervisor" for purposes of liability under Title VII and Section 1981 given the University did not empower him to "take tangible employment actions" against the Plaintiffs. *See* Section 5 *supra*. Accordingly B. Ferentz is entitled to qualified immunity.[10]

Courts have not imposed personal liability for Section 1981 on anyone other than supervisors. *See Whidbee*, 223 F.3d at 75; *Miller* 541 F.Supp.2d at 865; *Hicks*, 44 F.Supp.2d at 596–97. The law on the imposition of liability to non-supervisors such as B. Ferentz for a hostile work environment is not clearly established. Accordingly B. Ferentz is entitled to qualified immunity.

*9. Conclusion.* Plaintiffs concede B. Ferentz is entitled to summary judgment on Plaintiffs' disparate treatment claims as alleged in Count II of the FAC (and Count IV of the SAC), Plaintiff Cooper's claims as alleged in Count II of the FAC (and Count IV of the SAC) under any applicable limitations period, and Plaintiffs' monetary damages claims under all counts. [ECF No. 183, p. 34].

---

[10] B. Ferentz incorporates by reference the qualified immunity arguments raised in K. Ferentz, B. Ferentz, and S. Wallace's motion to dismiss second amended complaint and reply.

In addition, the Court should enter summary judgment in favor of B. Ferentz dismissing all Plaintiffs' claims as alleged in Count II of the FAC (and Count IV of the SAC) with prejudice and find that he is entitled to qualified immunity as a matter of law.

Dated: October 21, 2022                              Respectfully submitted,

                                                    */s/ Roger W. Stone*
                                                    Roger W. Stone          AT0007519
                                                    Jeffrey A. Stone        AT0008829
                                                    Simmons Perrine Moyer Bergman PLC
                                                    115 Third Street S.E., Suite 1200
                                                    Cedar Rapids, IA 52401-1266
                                                    Telephone: (319) 366-7641
                                                    Facsimile: (319) 366-1917
                                                    Email: rstone@spmblaw.com
                                                           jstone@simmonsperrine.com
                                                    *Attorneys for Defendants Kirk Ferentz,*
                                                    *Brian Ferentz and Seth Wallace*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 21, 2022, I filed the foregoing with the Clerk of Court by using the ECF system which will send notification of such filing to the following:

Damario Solomon-Simmons
Kymberli J. Heckenkemper
Solomon Simmons Law, PLLC
601 S. Boulder Ave., Ste. 600
Tulsa, OK 74119
dss@solomonsimmons.com
kheckenkemper@solomonsimmons.com

Christian Dennie
Patrick M. Kane
Sarah M. Traynor
Cameron A. Baker
La-Deidre D. Matthews
Fox Rothschild, LLP
Saint Ann Court
2501 N Harwood Street, Suite 1800
Dallas, TX 75201
cdennie@foxrothschild.com
straynor@foxrothschild.com
pkane@foxrothschild.com
cbaker@foxrothschild.com
lmatthews@foxrothschild.com

Beatriz Mate-Kodjo
BMK Law Firm, PLLC
1910 Washington St., Ste. 100
Pella, IA 50219
beatriz@mate-kodjo-law.com
*Attorneys for Plaintiffs*

Thomas J. Miller, Attorney General of Iowa
Jeffrey S. Thompson
Jeffrey C. Peterzalek
Christopher J. Deist
Department of Justice-Special Litigation
Hoover State Office Building
Des Moines, IA 50319
jeffrey.thompson@ag.iowa.gov
jeffrey.peterzalek@ag.iowa.gov
christopher.deist@ag.iowa.gov
*Attorneys for Defendants*

/s/ Roger W. Stone